IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE, and the AMERICAN CIVIL LIBERTIES UNION FOUNDATION, as Next Friend, <br><br> Petitioners, <br><br> v. <br><br> GEN. JAMES N. MATTIS, in his official capacity as SECRETARY OF DEFENSE, <br><br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:17-cv-2069 (TSC) |

**RESPONDENT'S MOTION TO DISMISS AND RESPONSE TO
COURT'S ORDER OF OCTOBER 19, 2017**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 3

I.     ACLUF FAILED TO SEEK OR OBTAIN LEAVE TO FILE ITS PETITION ON BEHALF OF AN ANONYMOUS PETITIONER ........................................ 3

II.    ACLUF LACKS STANDING TO SEEK HABEAS RELIEF ON BEHALF OF AN INDIVIDUAL WITH WHOM IT HAS NOT CONFERRED REGARDING HIS INTEREST IN PURSUING THIS ACTION AND WITH WHOM IT HAS NO RELATIONSHIP AT ALL .......................................................................... 4

     A.     ACLUF Cannot Show that It Is Truly Dedicated to the Detainee's Best Interests When It Has Never Met With, and Does Not Know the Identity of, the Detainee ........................................................................ 7

     B.     ACLUF Does Not Satisfy the "Significant Relationship" Requirement . 10

     C.     This Case Does Not Present Extraordinary Circumstances that Warrant Deviating from *Whitmore*'s Requirements ................................ 14

III.     ACLUF'S REQUEST ALSO SHOULD BE DENIED BECAUSE THE CIRCUMSTANCES DO NOT WARRANT ALLOWING ACCESS BY UNRELATED ATTORNEYS TO A DETAINEE HELD IN AN ARMED CONFLICT ZONE IN IRAQ WHOSE FINAL DISPOSITION HAS YET TO BE DETERMINED ........................................................................................... 16

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) ................................................. 7, 8, 9, 10

*Al Odah v. United States*, 321 F.3d 1134 (D.C. Cir. 2003) ......................................... 11

*Al-Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004) ....................................... 19

*Amerson v. Iowa*, 59 F.3d 92 (8th Cir. 1995) ............................................................... 11

*Artis v. Greenspan*, 223 F. Supp. 2d 149 (D.D.C. 2002) .............................................. 15

*Bear Lodge Multiple Use Ass'n v. Babbitt*, 175 F.3d 814 (10th Cir. 1999) ............................... 13

*Boumediene v. Bush*, 553 U.S. 723 (2008) ..................................................... 18, 19, 21

*Cartner v. Davis*, 988 F. Supp. 2d 33 (D.D.C. 2013),
      aff'd sub nom. Cartner v. Sibley Mem'l Hosp., No. 13-7187, 2014 WL 4629099
      (D.C. Cir. July 11, 2014) ........................................................................... 10

*Centobie v. Campbell*, 407 F.3d 1149 (11th Cir. 2005) ............................................... 12

*Coal. for Underground Expansion v. Mineta*, 333 F.3d 193 (D.C. Cir. 2003) ........................... 15

*Coal. of Clergy, Lawyers, & Professors v. Bush*,
      310 F.3d 1153 (9th Cir. 2002) ........................................................ 5, 11, 12, 14, 15. 16

*Davis v. Austin*, 492 F. Supp. 273 (N.D. Ga. 1980) .................................................. 12

*Does 1-570 v. Bush*, No. Civ A 05-313,
      2006 WL 3096685 (D.D.C. Oct. 31, 2006) ..............................3-4, 5, 8, 10, 12, 13, 15, 20

*Feldman v. Youth Case of Utah, Inc.*, 345 F. Supp. 2d 1269 (D. Utah. 2004) ........................... 13

*Hamdi v. Rumsfeld*, 294 F.3d 598 (4th Cir. 2002) ......................................... 5, 9, 11, 12, 15, 16

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ........................................................ 11, 17

*Idris v. Obama*, 667 F. Supp. 2d 25 (D.D.C. 2009) ................................................. 8, 9

*In re Guantanamo Bay Detainee Continued Access to Counsel*,
      892 F. Supp. 2d 8 (D.D.C. 2012) ................................................................. 19

*Jamal Adeen v. Obama*, No. CIV.A. 08-1236, 2009 WL 3416195 (D.D.C. Oct. 21, 2009) ......... 9

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .................................................................................. 13

*Kuman v. Obama*, 725 F. Supp. 2d 72 (D.D.C. 2010) ..................................................................... 9

*Lenhard v. Wolff*, 443 U.S. 1306 (1979) ...................................................................................... 7

*Miranda v. Arizona*, 384 U.S. 436 (1966) ............................................................................. 19, 20

*Munaf v. Geren*, 553 U.S. 674 (2008) ................................................................ 11, 16, 17, 18, 21

*O-J-R v. Ashcroft*, 216 F.R.D. 150 (D.D.C. 2003) ......................................................................... 3

*Omar v. Harvey*, 514 F. Supp. 2d 74 (D.D.C. 2007) ............................................................. 17, 18

*Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005) .......................................................................... 3

*Rasul v. Bush*, 542 U.S. 466, 471 (2004) ............................................................................... 11, 18

