**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, as Next Friend, on behalf of
Unnamed U.S. Citizen in U.S. Military Detention,

      *Petitioner*,

      v.

GEN. JAMES N. MATTIS,
  in his official capacity as SECRETARY OF
  DEFENSE,

      *Respondent*.

No. 17-cv-2069 (TSC)

**PETITIONER'S SUPPLEMENTAL BRIEF**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 1

    I.   THE COURT HAS AUTHORITY TO ORDER COUNSEL ACCESS FOR THE
        DETAINED AMERICAN CITIZEN NOW. ................................................................ 1

    II.  TO THE EXTENT IT DEEMS IT NECESSARY, THE COURT HAS AUTHORITY
        TO ORDER JURISDICTIONAL DISCOVERY TO RESOLVE FACTS
        NECESSARY TO DETERMINE PETITIONER'S NEXT FRIEND STANDING ........... 5

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abu Ali v. Ashcroft,*
  350 F. Supp. 2d 28 (D.D.C. 2004) ........................................................................ 6, 8

*Adem v. Bush,*
  425 F. Supp. 2d 7 (D.D.C. 2006) ..................................................................... 3, 9, 10

*Al Odah v. United States,*
  346 F. Supp. 2d 1 (D.D.C. 2004) .......................................................................... 2, 3

*Al Odah v. United States,*
  62 F. Supp. 3d 101 (D.D.C. 2014) ............................................................................ 7

*Bastin v. Fed. Nat'l Mortg. Ass'n,*
  104 F.3d 1392 (D.C. Cir. 1997) ................................................................................ 8

*Boumediene v. Bush,*
  553 U.S. 723 (2008) .................................................................................................. 4

*Clinton v. Goldsmith,*
  526 U.S. 529 (1999) .................................................................................................. 7

*Core VCT Plc v. Hensley,*
  59 F. Supp. 3d 123 (D.D.C. 2014) ............................................................................ 9

*Does 1–570 v. Bush,*
  No. Civ. A. 05-313 (CKK), 2006 WL 3096685 (D.D.C. Oct. 31, 2006) .................. 8

*Edmond v. U.S. Postal Serv. Gen. Counsel,*
  949 F.2d 415 (D.C. Cir. 1991) .................................................................................. 6

*Ex parte Hull,*
  312 U.S. 546 (1941) .................................................................................................. 5

*FC Inv. Grp. LC v. IFX Mkts., Ltd.,*
  529 F.3d 1087 (D.C. Cir. 2008) ................................................................................ 8

*Fenstermaker v. Bush,*
  No. 05 Civ. 7468 (RMB), 2007 WL 1705068 (S.D.N.Y. June 12, 2007) ................ 9

*Fenstermaker v. Obama,*
  354 F. App'x 452 (2d Cir. 2009) .............................................................................. 9

*Goodman Holdings v. Rafidain Bank,*
  26 F.3d 1143 (D.C. Cir. 1994) ................................................................................ 10

iii

*Hamdi v. Rumsfeld,*
542 U.S. 507 (2004) ........................................................................ 2, 3, 4, 5

*Harris v. Nelson,*
394 U.S. 286 (1969), ................................................................................ 6

*In re Guantánamo Bay Detainee Continued Access to Counsel,*
892 F. Supp. 2d 8 (D.D.C. 2012) .......................................................... 2, 5

*In re Guantánamo Detainee Cases,*
No. 1:05-cv-00883 (D.D.C. Oct. 14, 2005) ................................................ 2

*INS v. St. Cyr,*
533 U.S. 289 (2001) .................................................................................. 6

*Jones v. Cunningham,*
371 U.S. 236 (1963) .................................................................................. 7

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................................................ 10

*Munaf v. Geren,*
553 U.S. 674 (2008) .............................................................................. 1, 4

*Padilla ex rel. Newman v. Bush,*
233 F. Supp. 2d 564 (S.D.N.Y. 2002) .................................................... 2, 6

*Padilla ex rel. Newman v. Rumsfeld,*
243 F. Supp. 2d 42 (S.D.N.Y. 2003) ........................................................ 2

*Prakash v. American Univ.,*
727 F.2d 1174 (D.C. Cir. 1984) ............................................................ 6, 7

*Rasul v. Bush,*
542 U.S. 466 (2004) .................................................................................. 3

