**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, as Next Friend, on behalf of Unnamed U.S. Citizen in U.S. Military Detention,<br><br>*Petitioner*,<br><br>v.<br><br>GEN. JAMES N. MATTIS,<br>  in his official capacity as SECRETARY OF DEFENSE,<br><br>*Respondent*. | No. 17-cv-2069 (TSC) |

**NOTICE OF FILING OF ADDITIONAL INFORMATION PERTINENT TO EMERGENCY MOTION FOR COUNSEL ACCESS**

Petitioner respectfully provides notice to the Court of an article published last night in the *New York Times* reporting that senior Trump administration national security officials are "embracing a proposal" to transfer the unnamed U.S. citizen detainee to Saudi Arabia, where he reportedly has dual nationality, and that any such transfer could require the detainee to renounce his American citizenship. *See* Charlie Savage, Eric Schmitt & Adam Goldman, *Officials Weigh Sending American Detainee to Saudi Arabia*, N.Y. Times (Dec. 20, 2017), https://nyti.ms/2De9Yqh (attached as Exhibit A).

The proposal underscores the urgency of the relief requested in Petitioner's pending motion for counsel access or, in the alternative, jurisdictional discovery. *See* Emergency Mot., ECF No. 7; Petitioner's Opp. to Respondent's Mot. to Dismiss, ECF No. 13. "Citizenship is among the most momentous elements of an individual's legal status. 'It would be difficult to exaggerate its value and importance.'" *L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017)

(quoting *Schneiderman v. United States*, 320 U.S. 118, 122 (1943)); *accord Costello v. United States*, 365 U.S. 265, 269 (1961) ("American citizenship is a precious right."). Nearly seventy years ago, the Supreme Court made clear that an American cannot be deprived of his citizenship "without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship." *Klapprott v. United States*, 335 U.S. 601, 615 (1949).

If the *New York Times* report is accurate, the government is effectively seeking an end-run around the bedrock protections of this precious right. It has imprisoned an American citizen for more than three months without access to a court or to counsel—circumstances that vastly exceed what the Supreme Court has deemed "inherently coercive." *Ashcraft v. Tennessee*, 322 U.S. 143, 153–54 (1944) (detention for thirty-six hours); *accord Payne v. Arkansas*, 356 U.S. 560, 566–67 (1958) (detention for three days). The government, nevertheless, continues to oppose counsel access, insisting, *inter alia*, that it should be given additional time to determine this citizen's "future status." Respondent's Suppl. Br. 8, ECF No. 24.

There is a considerable risk that the government is now pressuring the detainee to renounce his American citizenship by describing it as his only alternative to indefinite detention. Reportedly, the government has determined that it lacks any basis to criminally prosecute the citizen. *See* Savage et al., *supra*. But coercing a citizen to relinquish his citizenship is no less harmful than coercing a criminal confession; as the Supreme Court has long instructed, the loss of citizenship "may be more grave than consequences that flow from conviction for crimes." *Klapprott*, 335 U.S. at 611; *see also L. Xia*, 865 F.3d at 650 (loss of citizenship "may result in the loss of . . . all that makes life worth living" (quotation marks omitted)).

Indeed, the U.S. government has previously required that an American citizen detained as an "enemy combatant" renounce his citizenship as a condition for his transfer to Saudi Arabia, where he similarly held dual nationality. *See* Jerry Markon, *Hamdi Returned to Saudi Arabia*, Wash. Post (Oct. 12, 2004), http://wapo.st/2BT5c3T. Notably, the American citizen in that case—Yaser Hamdi—had access to counsel in making this most critical of decisions. *Id.* Here, the American citizen currently detained has already demanded access to counsel on the one occasion where the government advised him of this right. *See* Respondent's Corrected Resp. 1–2, ECF No. 21-1. The government should not be permitted to continue to deny this citizen access to a lawyer, whether it seeks to detain him indefinitely or coerce him to take the momentous step of renouncing his citizenship as the necessary price of release from U.S. custody.

Dated:  December 21, 2017                                    Respectfully submitted,

                                                                                /s/ *Jonathan Hafetz*_____
                                                                Jonathan Hafetz (D.C. Bar No. NY0251)

| | |
|---|---|
| Arthur B. Spitzer (D.C. Bar No. 235960) | Hina Shamsi (D.C. Bar No. MI0071) |
| American Civil Liberties Union | Brett Max Kaufman (D.C. Bar No. NY0224) |
|   of the District of Columbia | Dror Ladin |
| 915 15th Street, NW, 2nd Floor | American Civil Liberties Union Foundation |
| Washington, DC 20005 | 125 Broad Street—18th Floor |
| Tel: 202-457-0800 | New York, New York 10004 |
| Fax: 202-457-0805 | Tel: 212-549-2500 |
| aspitzer@acludc.org | Fax: 212-549-2654 |
| | jhafetz@aclu.org |
| | hshamsi@aclu.org |
| | bkaufman@aclu.org |
| | dladin@aclu.org |

