IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN DOE, <br> and the AMERICAN CIVIL LIBERTIES <br> UNION FOUNDATION, as Next Friend, <br><br> Petitioners, <br><br> v. <br><br> GEN. JAMES N. MATTIS, <br>   in his official capacity as SECRETARY <br>   OF DEFENSE, <br><br> Respondent. | Civil Action No. 1:17-cv-2069 (TSC) |

**RESPONDENT'S RESPONSE TO PETITIONER'S DECEMBER 21 FILING**

Pursuant to the Court's Minute Order of December 21, 2017, Respondent hereby responds to the notice ("Pet'r Notice," ECF 27) filed on December 21, 2017, by Petitioner American Civil Liberties Union Foundation ("Petitioner" or "ACLUF"), regarding an article published on the *New York Times* website on December 20, 2017. Contrary to Petitioner's mischaracterization, nothing in this article suggests that the detainee who is the subject of the petition in this case "is now [being] pressur[ed] . . .to renounce his American citizenship," Pet'r Notice at 2, nor is such a suggestion accurate.

The *Times* article reports, citing anonymous sources, that Government officials are considering a proposal to transfer the detainee to another country where he was raised and of which he is also a citizen. Respondent previously informed the Court that the Government is considering whether the detainee will remain in military custody elsewhere or be prosecuted, transferred to another country with an interest in the detainee, or released. Resp. Supp. Br. at 5 [ECF No. 24]. Thus, even assuming that the report regarding the Government's consideration of

a transfer is true, such information would be consistent with information that the Government has previously provided.[1]

Petitioner admits as much and does not argue that the possibility of transfer to another country would be a new development. Rather, Petitioner focuses on a statement in the *Times* article that "[i]t was not clear whether such a deal would require the detainee to renounce his American citizenship." *See* Pet'r Notice Ex. A at 3. But that statement is not attributed to any Government source, even an anonymous one. Rather, the only source identified in the article in connection with that statement is Jonathan Hafetz, an ACLUF attorney who has appeared on behalf of Petitioner in this case. Petitioner now cites the *Times* reporters' speculation, and its own counsel's comment on that speculation, as reported in the same article, as a reason for this Court to take immediate action.

Contrary to Petitioner's assertion, nothing in the *Times* article suggests a "considerable risk that the government is now pressuring the detainee to renounce his American citizenship." *See* Pet'r Notice at 2. Indeed, Petitioner's suggestion that the detainee might be improperly coerced into renouncing his U.S. citizenship, *id.* at 2-3, goes far beyond the *Times* reporters' statement that the possibility of future renunciation of U.S. citizenship was "not clear." Petitioner engages in mischaracterization and speculation when attempting to extract such a notion from the article. As of the present time, the United States government has not authorized any

---

[1] Respondent has not provided specific details regarding the options that the Government is currently considering with respect to the detainee, or the status of consideration of any of those options. The Government typically does not discuss publicly the details of a decisionmaking process that may implicate national security and foreign affairs sensitivities because to do so could interfere with its attempts to reach a resolution. Nor would it be appropriate for the Court to oversee such decisionmaking while it is underway, particularly where the Court lacks jurisdiction over this action due to Petitioner's lack of next friend standing.

representative to discuss with the detainee the possibility that he might renounce his U.S. citizenship. Nor does the Government have any information that anyone has attempted to coerce him into doing so.[2]

The Government continues to work diligently to reach a decision regarding what to do with the detainee, but no final decision has yet been reached. Nothing in the *Times* article suggests otherwise. Petitioner's filing fails to present any new information that would justify a Court order allowing immediate counsel access, nor has it presented any additional support for its unprecedented assertion of next friend standing on behalf of a stranger.

December 22, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
JESSIE K. LIU
United States Attorney
TERRY M. HENRY
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC   20530
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Respondent*

---

[2] Even if the possibility of relinquishment of U.S. citizenship were to become an issue in the future, 8 U.S.C. § 1481 provides that any such relinquishment must be voluntary and undertaken with the intention of relinquishing U.S. citizenship. *Vance v. Terrazas*, 444 U.S. 252 (1980). That statute further provides that the voluntariness of a relinquishment of citizenship may be contested in an appropriate legal proceeding after the fact. 8 U.S.C. § 1481(b); *see Gonzalez-Jasso v. Rogers*, 264 F.2d 584, 586–87 (D.C. Cir. 1959). Given the availability of such recourse, there appears to be no case law suggesting that an individual must be provided counsel before he relinquishes citizenship. Thus, Petitioner's arguments in its most recent filing are unwarranted and should not affect the Court's consideration of Petitioner's emergency motion to gain access to the detainee.

3