UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, as Next Friend, on behalf of Unnamed U.S. Citizen,<br><br>    Petitioner,<br><br>    v.<br><br>GEN. JAMES N. MATTIS, in his official Capacity as SECRETARY OF DEFENSE,<br><br>    Respondent. | Case No. 17-cv-2069 (TSC) |

## MEMORANDUM OPINION

Somewhere in Iraq, a United States citizen has been in the custody of the U.S. armed forces for over three months. The detainee, who has been classified as an enemy combatant and whose name has not been released, was advised of his right to counsel and requested the assistance of counsel. To date, the detainee remains unnamed, uncharged, and, despite his request, without access to counsel. This court must now consider whether Petitioner shall be permitted to proceed in this matter as the detainee's next friend.

Petitioner American Civil Liberties Union Foundation ("ACLUF") seeks a writ of habeas corpus as putative next friend on behalf the detainee.[1] (ECF No. 4, Pet.). The Defense Department has moved to dismiss the petition for lack of subject matter jurisdiction, arguing that the ACLUF lacks standing to seek habeas relief on the detainee's behalf, and that the circumstances do not warrant the ACLUF's immediate access to the detainee. (ECF No. 11,

---

[1] The court orally granted the ACLUF's request to proceed pseudonymously *nunc pro tunc* at the November 30, 2017 hearing. (ECF No. 22, Tr. at 4:23–5:1).

1

Mot.). For the reasons stated herein, the court finds that the ACLUF has standing for the limited purpose of ascertaining whether the detainee wishes for it to file a petition on his behalf. Therefore, the court will DENY the Defense Department's motion to dismiss, and order the Defense Department to provide the ACLUF with temporary, immediate and unmonitored access to the detainee so that it may inquire as to whether he wishes to have the ACLUF or court-appointed counsel continue this action on his behalf. The Defense Department may renew its motion should the court learn that the detainee does not wish for the ACLUF to continue in this action. Finally, the court will order the Defense Department to refrain from transferring the detainee until the ACLUF informs the court of the detainee's wishes.

## I.   BACKGROUND

On or about September 12, 2017, the detainee, who is a United States citizen, surrendered to Syrian Democratic Forces, who then transferred him to the custody of United States armed forces, who classified him as an enemy combatant. (ECF No. 11-1, Decl. of Steven W. Dalbey ¶ 3). According to the Defense Department, he remains detained within an armed conflict zone with restricted civilian access. (*Id.*). Other than two visits from representatives of the International Committee of the Red Cross—on September 29, 2017 and October 23, 2017—the detainee has had no contact or communication with anyone except government personnel since his detention. (*Id.* ¶ 4; Pet. ¶¶ 16–17).

On September 29, the American Civil Liberties Union sent a letter to Secretary of Defense James Mattis and Jefferson Sessions, the United States Attorney General. (*Id.* ¶ 18). The ACLU expressed its concern regarding the Department's continuing detention of a United States citizen, and emphasized the detainee's constitutional right to counsel. (*Id.*). The ACLU also informed Secretary Mattis that ACLU attorneys were available to advise the detainee of his

rights and to assist him in securing legal representation. (*Id.*) The ACLU received no response from either government official. (*Id.*).

On October 5, the ACLUF filed a petition for a writ of habeas corpus, requesting the court to order the Defense Department to allow counsel for the ACLUF to meet and confer with the detainee so that they may advise him of his legal rights and provide him with legal assistance. (*Id.* at p. 12). On October 12, the ACLUF filed an Emergency Motion requesting the same relief, noting that the detainee had been in custody for almost a month. (ECF No. 7 at 1). In response to the court's October 19 order to show case (ECF No. 8), the Defense Department filed a motion seeking dismissal of the petition for lack of standing, or in the alternative, denial of the ACLUF's request for immediate and unmonitored access to the detainee. (Mot.).

The court held a hearing on the government's motion to dismiss on November 30, 2017. In response to the court's inquiry at the hearing as to whether the detainee had been advised of his rights, the Defense Department filed a response in which it disclosed that, during questioning by FBI agents, the detainee was advised of "his right to remain silent and not to answer questions," and informed of "his right to consult counsel prior to questioning, to have counsel present during questioning, to have counsel appointed for him before questioning if he could not afford a lawyer, and, if he chose to answer questions without counsel present, to stop answering at any time." (ECF No. 18, Gov't Nov. 30 Filing at 1–2). The filing further stated:

> The individual stated he understood his rights, and said he was willing to talk to the agents but also stated that since he was in a new phase, he felt he should have an attorney present. The agents explained that due to his current situation, it was unknown when he would be able to have an attorney, and the individual stated that it was ok and that he is a patient man. The individual then asked whether when he saw the agents next with his attorney, would it be at his current location or somewhere else. The agents told him they were uncertain when they would see him again. No further questioning for law enforcement purposes has taken place.