*Rosenberg v. United States*, 346 U.S. 271 (1953) .................................................................... 7, 13

*Sanchez-Velasco v. Sec'y of Dep't of Corr.,* 287 F.3d 1015 (11th Cir. 2002) ......................... 9, 11

*T.W. v. Brophy*, 124 F.3d 893 (7th Cir. 1997) ............................................................................ 11

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) .................................................. 3

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................................... 5

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ............................................... 5, 6, 9, 10, 11, 12, 13

*Zettlemoyer v. Horn*, 53 F.3d 24 (3d Cir. 1995) ......................................................................... 11

## Statutes

28 U.S.C. § 2242.......................................................................................................................... 5

Detainee Treatment Act of 2005, 119 Stat. 2739 ........................................................................ 18

Pursuant to the Court's Order of October 19, 2017, Respondent General James N. Mattis, in his official capacity as Secretary of Defense ("Respondent"), hereby opposes the request of Petitioner and purported next friend American Civil Liberties Union Foundation ("ACLUF") for "immediate and unmonitored access" to an individual detained as an enemy combatant in Iraq and moves to dismiss the petition for a writ of habeas corpus for lack of subject matter jurisdiction.

## INTRODUCTION

Petitioner ACLUF seeks habeas relief as a purported next friend of an individual whose name it does not know, whom it admittedly does not represent and has never met, and who has never consented to ACLUF's habeas petition or otherwise communicated his wishes to ACLUF. ACLUF's attempt to interject itself as the advocate for an individual who came into U.S. military custody less than seven weeks ago, was identified as an enemy combatant, and is currently detained in Iraq pending a determination of his further disposition is improper, unnecessary, and should be dismissed. Indeed, by filing its petition improperly in the name of an anonymous "John Doe," and by filing the instant emergency motion seeking to compel the U.S. military to allow access to this individual in an armed conflict zone in order to secure his consent to representation, ACLUF effectively concedes that it currently lacks such consent. Unlike numerous other cases where a close relative has sought habeas relief on a detainee's behalf, ACLUF has no significant relationship with this detainee, and it also cannot show that it would act in the detainee's best interests when it has never conferred with the detainee in order to learn what those interests are. ACLUF, therefore, fails to meet the prerequisites to litigate as the detainee's next friend. Because ACLUF cannot establish next friend standing, the Court should dismiss its petition for lack of subject matter jurisdiction and deny ACLUF's request for counsel

access for that reason alone.

Moreover, the Court should also deny ACLUF's request because the circumstances here do not warrant the extraordinary and unprecedented relief that ACLUF seeks. ACLUF asks this Court to issue an order that would compel the Department of Defense ("Department") to provide ACLUF with access to a stranger in U.S. military custody in Iraq for the purpose of offering legal assistance. Such relief would intrude on U.S. security protocols. Moreover, ACLUF fails to show that this relief is appropriate, particularly when this individual has already been visited by representatives of the International Committee of the Red Cross ("ICRC"), which can assist detained individuals with contacting their family if they so wish. In the event that the detainee continues to be detained, it therefore is possible that a family member may seek habeas relief as the detainee's next friend. In any event, given ACLUF's lack of any previous relationship with the detainee, it can only speculate regarding the detainee's desire to meet with ACLUF attorneys or to retain them as his counsel. Meanwhile, however, the Department is still in the process of determining the detainee's ultimate disposition. The Supreme Court has recognized that, in circumstances of military operations, the Executive Branch should be given a reasonable period of time to determine a detained individual's status, particularly in light of the judiciary's reluctance to intrude on matters of military and national security concerns. Here, the Department is still within that initial reasonable period. Equitable and prudential considerations, therefore, weigh against granting ACLUF's motion, and ACLUF cites no authority that requires the access that it seeks.

2

**ARGUMENT**

I.    **ACLUF FAILED TO SEEK OR OBTAIN LEAVE TO FILE ITS PETITION ON BEHALF OF AN ANONYMOUS PETITIONER**

As an initial matter, ACLUF's petition is improper because it was filed on behalf of an anonymous petitioner, John Doe, without the Court's leave. Parties initiating an action in federal district court generally must identify themselves by name in their pleadings. Fed. R. Civ. P. 17(a) (indicating that "[e]very action shall be prosecuted in the name of the real party in interest"); Fed. R. Civ. P. 10(a) (mandating that "[i]n the complaint the title of the action shall include the names of all the parties"); *see also* LCvR 5.1(c)(1), 11.1 (requiring that the "first filing by or on behalf of a party shall have in the caption the name and full residence address of the party"). In exceptional circumstances, most often where matters of a highly sensitive and personal nature are involved or disclosure of a party's identity would create a risk of physical harm, a court may grant "rare dispensation" from this requirement. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995); *cf. Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005). However, in no event is a petitioner in this Court entitled to proceed by pseudonym without prior express leave to do so. *See O-J-R v. Ashcroft*, 216 F.R.D. 150, 151 (D.D.C. 2003) (noting that plaintiff's motion to proceed using a pseudonym had been denied).