*United States v. Mine Workers of Am.,*
330 U.S. 258 (1947) .................................................................................. 5

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) ................................................................................ 10

**Statutes**

18 U.S.C. § 3006A .................................................................................... 2, 3

28 U.S.C. § 1651 ................................................................................... 2, 3, 7

28 U.S.C. § 2241 ................................................................................... 2, 3, 8

iv

28 U.S.C. § 2242 ................................................................................................................. 8

28 U.S.C. § 2243 ................................................................................................................. 9

**Other Authorities**

20 Charles Alan Wright & Mary Kay Kane, *Federal Practice Deskbook* (2d ed. 2017) ............... 5

Paul D. Halliday, *Habeas Corpus: From England to Empire* (2010) ........................................... 7

U.S. Const., Art. I, § 9 ................................................................................................................. 7

**INTRODUCTION**

The fundamental point here is well settled: once a citizen's habeas right attaches, as it has

in this case, the government may not frustrate the exercise of that right by preventing him from

accessing the Court and counsel.  And, absent a valid suspension by Congress, the Court has the

authority—and, indeed, the obligation—to fashion procedures necessary to effectuate the writ by

making it available to an American citizen detained by his government and allowing him to

access counsel.

The government's circular, Kafkaesque arguments are not limited to the facts of this

case—as alarming as those facts are—but would apply to any future habeas petition filed on

behalf of an American citizen.  The necessary implication of the government's position is that a

court would be powerless *even to inquire* whether the citizen wished to file a habeas petition and

to access counsel, if no family member or close associate had somehow managed to learn about

his detention and had the desire and the wherewithal to seek relief on his behalf.

Habeas corpus has been an essential safeguard of liberty for centuries for a reason: it does

not depend on government beneficence or fortuity of circumstance.  This Court should reject the

government's assault on the Great Writ and maintain the judiciary's vital role in the

constitutional separation of powers.

**ARGUMENT**

I.   **THE COURT HAS AUTHORITY TO ORDER COUNSEL ACCESS FOR THE
     DETAINED AMERICAN CITIZEN NOW.**

The unnamed U.S. citizen detained by the U.S. military in Iraq unquestionably has the

right to seek habeas relief in this Court.  *Munaf v. Geren*, 553 U.S. 674, 685–86 (2008) (holding

unanimously that where a U.S. citizen is in U.S. custody, it "end[s] the jurisdictional inquiry"

over his habeas petition).  This citizen's habeas right has attached because the military has

determined his status and decided "to *continue* to hold [him]" as a law-of-war detainee.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 534 (2004).  Because his habeas right has attached, he also "unquestionably" has the right to access counsel to vindicate that habeas right.  *Id.* at 539; *see Al Odah v. United States*, 346 F. Supp. 2d 1, 5 (D.D.C. 2004) (right of counsel access rooted in "the federal habeas statute, 28 U.S.C. § 2241, the Criminal Justice Act, 18 U.S.C. § 3006A, and the All Writs Act, 28 U.S.C. § 1651"); *In re Guantánamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8, 15 (D.D.C. 2012) (detainees seeking habeas relief must have access to counsel for access to the courts to be "adequate, effective, and meaningful" (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).  Moreover, the Court is "authorized to craft the procedures necessary to make [a habeas challenge] possible, in order that the Court might fully consider [the citizen's] challenge to [his] detention"—a power that includes "the authority to appoint counsel to represent habeas petitioners."  *Al Odah*, 346 F. Supp. 2d at 7; *Padilla ex rel. Newman v. Bush*, 233 F. Supp. 2d 564, 600 (S.D.N.Y. 2002) (court has authority "to appoint counsel for the [habeas] petitioner if the court determines that 'the interests of justice so require'" (quoting 18 U.S.C. § 3006A(2)(B)), *opinion adhered to on reconsideration sub nom. Padilla ex rel. Newman v. Rumsfeld*, 243 F. Supp. 2d 42 (S.D.N.Y. 2003); *see also* Order, *In re Guantánamo Detainee Cases*, No. 1:05-cv-00883 (D.D.C. Oct. 14, 2005), ECF No. 5 (appointment by Chief Judge Hogan of Federal Public Defender offices as counsel for various Guantánamo detainees).