*Counsel for Petitioner*

3

# Exhibit A

**The New York Times** | https://nyti.ms/2Dh4wmI

POLITICS

# Officials Weigh Sending American Detainee to Saudi Arabia

By CHARLIE SAVAGE, ERIC SCHMITT and ADAM GOLDMAN    DEC. 20, 2017

WASHINGTON — Senior national security officials in the Trump administration are embracing a proposal to transfer to Saudi Arabia an American citizen being held in Iraq as a wartime detainee, according to officials familiar with internal deliberations.

A meeting last week of the National Security Council's "deputies committee" — the No. 2 leaders of national security departments and agencies — found its members united around a goal of pursuing such a transfer for the detainee, suspected of being a low-level Islamic State fighter, who has been held in military custody as an "enemy combatant" for the past three months, the officials said.

The man, whose name the government has refused to make public, was born in the United States to visiting Saudi parents, the officials said.

A spokesman for the National Security Council declined to comment. The officials spoke on the condition of anonymity to describe the internal deliberations.

The Trump administration has been wrestling with what to do with the man since a Syrian militia turned him over to American forces in mid-September. Legal pressure to resolve his fate has been building since the American Civil Liberties Union filed a habeas corpus lawsuit in October challenging his detention on his behalf.

The government initially wanted to prosecute the man in a civilian court for providing material assistance to terrorism, but the F.B.I. was unable to assemble

sufficient courtroom-admissible evidence against him.

After interrogating the man for intelligence purposes, F.B.I. agents switched to questioning to gather courtroom evidence and read the man the Miranda warning. But after the man heard he had a right to have a lawyer present, the Justice Department disclosed as part of the A.C.L.U. case, he asked for one, so the agents ceased their questioning.

Robert M. Chesney, a national security law professor at the University of Texas, Austin, said that repatriating the detainee to Saudi Arabia, where he was raised and is apparently a dual citizen, was "the most desirable outcome for all parties concerned."

Mr. Chesney noted that there has been no claim that the man did or knows anything important, and he said that holding the man in longer-term military custody would give courts an opportunity to weigh in on unresolved legal questions, including whether Congress properly authorized the war against the Islamic State and the limits of the government's power to hold American citizens as enemy combatants.

"Why would you want to open that can of worms in the first place when you have a perfectly plausible, indeed attractive, disposition option?" Mr. Chesney said.

The officials at the deputies committee meeting agreed that as part of reaching out to the Saudi government, the Trump administration would request diplomatic assurances about what would happen to the man after any transfer.

Previous repatriation deals for lower-level detainees have included assurances that their ability to travel would be restricted, as well as other security measures. Saudi Arabia also operates a custodial rehabilitation program for low-level Islamist radicals.

It was not clear whether such a deal would require the detainee to renounce his American citizenship, eliminating his right to enter the United States. In 2004, when the Bush administration repatriated a former Guantánamo detainee who had

similarly been born in the United States to visiting Saudi parents, Yaser E. Hamdi, the man agreed to renounce his citizenship as part of the arrangement.

By then, Mr. Hamdi had a lawyer. The Trump administration has been fighting to keep a lawyer from reaching the current detainee.

Jonathan Hafetz, the lead A.C.L.U. lawyer in the habeas corpus lawsuit, said that whatever happens, the man should be given access to a lawyer first "to advise him on fundamental questions, including renouncing his citizenship, if that's an issue."

Although the International Committee for the Red Cross has visited the detainee twice, the government has kept secret the most basic facts about him. That he is a dual citizen of Saudi Arabia was earlier reported last week by The Hill, and was subsequently confirmed by officials.

The government has asked the judge overseeing the A.C.L.U.'s case, Judge Tanya S. Chutkan of the Federal District Court of the District of Columbia, to dismiss the lawsuit, saying the rights organization lacks standing because it has no connections to him or his relatives.

But the A.C.L.U., noting that the government is responsible for keeping the man's identity secret and not letting lawyers visit him, has asked Judge Chutkan to order the government to ask the detainee whether he wants to file a habeas corpus lawsuit himself and, if so, whether he wants the A.C.L.U. to represent him. She has not yet ruled.

*On Twitter, follow Charlie Savage @charlie_savage, Eric Schmitt @EricSchmittNYT and Adam Goldman @adamgoldmanNYT.*

A version of this article appears in print on December 21, 2017, on Page A10 of the New York edition with the headline: Officials Weigh Sending American Held as ISIS Fighter to Saudi Arabia.

The New York Times
# Our best to you this season.