(*Id.* at 2).

The Defense Department has not indicated how long it expects to hold the detainee, other than to state that it is "still in the process of determining what its final disposition regarding the individual will be." (Mot. at 21); *see also* (ECF No. 28) ("The Government continues to work diligently to reach a decision regarding what to do with the detainee, but no final decision has yet been reached."). On December 21, 2017, the ACLUF filed a copy of a New York Times article, which reported that national security officials may transfer the detainee to Saudi Arabia, and that such a transfer may require him to renounce his U.S. Citizenship. (ECF No. 27). The court ordered the Defense Department to respond to the ACLUF's notice, but the agency did not confirm or deny whether the detainee will be transferred. (*See generally* ECF No. 28).

## II.   LEGAL STANDARD

A motion to dismiss a petition for habeas corpus for lack of subject matter jurisdiction is subject to review under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Rasul v. Bush,* 215 F. Supp. 2d 55, 61 (D.D.C. 2002), *aff'd, Al Odah v. United States,* 321 F.3d 1134 (D.C. Cir. 2003), *rev'd on other grounds, Rasul v. Bush,* 542 U.S. 466 (2004) (applying Fed. R. Civ. P. 12(b)(1) to the government's motion to dismiss a pending habeas petition on jurisdictional grounds). Under Rule 12(b)(1), the petitioner bears the burden of establishing the court's jurisdiction. *See Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). The petition should be liberally construed, and the court should view the facts in the light most favorable to the petitioner. *See Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). The court need not limit itself to the allegations in the petition, but may consider any materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction

over the case. *See Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

**III.   DISCUSSION**

    **A.   <u>Standing</u>**

Under Article III of the Constitution, a federal court cannot consider the merits of a claim until the party seeking to invoke the jurisdiction of the court can establish the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). In order to do so, a plaintiff "must show that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant, and that is likely to be redressed by a favorable decision." *Hamdi v. Rumsfeld*, 294 F.3d 598, 602 (4th Cir. 2002) (citing *Whitmore*, 495 U.S. at 155) (other citations omitted). Recognizing that some individuals may be unable to seek judicial relief on their own, however, the Supreme Court held in *Whitmore v. Arkansas*, 495 U.S. at 161–62, that a person who does not satisfy Article III's standing requirements may still proceed in federal court through a mechanism known as "next friend" standing. Next friend standing originated in the habeas corpus context, and is codified in the federal habeas statute. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."). The onus is on the putative next friend to establish the requirements for standing. *Whitmore*, 495 U.S. at 164.

*Whitmore* established two requirements for next friend standing. First, the next friend must provide "an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* at 163 (citations omitted). Second, the next friend must demonstrate that it is "truly dedicated to the best interests of the person on whose behalf [it] seeks to litigate." *Id.* The Court

also noted *in dicta* that "it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest," but did not opine on that issue. *Id.* at 163–64.

The ACLUF argues that it has next friend standing here because (1) the detainee is inaccessible, (2) the detainee has requested the assistance of counsel, and (3) "no other putative next friend has come forward" to represent him. (ECF No. 13, Opp. at 4). The ACLUF emphasizes that it is able to properly represent the detainee given its longstanding commitment to "upholding the constitutional rights of individuals" and its experience in representing other U.S. citizens detained under similar circumstances. (*Id.* at 5). Additionally, it argues that given the extreme circumstances of this case, including the Defense Department's refusal to allow anyone (other than the Red Cross) access to the detainee, the ACLUF's lack of a personal relationship with the detainee should not be a bar to next friend standing. (*Id.* at 11–13).

For "purposes of this filing," the Defense Department does not dispute that the first prerequisite to next friend standing is satisfied: the detainee is currently inaccessible, and therefore cannot bring a habeas petition on his own behalf. (Mot. at 6–7 n.1). But the Department argues that the ACLUF cannot meet the second *Whitmore* requirement because it cannot show that it is dedicated to the detainee's best interests, nor can it establish a significant relationship with him. (*Id.* at 6). Having considered the arguments of the parties, and under the facts of this case, the court finds that the ACLUF has demonstrated that it is dedicated to the detainee's best interests, and that a showing of a significant relationship is not required in this case.