By filing its petition in the name of John Doe without seeking such express leave to do so, ACLUF has violated the applicable rules as described above, and its filing therefore should be dismissed as improper. In a prior case where attorneys sought to file a habeas petition on behalf of detained individuals whose names they did not know, and who admittedly had neither requested nor consented to the filing of such a petition, the attorneys first filed a motion to proceed using fictitious names, which was granted the same day as a procedural matter. *See Does*

3

*1-570 v. Bush*, No. Civ A 05-313, 2006 WL 3096685, at \*1 (D.D.C. Oct. 31, 2006) (Judge Kollar-Kotelly noting that the Court need not consider the Government's request to reconsider the Court's order on that motion in light of the Court's ruling that counsel lacked next friend standing and that the petition therefore should be dismissed).

Here, in contrast, ACLUF filed no such initial motion, and thus it has not obtained leave to use a fictitious name in its petition. Nor has ACLUF established that this case falls within any of the categories where pseudonymous pleading has been allowed. Rather, ACLUF is attempting to proceed with a fictitious name, not out of concern for the privacy or physical well-being of the petitioner, but rather because ACLUF itself simply does not know the identity of the real party in interest on whose behalf it seeks to assert next friend status. Under the authorities cited above, the failure of an attorney to know the names of his own clients is not a valid basis to allow the case to be litigated with fictitious names. Indeed, not only does ACLUF's petition violate this Court's procedural requirements, but the fact that ACLUF was unable to file its petition without using a fictitious name for the detainee also reinforces the conclusion, demonstrated in greater detail below, that it lacks any relationship with the detainee and thus is in no position to file a proper petition on his behalf.

## II. ACLUF LACKS STANDING TO SEEK HABEAS RELIEF ON BEHALF OF AN INDIVIDUAL WITH WHOM IT HAS NOT CONFERRED REGARDING HIS INTEREST IN PURSUING THIS ACTION AND WITH WHOM IT HAS NO RELATIONSHIP AT ALL

Apart from ACLUF's failure to obtain leave for its pseudonymous petition, this case should be dismissed because ACLUF lacks standing to litigate this action on behalf of the detainee. It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite

4

standing to sue" under Article III of the Constitution. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves." *Hamdi v. Rumsfeld*, 294 F.3d 598, 602-03 (4th Cir. 2002) (internal quotations omitted). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The requirement of standing applies in the habeas context just as it does in other civil cases. *Cf. Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1157 (9th Cir. 2002) ("This case stands or falls on whether the [petitioner] has standing to bring a habeas petition on behalf of the Guantanamo Bay detainees."); *Hamdi*, 294 F.3d at 607 (recognizing that the question of a habeas petitioner's standing "is jurisdictional and thus fundamental"). A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242; *see Does 1-570*, 2006 WL 3096685, at *4. In this case, the anonymous "John Doe" detainee is the person "for whose relief the [petition] is intended," but he has not "signed and verified" the petition. *See* Pet'n [ECF No. 1]. Rather, ACLUF purports to act on this unnamed detainee's behalf as his "next friend." *See id.* at 2 & ¶ 3. However, as demonstrated below, ACLUF, as an entity that has never met with the John Doe detainee, does not know his identity, much less his preferences regarding the pursuit of habeas relief, and has no relationship with him whatsoever, is not a proper next friend.

5

Next friend standing has most often been invoked "on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." *Whitmore*, 495 U.S. at 162. However, next friend standing is "by no means granted automatically to whomever seeks to pursue an action on behalf of another" person. *See id.* at 163. The Supreme Court has recognized that those with only a "generalized interest in constitutional governance" must not be allowed to "circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.* at 164. In order to prevent third parties seeking to advance their own interests and agendas from litigating another's claims in the guise of a next friend, the Supreme Court thus articulated "at least two firmly rooted prerequisites" for next friend standing. *Id.* at 163, 164. First, a purported "next friend" "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* at 163. "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163-64. The putative next friend bears the burden of clearly establishing his status and justifying the exercise of the court's jurisdiction over the action. *See id.* at 164. As discussed below, ACLUF fails to meet its burden here because it cannot show that it is truly dedicated to the John Doe detainee's best interests, and it has no relationship at all with the detainee, much less a "significant" one.[1]

---

[1] ACLUF argues that the first prong of the *Whitmore* test is satisfied because the government has allegedly "denied [the John Doe detainee] access to a court and to counsel—and any means to secure counsel for himself"—because "[t]he government does not appear to have notified any member of the [detainee's] family of his detention or provided any member of his family with access to him." ACLUF Mot. [ECF No. 7] at 4. While for purposes of this filing Respondent

**A.      ACLUF Cannot Show that It Is Truly Dedicated to the Detainee's Best Interests When It Has Never Met With, and Does Not Know the Identity of, the Detainee**

In regard to *Whitmore*'s second requirement, courts have made clear that "a purported 'next friend' may not simply speculate as to the best interests of the party on whose behalf he seeks to litigate." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 20 (D.D.C. 2010). Instead, he "must provide some evidence that he is acting in accordance with the intentions or wishes of the real party in interest." *Id.* The purpose of this showing is to ensure that the next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not merely use the litigation as a vehicle for advancing a broader agenda. As then-Justice Rehnquist explained, "however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chessboard larger than his own case." *Lenhard v. Wolff*, 443 U.S. 1306, 1312 (1979) (Rehnquist, J., in chambers); *see also Rosenberg v. United States*, 346 U.S. 271, 291-92 (1953) (Jackson, J., concurring with five other Justices) ("That such disorderly intervention [by strangers to the prisoner] is more likely to prejudice than to help the representation of accused persons in highly publicized cases is self-evident.").