This Court should exercise its authority under the federal habeas statute, the All Writs Act, and the Criminal Justice Act to permit counsel access under the extraordinary circumstances presented here.  The government has detained this American citizen for nearly three months without charge, without a lawyer, without access to a court, and without publicly releasing his name.  And in the one instance where the government advised him of his constitutional right to counsel, he expressly invoked that right.  Respondent's Corrected Resp. 1–2, ECF No. 21-1.

2

While the detained citizen did not explicitly assert his right to habeas—a right he may be

unaware even exists—his expression of a desire for counsel is more than sufficient for the Court

to exercise its authority to order counsel access to allow him to vindicate his habeas right.

Contrary to the government's portrayal, this authority is not radical.  Indeed, it is worth

reviewing the measures judges held were compulsory for Guantánamo detainees' access to

counsel after the Supreme Court's ruling in *Rasul v. Bush*, 542 U.S. 466 (2004), more than a

decade ago.  As Magistrate Judge Kay explained, even though *none* of those Guantánamo

detainees were U.S. citizens, "[o]nce *Rasul* rejected the proposition of Guantanamo Bay as a

legal black hole," on remand "the Government began drafting proposed procedures that would

govern detainees' access to counsel."  *Adem v. Bush*, 425 F. Supp. 2d 7, 11 (D.D.C. 2006) (citing

*Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2004)).  In *Al Odah*, Judge Kollar-Kotelly relied on

her authority to "fashion procedures" to effectuate the writ to craft a protective order that

governed counsel access.  346 F. Supp. 2d at 6.  And, "[f]ollowing *Rasul* and *Al Odah*, the

Government began . . . to notify detainees that they had 'the right to challenge the legality of

their detention by filing *habeas corpus* petitions in federal court.'"  *Adem*, 425 F. Supp. 2d at 12

(quoting government notice).[1]  Given the Supreme Court's holding in *Hamdi*, 542 U.S. at 534

(habeas right attaches after the government determines a citizen's law-of-war status), and its

---

[1] *Adem* itself is highly instructive, as it rejected a similarly circular government attempt to
dismiss a habeas petition on the basis of next friend standing.  There, the court held that an
individual "detained *incommunicado* without charge by the United States, who does not speak
English, who has no access to family or friends, [and] who ha[d] indicated to a fellow detainee
who is represented by counsel that he wishes to challenge his potentially indefinite detention
without charge" had a right to access counsel.  425 F. Supp. 2d at 18–19.  Like here, the
government in *Adem* argued that the lawyer who had filed the habeas petition on the detainee's
behalf lacked next friend standing.  *Id.* at 23–26.  But the court rejected that argument,
explaining that the next friend standing inquiry was not even "ripe," *id.* at 24, and ordered the
government to "allow [the detainee's] counsel to meet with him in person as soon as possible,"
*id.* at 26.

holding in *Munaf*, 553 U.S. at 685–86 (U.S. citizen held by U.S. military in Iraq has right to habeas), the unnamed U.S. citizen is entitled to similar protections here.

The government's *Miranda* argument, Respondent's Suppl. Br. 8–10, ECF No. 24, misses the point. The government may not have an obligation to afford the detainee counsel under *Miranda*. But the right at issue here is a *habeas* right, not a *Miranda* right. Because that habeas right has attached, because that right requires meaningful access to the court and thus access to counsel for its enforcement, the Court should order counsel access now.

*Boumediene v. Bush*, 553 U.S. 723 (2008), provides the government no support. In *Boumediene*, the Court said only that the government might have a "reasonable period of time" to determine a non-citizen's status—that is, to assess whether a non-citizen is an enemy combatant whom the government can continue to hold under law-of-war detention authority. Nowhere did the Court suggest it would be "reasonable," Respondent's Suppl. Br. 8, to detain a U.S. citizen for nearly three months without access to habeas—especially where the government *has already determined the citizen's status* and is continuing to hold him under the very legal authority and factual allegations habeas exists to question. *See Hamdi*, 542 U.S. at 516, 535–37.