### 1.  The "Best Interests" Prong of the *Whitmore* Test

The Defense Department argues that next friend standing should be denied because the ACLUF has not conferred or met with the detainee, and therefore cannot prove that it is pursuing his best interests, and, most importantly, the ACLUF does not know if the detainee wants the ACLUF to pursue habeas relief on his behalf.  (*Id.* 7–10).  The court finds the Defense Department's position to be disingenuous at best, given that the Department is the sole impediment to the ACLUF's ability to meet and confer with the detainee.  Moreover, having informed the detainee of his right to counsel, and the detainee having asked for counsel, the Department's position that his request should simply be ignored until it decides what to do with the detainee and when to allow him access to counsel is both remarkable and troubling.

In support of its argument, the Defense Department cites to three cases where next friend standing was denied, based, in part, on the putative next friend's failure to meet and confer with the detainee to learn of his wishes.  (*Id.* at 8–9).  However, in one of the cases, *Sanchez–Velasco v. Sec'y of Dep't of Corrections,* 287 F.3d 1015 (11th Cir. 2002), the putative next friend had never even attempted to meet with the detainee whose best interests he claimed to represent, despite having the opportunity to do so.  287 F.3d at 1015, 1027.  In the other two cases, the factual records, in addition to showing that the putative next friends failed to meet and confer with the detainees, indicated that the detainees *did not* wish to pursue habeas relief.  *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 21 (D.D.C. 2010) ("Indeed, to the extent that Anwar Al-Aulaqi has made his personal preferences known, he has indicated precisely the opposite—i.e., that he believes it is *not* in his best interests to prosecute this case."); *see also Idris v. Obama*, 667 F. Supp. 2d 25, 28 (D.D.C. 2009) ("By refusing to meet with counsel on at least five

occasions, petitioner has unequivocally refused to authorize counsel to go forward with his case.") (emphasis in original).

The situation here is significantly different. Unlike in *Sanchez*, the ACLUF has tried to meet and confer with the detainee. Its letter to the Secretary of Defense and the Attorney General, just seventeen days after the detainee was taken into custody by U.S. forces, was met with silence. Here, it is the Defense Department's—not the ACLUF's—inaction that has prevented the ACLUF from meeting with the detainee. Moreover, unlike the other two cases upon which the Defense Department relies, in which the detainees did not want to avail themselves of the legal system, there is no indication here that the detainee does not wish to do so. Indeed, it is clear—and not mere speculation—that he wishes to have the assistance of a lawyer. Given the conditions under which the detainee is currently being held, his request for legal assistance is certainly evidence from which this court could infer a desire to avail himself of the legal system. Therefore, the court finds that the ACLUF has satisfied the "best interests" prong of the *Whitmore* test.

### 2. Significant Relationship

The D.C. Circuit has not adopted the significant relationship requirement for next friend standing. *Does v. Bush*, 2006 WL 3096685, at *6 (D.D.C. Oct. 31, 2006) ("[T]his circuit has not addressed whether there must be 'some significant relationship' between a 'next friend' and the individual on whose behalf the 'next friend' seeks to act."). Moreover, it has been suggested that "a court should consider whether or not a proposed 'next friend' has a 'significant relationship' with the detained individual as a consideration (rather than a separate requirement) when determining whether or not a proposed 'next friend' is dedicated to a detainee's best interests." *Id.* at *6 (citing *Sanchez,* 287 F.3d at 1026–27). Nonetheless, the Defense Department argues

that a significant relationship—i.e., such as that of a close family member or previous attorney—is necessary in order to establish next friend standing in this case. (Mot. at 13). The court disagrees.

Even where no relationship—significant or otherwise—exists, next friend standing may be warranted in extreme circumstances. *See Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1167 (9th Cir. 2002) (Berzon, J., concurring) ("In the extreme case, where there is no next friend under traditional criteria, the showing required to meet *Whitmore*'s second prong should be relaxed, to the degree that no relationship should be required if none is practically possible."). Specifically, under Judge Berzon's interpretation of the doctrine, next friend standing may be established in the absence of a relationship if: (1) the petitioner makes "an affirmative and convincing demonstration" of its dedication to the detainee's best interests, "including a showing that [it has] made a reasonable effort to establish a relationship if none exists;" and (2) the petitioner can also show "that the circumstances entirely preclude both the appearance as next friend of anyone with a relationship to the detainee[] as well as the practical representation of the detainee[]'s interests in court by others similarly situated." *Id.* at 1168.