---

does not dispute the detainee's inaccessibility under *Whitmore*'s first prong, given that he is currently in U.S. military custody in Iraq, ACLUF is incorrect in suggesting that the detainee has no means of contacting his family. As explained in the Declaration of Steven W. Dalbey ("Dalbey Decl."), attached hereto, the detainee has been visited on two separate occasions by representatives of the International Committee of the Red Cross ("ICRC") and thus has been afforded an opportunity to have ICRC contact his family, if he so wished. As discussed below, this avenue for access to a family member who might legitimately serve as next friend means that there is no reason in this case to deviate from requiring a putative next friend to show a "significant relationship" with the real party in interest.

7

Courts thus repeatedly have denied next friend standing "where the putative 'next friend' has never conferred with the party in interest and, as a result, can offer no 'basis on which to conclude that the [party] want[s] legal representation as a general matter or more specifically by counsel in the instant matter.'" *Al-Aulaqi*, 727 F. Supp. 2d at 20 (quoting *Does 1-570*, 2006 WL 3096685, at *5). In *Al-Aulaqi*, the court held that an individual's father lacked next friend standing because he "presented no evidence that his son want[ed] to vindicate his U.S. constitutional rights through the U.S. judicial system," and admitted that he had not spoken with his son during the relevant time period so as to be certain that the lawsuit he had filed "accords with his son's best interests." *Id.* Similarly, in *Idris v. Obama*, 667 F. Supp. 2d 25, 29 (D.D.C. 2009), the court held that a detainee's brother could not establish that he would represent the detainee's best interests where he had "never met with [the detainee] since his confinement," and attorneys had attempted to visit the detainee five times previously but the detainee had refused to see them.

Here, there is even less reason to presume that ACLUF would represent the detainee's best interests, when no ACLUF attorney has ever spoken to the detainee, and ACLUF admittedly does not know the detainee's identity. As other members of this Court have recognized, "'[w]hile it may be fair to assume that the detainee[] want[s] to be released from detention . . ., there may be reasons why detainees may not want to file habeas petitions as a vehicle for accomplishing this purpose.'" *Al-Aulaqi*, 727 F. Supp. 2d at 20 (quoting *Does 1-570*, 2006 WL 3096685, at *6). For example, a detainee may "'mistrust the United States judicial system and choose to avoid participating in such proceedings altogether.'" *Id.* (quoting *Does 1-570*, 2006 WL 3096685, at

8

*6).[2] When attorneys who have never met or conferred with a detainee cannot prove his "specific 'interests and preferences,'" they cannot meet the second requirement for next friend standing. *See id.*; *see also Idris,* 667 F. Supp. 2d at 29 (holding that "because [the putative 'next friend'] has never met with petitioner since his confinement, counsel cannot be certain that [the 'next friend'] represents petitioner's best interests").

ACLUF's request that the Court compel Respondent to allow ACLUF attorneys access to the detainee "in order to afford him legal assistance" is tantamount to a concession that, at present, ACLUF cannot provide the detainee with legal assistance, or serve as his next friend, because it has no idea what the detainee's wishes are, in regard to prosecuting this action. *Cf. Sanchez-Velasco v. Sec'y of Dep't of Corr.,* 287 F.3d 1015, 1027 (11th Cir. 2002) ("[N]o attorney should ever file a habeas petition in the name of an inmate he has not even bothered to speak with, much less obtain permission from . . . ."). Rather, there is a genuine danger here that ACLUF is pursuing its own agenda, or simply asserting a "generalized interest in constitutional governance," rather than adhering to the detainee's best interests. *Whitmore*, 495 U.S. at 164; *see also Hamdi*, 294 F.3d at 605 (cautioning against permitting lawsuits filed by "someone who seeks simply to gain attention by injecting himself into a high-profile case" as he is "much more likely to be utilizing the real party's injury as an occasion for entry into policy-laden proceedings of all sorts"). Indeed, in arguing that it satisfies the "best interests" prong, ACLUF merely asserts

---

[2] The notion that a detainee may choose not to seek habeas relief is not mere speculation. There are documented examples in cases in this District where detainees have met with attorneys, yet have refused to authorize those attorneys to file habeas petitions on their behalf. *E.g.*, *Kuman v. Obama*, 725 F. Supp. 2d 72, 78 (D.D.C. 2010) (indicating that a Guantanamo detainee's "two face-to-face meetings with counsel" failed to produce an authorization to proceed); *Jamal Adeen v. Obama*, No. CIV.A. 08-1236, 2009 WL 3416195, at *2 (D.D.C. Oct. 21, 2009) (indicating that the detainee "has unequivocally rejected representation on multiple occasions").

9

that it "is committed to upholding the civil liberties guaranteed by the Constitution," ACLUF

Mot. at 4, making no reference at all to any individual interests of the detainee. Such generalized

concerns, even if well-intentioned, do not provide a predicate for "circumvent[ing] the

jurisdictional limits of Art. III" under the next friend standing doctrine. *See Whitmore*, 495 U.S.

at 164.

### B.   ACLUF Does Not Satisfy the "Significant Relationship" Requirement

The lack of any relationship between ACLUF and the detainee reinforces the conclusion

that ACLUF lacks standing. Courts in this District most recently have recognized a "significant

relationship" as a third prerequisite independent of the first two requirements under the

*Whitmore* test. *E.g.*, *Cartner v. Davis*, 988 F. Supp. 2d 33, 36-37 (D.D.C. 2013) (referring to

*Whitmore*'s "three-pronged test," including the "significant relationship" requirement as the third

prong), *aff'd sub nom. Cartner v. Sibley Mem'l Hosp.,* No. 13-7187, 2014 WL 4629099 (D.C.

Cir. July 11, 2014); *Al-Aulaqi*, 727 F. Supp. 2d at 16 (recognizing that the Supreme Court in

*Whitmore* required that there be a "significant relationship" even if that requirement was not

necessarily "firmly rooted"). Previous decisions have concluded that even if a significant

relationship is not a stand-alone requirement, in all but the most exceptional circumstance (which

no court thus far has found to exist), the absence of a significant relationship fatally undermines

a would-be next friend's ability to show that it would act in the real party's best interests. *Does

1-570*, 2006 WL 3096685, at *6-7 (an extension of the "next friend" doctrine to allow counsel to

use its habeas petition as a vehicle to *establish* a relationship with unidentified detainees, where

no such relationship existed before, "would be unprecedented, and indeed improper"). [3]

---

[3] Even in Circuits that have not construed the "significant relationship" requirement as an

Under the "significant relationship" requirement, courts generally have limited next friend standing to close relatives such as parents, siblings, and spouses. *See, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 682-83 (2008) (in case involving two U.S. citizens detained in Iraq, habeas petition for one (Omar) was filed by his wife and son while habeas petition for the other (Munaf) was filed by his sister); *Hamdi v. Rumsfeld*, 542 U.S. 507, 511 (2004) (plurality) (father filed habeas petition as detained son's next friend); *Rasul v. Bush*, 542 U.S. 466, 471 (2004) (petitioners had filed suit "through relatives acting as their next friends"); *Al Odah v. United States*, 321 F.3d 1134, 1136-37 (D.C. Cir. 2003) (describing "fathers and brothers" acting as next friends in *Al Odah*, two fathers and a mother acting as next friends in *Rasul*, and detainee's wife acting as next friend in *Habib*). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. *See Sanchez-Velasco,* 287 F.3d at 1026 ("'[S]ome significant relationship' does

---

independent prong of next friend standing, they have required a "significant relationship" as part of the second prong, reasoning that the significant relationship works to ensure that the next friend is indeed acting in the detainee's best interests. *See Hamdi*, 294 F.3d at 604 ("*Whitmore* is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest."); *Coal. of Clergy, Lawyers, & Professors*, 310 F.3d at 1162 ("Combining the 'significant relationship' requirement, however, with the 'dedicated to best interests' consideration . . . meets the concerns the *Whitmore* Court addressed."); *T.W. v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the *Whitmore* case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant relationship with the real party in interest'"); *Amerson v. Iowa*, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under *Whitmore*, the "next friend has [the] burden to establish . . . that she has some "significant relationship with [the] real party in interest"); *Zettlemoyer v. Horn*, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he *Whitmore* Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'"). Although the Eleventh Circuit questioned whether *Whitmore* established "some significant relationship" as an independent requirement, it nevertheless noted the importance of a relationship in demonstrating whether a putative next friend "can show true dedication to the best interests of the person on whose behalf he seeks to litigate." *Sanchez-Velasco v. Secretary of the Dep't of Corrections*, 287 F.3d 1015, 1026-27 (11th Cir. 2002).

11

exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent.").

On the other hand, distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing. *See, e.g.*, *Davis v. Austin*, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in *Whitmore*, 495 U.S. at 164). And petitions filed by total strangers purporting to be next friends—who often, as in this case, are attorneys arguing that they wish to advocate on behalf of certain rights they believe the detainee should assert—are typically dismissed for lack of jurisdiction. *See, e.g.*, *Coal. of Clergy, Lawyers, & Professors,* 310 F.3d at 1162 (rejecting next friend standing for a group of clergy, lawyers and professors seeking to represent Guantanamo detainees without their knowledge because the Coalition "has not demonstrated any relationship with the detainees"); *Hamdi*, 294 F.3d at 603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee); *Centobie v. Campbell*, 407 F.3d 1149, 1151 (11th Cir. 2005) (holding federal public defender lacked next friend standing to file habeas petition on behalf of inmate she had "never represented" and "ha[d] no relationship to . . . outside of this matter"); *Does 1-570*, 2006 WL 3096685, at *8 ("Regardless of Counsel's intentions, a determination that Counsel is acting in the best interests of 570 unidentified detainees cannot be made where there is no relationship between Counsel and the unidentified detainees" and no indication that the detainees wished to be represented by counsel in general or by "this Counsel attempting to pursue litigation on their behalf").

12

Here, ACLUF has no relationship with the detainee, and it does not claim otherwise. Instead, ACLUF asserts that a "significant relationship" is not a requirement at all under *Whitmore*. ACLUF Mot. at 4. Such an assertion directly contradicts the law applied in this District, as explained above. Moreover, ACLUF identifies no case where a court has granted next friend standing in the absence of a significant relationship. Rather, like the would-be next friend counsel in *Does 1-570*, ACLUF has not "point[ed] to any case in any context in which counsel has been allowed to pursue habeas (or other) relief on behalf of a non-class of unidentified plaintiffs or petitioners where plaintiffs' actual identity is unknown by counsel representing such plaintiffs at the time of filing." *Does 1-570*, 2006 WL 3096685, at *7. Allowing attorneys to seek habeas relief for anonymous clients whom they have never met, and whose intents and desires are completely unknown to them, would open the floodgates to "intruders or uninvited meddlers" running to court in the name of the rights of unwitting strangers who may want to have nothing to do with them. *Whitmore*, 495 U.S. at 164. Although ACLUF may be acting with good intentions, "[c]are and concern alone are not enough to create standing." *Feldman v. Youth Case of Utah, Inc.*, 345 F. Supp. 2d 1269, 1270 (D. Utah. 2004) (citing *Bear Lodge Multiple Use Ass'n v. Babbitt*, 175 F.3d 814 (10th Cir. 1999)) (denying next friend status to mother of friend of minor detained at youth facility because "clear relationship" was lacking). ACLUF is a "stranger to the detained person[] and [his] case" and, thus, plainly does not qualify for next friend standing. *Whitmore*, 495 U.S. at 164 (citing *Rosenberg*, 346 U.S. at 291-92).[4]

---

[4] For the same reason that ACLUF cannot establish next friend standing, it is also precluded from establishing standing under the third-party doctrine, which requires a "close relationship" with the real party in interest. *See Kowalski v. Tesmer*, 543 U.S. 125, 130-31 (2004) (holding

**C.** **This Case Does Not Present Extraordinary Circumstances that Warrant Deviating from *Whitmore*'s Requirements**

ACLUF argues that this case presents "extraordinary circumstances" that warrant an exception from the *Whitmore* requirements for next friend standing. *See* ACLUF Mot. at 5. The basis for this assertion appears to be ACLUF's contention that the detainee is being held "at a secret location" with no means to access counsel or his family. *See id.* at 4. However, this contention is speculation on ACLUF's part, and the circumstances of this case do not warrant taking the unprecedented step of allowing attorneys to act as next friend for an individual they have never met, whose interests they cannot claim to know.

ACLUF relies heavily on Judge Berzon's concurrence in *Coalition of Clergy*, which ACLUF construes as suggesting that the "significant relationship" requirement might be bypassed where no relationship "is practically possible." ACLUF Mot. at 5 (quoting *Coal. of Clergy, Lawyers, & Professors*, 310 F.3d at 1167 (Berzon, J., concurring)). However, Judge Berzon rejected the notion that a detainee's lack of a relationship "with anyone who could appropriately serve" as a next friend could be proven "by assertion" only. *Coal. of Clergy, Lawyers, & Professors*, 310 F.3d at 1167 (Berzon, J., concurring). Rather, Judge Berzon explained that, even under her slightly more lenient reading of *Whitmore*, a putative next friend with no prior relationship with a detainee would have to "show that the circumstances entirely preclude both the appearance as next friend of anyone with any relationship to the detainee[] as

---

attorneys could not establish third-party standing based on the notion that they would represent "as yet ascertained . . . criminal defendants" because the attorneys "do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all.").

well as the practical representation of the detainee[]'s interests in court by others similarly situated." *Id.*

ACLUF has made no such showing here, nor could it. As explained by Respondent's declarant,[5] the detained individual has been in U.S. military custody for less than seven weeks, and during that time he has been visited twice by ICRC representatives, who seek to contact the family members of a detained person, if requested to do so. Dalbey Decl. ¶¶ 3-4.[6] There is no reason to think that the detainee could not contact, through the ICRC, a relative who then could satisfy the requirements for next friend standing if the detainee desired to file a petition. At the very least, it is too soon to conclude otherwise.

This case, therefore, does not present extraordinary circumstances that might warrant granting next friend standing to an entity with no prior relationship at all to the real party in interest. Moreover, such an unprecedented step, granting standing to an entity that does not even know the identity of the real party in interest, should not be taken lightly. "The question of next friend standing is not merely 'technical,' . . . Rather, it is jurisdictional and thus fundamental." *Hamdi*, 294 F.3d at 607. And "[t]he requirement of a significant relationship is . . . connected to a value of great constitutional moment." *Id.* at 605. As the Fourth Circuit explained, "there is all the difference in the world between a next friend who represents the interests of someone with

---

[5] Because ACLUF's lack of next friend standing is an issue of the Court's subject matter jurisdiction, the Court may consider material outside the pleadings when resolving Respondent's Motion to Dismiss. *See Does 1-570*, 2006 WL 3096685, at *3 (concluding that dismissal was warranted even assuming *arguendo* that the legal standards under Federal Rule of Civil Procedure 12(b)(1) applied, citing *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002)).

[6] *Cf.* ICRC website, *available at* https://www.icrc.org/en/document/what-we-do-detainees (listing "restore and maintain family contacts" as among ICRC's goals).

15

whom he has a significant relationship and a next friend who files suit on behalf of a total stranger" because the former situation "promotes the values of the law of Article III standing," while the latter raises an "irreconcilable conflict with basic constitutional doctrine." *Id.* at 607. Indeed, absent a significant relationship, "the efficacy of [a would-be next friend]'s representation is in serious doubt" because the next friend would simply be asserting "a generalized interest in constitutional governance"—exactly what the Supreme Court in *Whitmore* warned against. *Coal. of Clergy, Lawyers, & Professors*, 310 F.3d at 1163. ACLUF's petition, therefore, should be dismissed for lack of subject matter jurisdiction because ACLUF lacks standing.

### III.   ACLUF'S REQUEST ALSO SHOULD BE DENIED BECAUSE THE CIRCUMSTANCES DO NOT WARRANT ALLOWING ACCESS BY UNRELATED ATTORNEYS TO A DETAINEE HELD IN AN ARMED CONFLICT ZONE IN IRAQ WHOSE FINAL DISPOSITION HAS YET TO BE DETERMINED

Because ACLUF lacks standing under the next friend doctrine, its habeas petition should be dismissed, and its emergency request accordingly should be denied for that reason alone. However, even apart from ACLUF's lack of standing, its request for emergency relief in the form of "provid[ing] attorneys from the ACLUF with immediate and unmonitored access" to the detainee in order to "advise [him] of his legal rights and to afford him legal assistance to challenge his unlawful military detention," ACLUF Mot. at 1, should be denied.

The Supreme Court has emphasized that "[h]abeas corpus is governed by equitable principles" and that a habeas court "is not bound in every case to issue the writ"; rather, ultimately, a court must determine, based on law and justice, whether the power of habeas corpus "ought to be exercised." *Munaf*, 553 U.S. at 693 (internal quotation omitted). Among the

16

relevant considerations that the Court identified was the judiciary's well-founded "reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 689. Here, neither law nor equitable considerations favor an order requiring the Department to grant ACLUF attorneys, who do not represent the detainee and have no prior relationship with him, access to the detainee while he is in U.S. military custody in Iraq.

ACLUF argues that the detained individual has a "right to access counsel," citing the Supreme Court's plurality decision in *Hamdi*. ACLUF Mot. at 6-7. However, *Hamdi* did not recognize such a right. In *Hamdi*, the petitioner had asked the Court to hold that the Fourth Circuit "erred by denying him immediate access to counsel upon his detention," but the Court declined to issue such a holding. *Hamdi*, 542 U.S. at 539 (plurality). The plurality observed that, by the time of Supreme Court proceedings, nearly three years after Hamdi was captured during military operations in Afghanistan, he had met with counsel several times. *See id.* at 510, 539.

None of the other cases cited by ACLUF support the notion that an individual captured on the battlefield while military operations are ongoing has an "immediate" right to access counsel, much less to access attorneys who in fact have not been retained as the individual's counsel. In *Omar v. Harvey*, 514 F. Supp. 2d 74 (D.D.C. 2007), Omar had been arrested by U.S. military forces in Iraq in October 2004. *Id.* at 76. The Court's decision nearly three years later, in September 2007, noted that the Government had voluntarily agreed to allow attorney access subject to the same conditions that others were able to visit the facility where Omar was held at that time. *Id.* at 77. However, the Court also recognized that the scope of the petitioner's right to counsel under the circumstances of the case "remain[ed] ill-defined" and declined to order the Government to transfer Omar in order to facilitate counsel's access. *Id.* at 77-78.

17

The Supreme Court's decisions in *Rasul* and *Munaf* also did not address a detainee's right to access counsel. Rather, the Court in *Rasul* held that federal courts have jurisdiction to hear habeas petitions of individuals captured abroad who sought to challenge their "potentially indefinite detention" at the U.S. Naval Base at Guantanamo Bay, Cuba. *Rasul*, 542 U.S. at 485. The Court in *Munaf* similarly held that federal courts have jurisdiction to hear habeas petitions filed by U.S. citizens held by the U.S. military overseas. *Munaf*, 553 U.S. at 688. Ultimately, the Court in *Munaf* declined to prohibit the Government from transferring the petitioners to Iraqi custody so that Iraq could exercise its sovereign authority to prosecute the petitioners for crimes committed on its soil. *Id.* at 699, 704.

In *Boumediene v. Bush*, 553 U.S. 723 (2008), the Court held that the Detainee Treatment Act of 2005, 119 Stat. 2739, did not override Guantanamo detainees' ability to seek habeas relief in federal court. *Boumediene*, 553 U.S. at 732-33. The Court also rejected the notion that Guantanamo detainees must exhaust the statutory procedure before seeking habeas relief, noting that the cases before it "do not involve detainees who have been held for a short period of time"; rather, some detainees had been held, at that point, for as long as six years. *Id.* at 794.

At the same time, the Court in *Boumediene* warned that its decision "should not be read to imply that a habeas court should intervene the moment an enemy combatant steps foot in a territory where the writ runs." *Id.* at 795. Rather, the Court recognized that "[t]he Executive is entitled to a reasonable period of time to determine a detainee's status before a court entertains that detainee's habeas corpus petition." *Id.* Thus, "[e]xcept in cases of undue delay, federal courts should refrain from entertaining an enemy combatant's habeas corpus petition at least until after the Department [of Defense] . . . has had a chance to review his status." *Id.*

18

(identifying the specific process that the Department had established for such a review of the status of Guantanamo detainees).

ACLUF also cites district court decisions addressing Guantanamo detainees' access to counsel, but those cases also do not hold that a detainee must be allowed access to attorneys immediately upon his capture. Instead, the cited decisions concerned the Government's attempt to establish procedures for detainees' existing counsel (defined as counsel who had already been employed or retained by a detainee) to access the Guantanamo detention facility in order to visit their clients. *See In re Guantanamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8, 21, 28 (D.D.C. 2012) (holding that six Guantanamo detainees whose prior habeas petitions were either dismissed or denied could continue to receive access to their counsel, pursuant to an existing protective order, in order to pursue the possibility of filing new habeas petitions in the future); *Al-Odah v. United States*, 346 F. Supp. 2d 1, 8, 15 (D.D.C. 2004) (concluding that, although the habeas statute may not provide a right to counsel, the Court in its discretion would hold that the Guantanamo detainees were entitled to the assistance of counsel for the purpose of seeking habeas relief, and that a framework would be adopted to govern counsel access).

Finally, ACLUF cites *Miranda v. Arizona*, 384 U.S. 436 (1966), as "reinforc[ing] the urgency of counsel access." ACLUF Mot. at 8. However, *Miranda* is not a case about providing individuals in detention with access to attorneys that they might then hire as their counsel to pursue habeas corpus relief. Rather, the Supreme Court's focus in *Miranda* was on custodial police interrogation, and under what circumstances statements made by an individual in police custody were admissible in a criminal prosecution of that individual. *Miranda*, 384 U.S. at 439. Ultimately, the Supreme Court in *Miranda* held that statements made by an individual in custody

19

were only admissible if the individual had first been given the specific warnings set forth in the opinion. *Id.* at 479. Thus, the question of whether the detainee here was given *Miranda* warnings may be relevant to whether any statements made by the detainee could be used by the Government in a criminal prosecution. However, nothing in *Miranda* suggests that this Court should grant ACLUF's motion and require Respondent to allow ACLUF or other interested attorneys to contact the detainee and discuss the possibility of pursuing habeas relief on his behalf.

The relief that ACLUF seeks through its emergency motion, thus, is not mandated by the case law that it cites, and indeed, ACLUF does not even attempt to explain how the right to access counsel that it invokes could translate here into requiring immediate access to attorneys who in fact are not presently the detainee's counsel, but simply wish to speak to the detainee about the possibility of providing legal services. ACLUF acknowledges that it is possible that the detainee "might refuse legal assistance." ACLUF Mot. at 6 n.2. It is also possible that ACLUF is not the counsel that the detainee would choose to retain. *See Does 1-570*, 2006 WL 3096685, at *6 ("The Court further notes that not all detainees [on whose behalf counsel in that case sought to act as next friend] may want to be represented by the Counsel in this case."). ACLUF does not explain why its attorneys should be uniquely entitled to access the detainee. Indeed, if the Court were to grant ACLUF's motion, it is not clear on what basis it could deny similar motions by other attorneys who, like ACLUF, also have no relationship with the detainee.

Ultimately, ACLUF fails to provide a sound basis to grant its motion. Indeed, in many respects such a motion should be denied on its face as premature. As described above, the detainee here has had an avenue to contact his family, through ICRC representatives, if he

20

wished to do so. Dalbey Decl. ¶ 4. Meanwhile, the Department is still in the process of determining what its final disposition regarding this individual will be—which is not extraordinary given the relatively short time that has passed and the fact that the individual is currently being held within an armed conflict zone. *Id.* ¶¶ 3, 5. As described above, the Supreme Court has recognized that "[t]he Executive is entitled to a reasonable period of time to determine a detainee's status" before a habeas petition is appropriate. *See Boumediene*, 553 U.S. at 795. Here, because the Department is still in the process of making that determination, it would be inappropriate at this time to require the Department to grant access to the detainee, particularly by attorneys who do not represent him and have no prior relationship to him. Respondent's declarant has also explained that granting access to the detainee, even via teleconference, would be no easy matter, given that the detention location has restricted civilian access based on military operational concerns and lacks any unclassified video-teleconference capability. Dalbey Decl. ¶¶ 3, 6.

Equitable and prudential considerations thus weigh against taking the unprecedented step that ACLUF's motion, seeking attorney access to an unknown detainee held in a U.S. military zone, would require. *See Munaf*, 553 U.S. at 689 (indicating that courts should be "reluctant to intrude upon the authority of the Executive in military and national security affairs"). The Court therefore should deny ACLUF's request for an order requiring that its attorneys be allowed access to the detained individual.

## CONCLUSION

For the foregoing reasons, the Court should dismiss ACLUF's petition for lack of subject matter jurisdiction and should deny ACLUF's request for attorney access.

21

October 30, 2017

CHAD A. READLER
Acting Assistant Attorney General
JESSIE K. LIU
United States Attorney
TERRY M. HENRY
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC   20530
Tel.   (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*