The government blithely suggests that it "does not intend the detainee's current circumstance to continue indefinitely" and is "diligently working to make a determination regarding [his] future status." Respondent's Suppl. Br. 8. But the Great Writ does not depend on government largesse or the government's vague speculation about its possible future plans when the liberty and potentially the life of an American citizen hang in the balance: it exists to challenge current detention by the executive. The government's astounding claim—that it has unbounded authority to imprison this American citizen without access to habeas corpus merely because it is contemplating some possible alternative future disposition—seeks the same "blank check" that the Supreme Court squarely rejected in *Hamdi*. 542 U.S. at 536; *see also id.* at 536–

4

37 ("[I]t would turn our system of checks and balances on its head to suggest a citizen could not make his way to court with a challenge to the factual basis for his detention by his Government, simply because the Executive opposes making available such a challenge."); *Ex parte Hull*, 312 U.S. 546, 549 (1941) (jailor "may not abridge or impair [a] petitioner's right to apply to a federal court for a writ of habeas corpus").  This citizen has the right to challenge his detention now and he has a right to access counsel in pursuing that challenge.  *See In re Guantánamo Bay Detainee*, 892 F. Supp. 2d at 28 ("The Court, whose duty it is to secure an individual's liberty from unauthorized and illegal Executive confinement, cannot now tell a prisoner that he must beg leave of the Executive's grace before the Court will involve itself.  This very notion offends separation-of-powers principles and our constitutional scheme.").

## II. TO THE EXTENT IT DEEMS IT NECESSARY, THE COURT HAS AUTHORITY TO ORDER JURISDICTIONAL DISCOVERY TO RESOLVE FACTS NECESSARY TO DETERMINE PETITIONER'S NEXT FRIEND STANDING.

If the Court believes the current record is still insufficient to determine that Petitioner has next friend standing in this case, it should order jurisdictional discovery to resolve any facts necessary to make that determination.

A federal court's inherent power to determine its own jurisdiction is a cardinal principle of federal jurisdiction.  *See United States v. Mine Workers of Am.*, 330 U.S. 258, 290–92 & n.57 (1947); 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice Deskbook* § 17 (2d ed. 2017) ("'Jurisdiction to determine jurisdiction' refers to the power of a court to determine whether it has jurisdiction over the parties to and subject matter of a suit. If the jurisdiction of a federal court is questioned, the court has the power, subject to review, to determine the jurisdictional issue.").  A federal court possesses "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction."  *Prakash v. American*

*Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984), and has "broad discretion" in structuring this discovery, *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991).

The Court's authority to order jurisdictional discovery applies to habeas actions.  As the Supreme Court held in *Harris v. Nelson*, 394 U.S. 286 (1969), "a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require.'"  *Id.* at 290 (quoting 28 U.S.C. § 2243)); *accord Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 69 (D.D.C. 2004) (authorizing discovery where the facts alleged, if "shown to be true," would confirm habeas jurisdiction).  This authority is rooted in the habeas statute, *Harris*, 394 U.S. at 299 (citing 28 U.S.C. §§ 2243, 2246)), and in the All Writs Act, *id.* at 299–300 (citing 28 U.S.C. § 1651)).  *See Padilla*, 233 F. Supp. 2d at 602–03 (recognizing district court's broad latitude to conduct jurisdictional discovery under federal habeas statute and All Writs Act).  Indeed, as the Supreme Court has instructed, a federal judge not only has the authority, but also "the duty," to secure facts necessary for its exercise of habeas jurisdiction.  *Harris*, 394 U.S. at 299–300; *see id.* at 299 ("Where their duties require it, this is *the inescapable obligation of the courts*." (emphasis added)).[2]  To interpret the habeas statute and the All Writs Act as denying the Court this authority would raise "serious constitutional problems" under the Suspension Clause by depriving a U.S. citizen of his right to seek habeas relief under the Constitution.  *See INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001) (construing statute not to deprive federal courts of habeas

---

[2] The government argues that *Harris* supports its position because it held that "the broad discovery provisions of the Federal Rules of Civil Procedure do not apply as of right in habeas cases," Respondent's Suppl. Br. 4 (citing 394 U.S. at 295), but the government omits that just pages later in *Harris*, the Court explained that the federal habeas statute and the All Writs Act provide for jurisdictional discovery in habeas proceedings, *see* 394 U.S. at 299–300.

jurisdiction to avoid "serious constitutional problems" under the Suspension Clause where another construction was "fairly possible" (quotation marks omitted)).[3]

The government asserts—without citation or support—that the Court lacks the authority to order Respondent to inform the Court of the detained U.S. citizen's wishes because that is "not jurisdictional discovery." Respondent's Suppl. Br. 2–3. But, the government concedes it "is not currently aware of any additional information" regarding the detainee's desire to pursue habeas relief. Respondent's Corrected Resp. 2. This Court has authority to fashion necessary and suitable procedures "to ferret out the facts pertinent" to its exercise of jurisdiction, *Prakash*, 727 F.2d at 1179–80, and to ensure habeas continues "to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty," *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *see also* Paul D. Halliday, *Habeas Corpus: From England to Empire* 176 (2010) (courts historically "issu[ed] the writ by reasoning . . . from the writ's central premise: that it exists to empower the justices to examine detention in all forms"). The government offers nothing to support its suggestion that merely because the pertinent facts here are in the possession of the detainee, rather than the government, the Court's broad and flexible power to "determine the facts, and dispose of the matter as law and justice require," 28 U.S.C. § 2243, evaporates.

---

[3] The government similarly misconstrues Petitioner's reliance on the All Writs Act. *See* Respondent's Suppl. Br. 3–4. Of course the All Writs Act "does not confer subject matter jurisdiction" in this case, Respondent's Suppl. Br. 3–4; that jurisdiction is conferred here by federal habeas statute and its next friend standing provision, 28 U.S.C. §§ 2241–2242, along with Article I, Section 9, Clause 2 of the U.S. Constitution. *See* Pet. for a Writ of Habeas Corpus ¶¶ 3–4, ECF No. 4. The All Writs Act cases the government cites do not support its position because the challenged actions in those cases were outside the court's jurisdiction. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (rejecting use of All Writs Act to reverse administrative penalty because outside court-martial jurisdiction); *Al Odah v. United States*, 62 F. Supp. 3d 101, 109–11 (D.D.C. 2014) (same for petitioner's challenge to speculative future detention that might never occur because outside habeas jurisdiction).

The government grounds much of its objection to jurisdictional discovery on the notion that "it is based solely on speculation." Respondent's Suppl. Br. 4. It also contends that the Court lacks the power to order jurisdictional discovery because Petitioner "*cannot* know the detainee's wishes regarding the pursuit of habeas relief without having conferred with him." Respondent's Suppl. Br. 5. Both arguments misunderstand the purpose of jurisdictional discovery and the principles underlying next friend standing.

First, the purpose of jurisdictional discovery in a habeas proceeding like this one is to confirm the Court's jurisdiction. And while "a request for jurisdictional discovery cannot be based on mere conjecture or speculation," *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) (cited at Respondent's Suppl. Br. 5), the facts here are nothing close to "rank speculation," *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997). Indeed, far from having "no evidence at all to support jurisdictional discovery," Respondent's Suppl. Br. 6, the detained citizen has already asked for a lawyer. Respondent's Corrected Resp. 1–2. To conclude that he seeks a lawyer to address his detention is a reasonable inference under the circumstances. *See Abu Ali*, 350 F. Supp. 2d at 41 (district court must draw "all reasonable inferences in the petitioner's favor" when a respondent challenges the legal sufficiency of the petitioner's jurisdictional allegations). For that reason, this case thus differs fundamentally from *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) (cited at Respondent's Suppl. Br. 5–6, 8). In *Al-Aulaqi*, the court said, not only was there was "no evidence that [the putative next friend's] son wants to vindicate his U.S. constitutional rights through the U.S. judicial system," but the son had "indicated precisely the opposite—i.e., that he believes it is *not* in his best interests to prosecute this case." *Id.* at 20–21. The court denied next friend standing in *Does 1–570 v. Bush*, No. Civ. A. 05-313 (CKK), 2006 WL 3096685 (D.D.C. Oct. 31, 2006), for the same reason: the record contained substantial evidence that the detainees did *not* wish to pursue habeas relief. *Id.*

8

at *5 (noting that 625 detainees had already filed petitions and 54 had filed petitions *pro se*,

demonstrating that those detainees who wished to "have been able to file petitions before the

Court in large numbers").[4]  And in *Fenstermaker v. Obama*, 354 F. App'x 452 (2d Cir. 2009)

(cited at Respondent's Suppl. Br. 5, 8), the Second Circuit held that the district court did not

abuse its discretion in denying jurisdictional discovery, *id.* at 456, where some of the detainees

whom the putative next friend purported to represent "*actually ha[d]* filed actions with counsel"

and where that putative next friend was "attempting to become second counsel to people who

*already* [we]re represented and ha[d] *already* filed actions in federal court," *Fenstermaker v.*

*Bush*, No. 05 Civ. 7468 (RMB), 2007 WL 1705068, at *6 (S.D.N.Y. June 12, 2007) (emphases

added).  In the extreme circumstances here—where the government has failed to inform the

detainee of his right to file a habeas petition, prevented the detainee from accessing the court or

counsel himself, and refused to release the detainee's name—it would be appropriate for the

Court to order jurisdictional discovery to resolve any uncertainty about the detainee's wishes.

*See Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 125 (D.D.C. 2014) (courts have broad

discretion to conduct jurisdictional discovery even when plaintiffs had only "present[ed]

evidence that *arguably* contradicted [the] defendant's claim" (emphasis added)).

Second, the government argues that because (in its view) Petitioner has not yet

established next friend standing, the Court lacks authority to order jurisdictional discovery to

assist it in determining whether Petitioner does, in fact, have such standing.  That argument puts

the cart before the horse.  In *Adem*, the court rejected the government's similar circular

---

[4] The government conveniently ignores that prior to Judge Kollar-Kotelly's decision in *Does 1–570*, the government had notified Guantánamo detainees of their "right to challenge the legality of their detention by filing *habeas corpus* petitions in federal court," either by filing a petition themselves or by asking a friend or family member or a lawyer to file such a petition with the court.  *Adem*, 425 F. Supp. 2d at 12–13.

contention that counsel needed to meet with a detainee "to obtain the very authorization of representation that [the government] insist[s] be provided prior to any visits." 425 F. Supp. 2d at 8–9. To avoid placing counsel in this "Sisyphean quagmire," *id.* at 14, the court ordered the government to provide counsel access to the detainee to obtain the necessary authorization of representation, *id.* at 8, 23—before the Court would even address the government's argument that the petitioner lacked next friend standing, *id.* at 24. The same logic applies here.[5]

Indeed, the government elsewhere acknowledges that it is appropriate for a district court to order jurisdictional discovery unless there is "no reason to believe the information will materially affect the court's jurisdictional analysis." Respondent's Reply in Support of Mot. to Dismiss 17, ECF No. 15. *See, e.g.*, *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994) (jurisdictional discovery appropriate "if it could produce [facts] that would affect [the court's] jurisdictional analysis"). And there is more than sufficient reason to think that the facts discovered by the proposed jurisdictional inquiry could materially inform the analysis here.

**CONCLUSION**

For the foregoing reasons, the Court should order counsel access or, alternatively, order expeditious jurisdictional discovery to resolve facts pertinent to Petitioner's next friend standing.

---

[5] The government argues that standing must exist at the time of filing, Respondent's Suppl. Br. 7, but cites cases addressing only the requirements of Article III standing, which is not at issue here. The citizen detainee, the real party in interest, indisputably meets those requirements. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requirements of injury, causation, and redressability). Next friend standing, by contrast, is prudential in nature. *See Whitmore v. Arkansas*, 495 U.S. 149, 161–64 (1990). In any event, the ACLUF had next friend standing at the time of filing because the detained U.S. citizen was inaccessible and because the ACLUF was dedicated to his best interests. *See id.* at 163–64; Petitioner's Opp. to Mot. to Dismiss 4–13, ECF No. 13; Emergency Mot. for Order to Show Cause 3–6, ECF No. 7. The government concedes the first prong of the *Whitmore* test. Respondent's Mot. to Dismiss 6–7 n.1, ECF No. 11. And, to the extent the Court has questions regarding the second prong, it should order appropriate jurisdictional discovery to resolve them.

Dated: December 7, 2017

Respectfully submitted,

/s/ Jonathan Hafetz

Jonathan Hafetz (D.C. Bar No. NY0251)
Hina Shamsi (D.C. Bar No. MI0071)
Brett Max Kaufman (D.C. Bar No.
   NY0224)
Dror Ladin
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004
Tel: 212-549-2500
Fax: 212-549-2654
jhafetz@aclu.org
hshamsi@aclu.org
bkaufman@aclu.org
dladin@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005
Tel: 202-457-0800
Fax: 202-457-0805
aspitzer@acludc.org

Counsel for Petitioner