The court finds Judge Berzon's interpretation to be persuasive, and concludes that the ACLUF satisfies both requirements and therefore does not need to establish a significant or prior relationship with the detainee in this case. First, as discussed above, the ACLUF has demonstrated a dedication to the detainee's best interests, and it attempted, prior to filing a petition in this court, to establish a relationship with the detainee by writing the Defense Department to note the detainee's right to counsel and to offer to act on his behalf. (Pet. ¶ 18). It received no response. (*Id.*). Second, the court finds that the circumstances in this case preclude someone with a significant relationship from serving as the detainee's next friend. For over three

months, the detainee's identity and location have remained unknown.  Aside from two visits from the Red Cross, the detainee has had no contact with anyone other than armed forces and law enforcement personnel.  (Decl. of Steven W. Dalbey ¶ 4; Pet. ¶¶ 16–17).

The Defense Department maintains that if the detainee wished to have someone take legal action on his behalf, he could have made this request during his visits with the Red Cross. (Mot. at 15).  But the record is devoid of any information regarding the Red Cross visits (including whether the Red Cross was informed of the detainee's name), whether the detainee has family members or associates who know about his detention, whether he wants them to know of his detention, or whether any such individuals would be willing or able to take legal action on his behalf.

Moreover, the detainee's own statements, as proffered by the Defense Department, indicate that he appears to believe that counsel *will* be appointed for him.  After the detainee told the FBI agents that he "felt he should have an attorney present," the agents indicated they were unsure when he would have access to an attorney, and the detainee "stated that it was ok and that *he is a patient man*.  [He] then asked whether when he saw the agents *next with his attorney*, would it be at his current location or somewhere else."  (Gov't Nov. 30 Filing at 2) (emphasis added).  His statements indicate that not only does he want counsel, but that he is waiting for counsel to be provided.  This would certainly explain why he may not have asked the Red Cross for assistance in obtaining counsel.

The court's ruling on the "significant relationship" issue in this case does not "open the floodgates to 'intruders or uninvited meddlers'" as the Defense Department suggests.  (Mot. at 13) (quoting *Whitmore*, 495 U.S. at 164).  By its decision, the court does not sanction any "unwitting stranger" to establish next friend standing.  (*Id.*).  The court's limited finding is based

on the ACLUF's willingness and ability to serve as the detainee's next friend, and the likelihood that absent the ACLUF's appearance as next friend, the detainee will have no other avenue through which to obtain the assistance he seeks, and to which he is constitutionally entitled. Accordingly, given that the ACLUF has satisfied both prongs of the *Whitmore* test, and that a significant relationship with the detainee is not required under these extreme circumstances, the court finds that the ACLUF has standing in this case.

### B.  <u>Access to Counsel</u>

The Defense Department argues that the detainee does not have the *immediate* right to meet with counsel because his "final disposition" has yet to be determined. (Mot. at 16–21). Relying on *Boumediene v. Bush*, 553 U.S. 723, 795 (2008), the Department argues that it is entitled to a "reasonable period of time to determine the detainee's status before a court entertains" the habeas petition. (Mot. at 18). Specifically, it claims that it needs time to decide whether to "criminally prosecute the individual," "transfer the individual," "release the individual," or "further detain the individual." (Tr. at 21:22–22:2). The Department also contends that it would be difficult to allow the ACLUF access because the detainee is being held in a restricted U.S. military zone. (*Id.* at 21). The court finds these arguments unavailing.

Nothing in *Boumediene* restrains this court from ordering the Defense Department to grant the ACLUF immediate access. In that case, the Supreme Court, having found that foreign nationals were entitled to habeas relief, simply noted that the government should be permitted a reasonable amount of time in which to determine whether such detainees are enemy combatants before a court entertains a writ of habeas corpus. 553 U.S. at 733-34, 783, 795. Here, the Defense Department, which has had the detainee in custody for over three months, has already made this determination. (Decl. of Steven W. Dalbey ¶ 3).

Finally, the Defense Department cannot strip the detainee of his right to habeas relief simply because the Department contends that allowing the ACLUF access "would be no easy matter." (Mot. at 21). The Department is experienced in managing such difficulties in other cases, and has provided no reason why such inconvenience should outweigh the necessity of providing the detainee with the access to counsel he requested months ago.

## IV.  CONCLUSION

For the foregoing reasons, the court will: (1) DENY the Defense Department's motion to dismiss; (2) order that the Defense Department allow the ACLUF immediate and unmonitored access to the detainee for the sole purpose of determining whether the detainee wishes for the ACLUF to continue this action on his behalf; and (3) order the Defense Department to refrain from transferring the detainee until the ACLUF informs the court of the detainee's wishes. The Defense Department may renew its motion to dismiss should the court learn that the detainee does not wish for the ACLUF to continue this action.

Date:  December 23, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge