IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br>and the AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION, as Next Friend,<br><br>Petitioners,<br><br>v.<br><br>GEN. JAMES N. MATTIS,<br>  in his official capacity as SECRETARY<br>  OF DEFENSE,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:17-cv-2069 (TSC) |

**RESPONDENT'S RESPONSE TO PETITIONER'S RESPONSE TO COURT'S ORDER
OF DECEMBER 23, 2017, AND MEMORANDUM IN OPPOSITION TO PETITIONER'S
MOTION SEEKING CONTINUED INTERIM RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 7

I.      THE COURT SHOULD NOT ISSUE AN INJUNCTION PROHIBITING
THE UNITED STATES GOVERNMENT FROM RELEASING THE
DETAINEE TO A FOREIGN COUNTRY ............................................................ 7

      A.     SUPREME COURT AND D.C. CIRCUIT PRECEDENT FORECLOSES
ANY INJUNCTION RESTRAINING THE GOVERNMENT'S
AUTHORITY TO TRANSFER DETAINED INDIVIDUALS ................ 8

           1.     *Munaf v. Geren*, 553 U.S. 674 (2008) ............................................ 9

           2.     *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509
(D.C. Cir. 2009) ......................................................................... 11

      B.     PETITIONER IDENTIFIES NO BASIS ON WHICH THIS COURT
COULD DEVIATE FROM CONTROLLING D.C. CIRCUIT
AUTHORTY ......................................................................................... 13

II.     PETITIONER HAS NOT YET FILED A PROPER VERIFIED PETITION
ON HIS BEHALF AND IN HIS OWN NAME UNDER 28 U.S.C. § 2242 ....... 16

III.    RESPONDENT SHOULD BE ALLOWED ADDITIONAL TIME TO FILE
A RETURN ....................................................................................................... 19

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) ..................................................... 7

*Abdah v. Bush*, No. 04cv1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005) .................... 9

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005) ................................................. 9

*Boumediene v. Bush*, 553 U.S. 723 (2008) ................................................................. 18

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997) ..................... 18

*Ex parte Endo*, 323 U.S. 283 (1944) ................................................................... 13, 14

*Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) ................ 9

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078 (D.C. Cir. 2011) ............. 7

*Hamdi v. Rumsfeld*, 294 F.3d 598 (4th Cir. 2002) ..................................................... 18

*In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120 (D.D.C. 2010) ............. 12

*In re Hamilton*, 11 F. Cas. 319 (S.D.N.Y. 1867) ................................................. 14, 15

*In re Kaine*, 55 U.S. (14 How.) 103 (1853) .............................................................. 14

*Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509 (D.C. Cir. 2009) ...........2, 8, 11-12, 15

*Kiyemba v. Obama* ("*Kiyemba I*"), 605 F.3d 1046 (D.C. Cir. 2010) .......................... 12

*Munaf v. Geren*, 553 U.S. 674 (2008)..............................2, 4, 5, 8-11, 14, 15, 17

*Neely v. Henkel*, 180 U.S. 109 (1901) ...................................................................... 10

*Omar v. McHugh*, 646 F.3d 13 (D.C. Cir. 2011) ...................................................... 12

*Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005) ................................................ 17

*Romero v. Intl. Terminal Operating Co.*, 358 U.S. 354 (1959) .................................... 8

*United States v. Davis*, 25 F. Cas. 775 (C.C.D.C. 1840) (Case No. 14,926) ............... 14

*United States ex rel. Innes v. Crystal*, 319 U.S. 755 (1943) ................................. 13, 14

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) ................................................ 18

*Valentine v. United States ex rel. Neidecker*, 299 U.S. 5 (1936) ................................................ 10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....................................................... 7

## **Statutes**

Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub. L. No. 105-277, Div. G.,
    Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998), codified as note to 8 U.S.C.
    § 1231) ........................................................................................................................................ 4

All Writs Act, 28 U.S.C. § 1651 ........................................................................................... 6, 15

28 U.S.C. §§ 2241 *et seq.* ........................................................................................................ 6

28 U.S.C. § 2242 ...................................................................... 1, 4, 15, 16,17, 18, 19

28 U.S.C. § 2243 ................................................................................................ 17, 18, 20

## <u>INTRODUCTION</u>

Pursuant to the Court's Minute Order of January 5, 208, Respondent submits this response to Petitioner's Motion Regarding Interim Relief [ECF 32]. In its Motion, Petitioner presents three issues for this Court's decision. He asks (1) that the Court issue an extraordinary preliminary injunction forbidding Respondent from releasing Petitioner from its custody into that of another sovereign; (2) that the Court order Respondent to file a factual return even though Petitioner has not filed a petition that either he or his agent has verified, as 28 U.S.C. § 2242 requires; and (3) that the Court require Respondent to file that factual return on a timetable that is not reasonable or workable given the serious complications in compiling facts scattered across multiple agencies and at various classification levels concerning an individual captured by foreign forces on a foreign battlefield. The Court should (1) deny Petitioner's unsupported and baseless request for a preliminary injunction requiring that Respondent maintain custody of Petitioner even if the Government determines, at the end of its decisionmaking process regarding Petitioner's ultimate disposition, that it will transfer Petitioner to the custody of another country with a legitimate interest in him; (2) require Petitioner to file a proper verified petition through his now-retained counsel the American Civil Liberties Union Foundation ("ACLUF"); and (3) give Respondent a reasonable 43 days to compile and provide a factual return setting forth the bases for Petitioner's continued detention.

*First*, Petitioner has identified no legal basis for its request that the Court issue a preliminary injunction requiring Respondent to keep Petitioner in its custody pending resolution of Petitioner's habeas claim.[1] The remedy that habeas corpus furnishes is *release from custody*

---

[1] The Court's previous injunction prohibiting Respondent from transferring the detainee until ACLUF informed the Court of the detainee's wishes has now expired by its own terms. *See* Order of Dec. 23, 2017 [ECF 30].

of the United States Government. It is not a device for *requiring continued custody* by that Government or *preventing* release by that Government to another sovereign with a legitimate interest. Both the Supreme Court and Court of Appeals for the D.C. Circuit have unambiguously recognized as much, explaining that habeas does not provide a means of interfering with "the Executive's ability to conduct military operations abroad"; recognizing that the Judiciary should not "second-guess" the Executive's determination that transfer to another sovereign is the appropriate ultimate disposition of an individual (including a U.S. citizen) detained overseas, *Munaf v. Geren*, 553 U.S. 674, 699-700, 702 (2008); and holding that district courts do not have authority to "bar the Government from releasing a detainee to the custody of another sovereign because that sovereign may prosecute or detain the transferee under its own laws." *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509, 516 (D.C. Cir. 2009), even if they are doing so "to protect the court's jurisdiction over [the petitioner's] underlying claims of unlawful detention," *id.* at 513 n.3. Petitioner has made no attempt to distinguish these cases. They are controlling here and preclude the extraordinary relief Petitioner seeks.

*Second*, the Court granted ACLUF next friend standing for the limited purpose of ascertaining whether Petitioner wishes for ACLUF to file a habeas petition on his behalf. In its filing, ACLUF indicates that the detainee does wish to pursue habeas relief with ACLUF as his counsel. But ACLUF has not yet filed a verified petition on behalf of the detainee. ACLUF's previous petition, filed as a would-be next friend, cannot serve that purpose because it is signed only on behalf of ACLUF as next friend—*not* by Petitioner or someone acting on his behalf. ACLUF therefore must file a valid, verified petition on behalf of the detainee. And the Court should require that it do so using the detainee's real name, consistent with most, if not all, other habeas petitions that are filed by counsel who know the identities of their clients. This Court's

2

prior ruling allowing an anonymous filing should no longer apply now that ACLUF has met with the detainee and knows his identity, and using the detainee's real name would avoid the considerable difficulties that would accompany consideration of the merits of Petitioner's claims under a prohibition on publicly referring to or filing documents including his name.

*Finally*, Respondent respectfully requests additional time within which to file a return, should a verified petition be filed that adequately establishes the Court's habeas jurisdiction. Because a valid petition has not yet been filed, the statutory time limit has not yet begun. Moreover, the nature of Petitioner's challenge to his detention has not yet been set forth. And in any event, the circumstances of this case, with a detainee held halfway around the world and evidence scattered across multiple intelligence and investigative units and agencies, along with the need to make provisions for classified and otherwise protected information, warrant a period longer than three days to prepare a return. Respondent requests 43 days as a reasonable time to gather the relevant facts and file a return in this Court.

## BACKGROUND

On October 5, 2017, ACLUF filed a petition seeking habeas relief on behalf of an unnamed detainee who, the Government indicated, had surrendered to Syrian forces in Iraq in mid-September 2017, and then come into the custody of U.S. military forces, and was being held at a facility in Iraq in the midst of ongoing military operations. ACLUF then filed an emergency motion seeking counsel access to the detainee, with whom it had no prior relationship, in order to determine whether the detainee wished to pursue habeas relief. *See* Pet'r Mot. for Counsel Access. [ECF 7.] Respondent opposed that motion and cross-moved to dismiss on grounds that ACLUF lacked next friend standing to seek habeas relief on behalf of an individual it did not know. [ECF 11.]

On December 23, 2017, following briefing and two hearings on the parties' cross-motions, the Court held that ACLUF "has standing for the limited purpose of ascertaining whether the detainee wishes for it to file a petition on his behalf." Mem. Op. of Dec. 23, 2017 [ECF 29] at 2. The Court also ordered that Respondent "permit the ACLUF immediate and unmonitored access, in person or via videoconferencing, to the detainee for the sole purpose of determining whether the detainee wishes for the ACLUF to continue this action on his behalf, and, in addition, that Respondent "refrain from transferring the detainee until the ACLUF informs the court of the detainee's wishes." Order of Dec. 23, 2017. At the time the Court entered this Order, no motion to enjoin transfer was pending before the Court. Although ACLUF's emergency motion had suggested that the U.S. government was "reportedly contemplating transferring" the detainee to Iraq, where, ACLUF alleged, "he could face a substantial risk of torture and other abuse," *id.* at 3, the proposed order attached to that motion did not include a prohibition on transfer. However, in its reply in support of its motion for access and in opposition to Respondent's motion to dismiss, ACLUF asserted that the detainee had a "right to counsel access to prevent a transfer to torture and an unfair trial" in another country. Pet'r Reply [ECF 13] at 19. Petitioner also noted that the prayer for relief in its petition included a request that the Court order Respondent "to provide notice to the Court and to counsel for the [ACLUF] prior to any transfer" of the detainee. *Id.* at 19 n.2.

In its reply in support of its motion to dismiss, Respondent pointed out that the detainee would not be transferred to a country where he would be tortured because longstanding U.S. policy prohibits such transfer. *See* Gov't Reply [ECF 15] at 12 n.7 (citing Foreign Affairs Reform and Restructuring Act ("FARRA"), Pub. L. No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998), codified as note to 8 U.S.C. § 1231). Respondent also cited the

Supreme Court's decision in *Munaf*, 553 U.S. at 700-02, declining to grant habeas relief to

prevent transfer and holding that such treatment concerns are "to be addressed by the political

branches, not the Judiciary."

ACLUF then filed a notice regarding a *New York Times* article purporting to cite

anonymous Government sources regarding the prospect that the detainee might be transferred to

a foreign country. *See* Pet'r Notice [ECF 27]. The article also contained speculation, not

attributed to any Government source, about whether a deal involving the detainee's transfer

might "require the detainee to renounce his American citizenship." *Id.* ex. A, at 2. ACLUF cited

that speculation as a basis to assert that there was "a considerable risk that the government is

now pressuring the detainee to renounce his American citizenship." Pet'r Notice at 2.

In response to that notice, the Government stated that it had not authorized any

representative to discuss with the detainee the possibility that he might renounce his U.S.

citizenship and had no information that anyone had attempted to coerce the detainee into doing

so. Gov't Response [ECF 28] at 2-3. The Government also pointed out that it had identified the

possibility of transfer to a foreign country as one of the options under consideration but that it

did not typically discuss publicly the details of a decisionmaking process that may implicate

national security and foreign affairs sensitivities because to do so could interfere with its

attempts to reach a resolution. *Id.* at 2 & n.1.

In its opinion accompanying its December 23, 2017 Order, the Court noted that the

Government had not confirmed or denied whether the detainee will be transferred, Mem. Op.

[ECF 29] at 4, but did not address the Supreme Court's decision in *Munaf* or otherwise explain

the basis for its Order temporarily prohibiting transfer. By the terms of its Order, the bar on

transferring the detainee would expire when ACLUF "informs the court of the detainee's

wishes." Order of Dec. 23, 2017.

Following the Court's Order, the parties agreed that ACLUF would meet with the detainee by videoconference on January 3, 2018. The meeting occurred as scheduled. On January 5, 2018, Petitioner filed a response to the Court's Order of December 23, 2017, stating that the detainee wished to pursue habeas relief with ACLUF as his counsel. Pet'r Resp. at 1. Because ACLUF has "inform[ed] the court of the detainee's wishes," Order of Dec. 23, 2017, the Court's temporary prohibition on transfer to facilitate Petitioner's retention of counsel has expired.

Petitioner also requested in his January 5, 2018 filing that the case caption in this action be changed to reflect that "John Doe" is the petitioner, but did not provide any reason for continuing this action pseudonymously, nor did ACLUF file a renewed petition signed and verified on behalf of the detainee. In the same document, Petitioner moved to "continue the interim relief provided in the Court's Order of December 23, 2017 . . . by directing Respondent to refrain from transferring" the detainee "until the Court issues a final judgment on his habeas petition." *Id.* at 2. Petitioner no longer claims that a bar on transfer is justified based on an alleged possibility of torture in the receiving country. *Id.* at 3 n.3 ("Petitioner . . . makes no claims requiring the Court to examine conditions in any receiving country."). Rather, Petitioner asserts that the Court has authority to enjoin transfer pursuant to 28 U.S.C. §§ 2241 *et seq.*, the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, and the All Writs Act, 28 U.S.C. § 1651(a). Pet'r Resp. at 2 & n.3.

## ARGUMENT

I.   **THE COURT SHOULD NOT ISSUE AN INJUNCTION PROHIBITING THE UNITED STATES GOVERNMENT FROM RELEASING THE DETAINEE TO A FOREIGN COUNTRY**

ACLUF moves, as the detainee's counsel, for an order "continu[ing] the interim relief" previously provided by the Court, prohibiting Respondent "from transferring Petitioner until the Court issues a final judgment on his habeas petition." Pet'r Resp. at 2. While Petitioner does not style his motion as one for a preliminary injunction, a preliminary injunction enjoining transfer is what he seeks. That "extraordinary remedy . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The Court of Appeals has emphasized that the "first and most important factor" is whether the moving party has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). "[W]hen a plaintiff has not shown a likelihood of success on the merits, [the Court] need not consider the other factors." *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

Here, as Respondent has previously explained, the Government is in the process of determining what to do with Petitioner—a wartime detainee who surrendered on an active battlefield and who is being held in U.S. military custody in a foreign country. Releasing Petitioner from U.S. custody into the custody of another country with a legitimate interest in him is one of the options under consideration. Recent Supreme Court and D.C. Circuit decisions recognize that the determination whether to release a detainee held abroad into the custody of

7

another sovereign turns on significant national security and foreign relations concerns, and accordingly foreclose any judicial restriction on Respondent's ability to take that course consistent with applicable laws and regulations. Those decisions are controlling here and require denying Petitioner's request for an injunction against his transfer to another sovereign.

### A. SUPREME COURT AND D.C. CIRCUIT PRECEDENT FORECLOSES ANY INJUNCTION RESTRAINING THE GOVERNMENT'S AUTHORITY TO TRANSFER DETAINED INDIVIDUALS

The Court's Order of December 23, 2017 directed Respondent to "refrain from transferring the detainee until the ACLUF informs the court of the detainee's wishes." After meeting with the detainee via videoconference on January 3, 2018, Petitioner ACLUF informed the Court and Respondent of the detainee's wishes on January 5, 2018. The Court's injunction on transfer thus expired at that time. To prevent transfer, Petitioner would need to obtain a new injunction. As discussed below, however, the Supreme Court and D.C. Circuit have made clear that such an injunction is not permitted.

Directly applicable Supreme Court and D.C. Circuit authority bars this Court from restricting the Government's ability to transfer a detainee— either by enjoining transfer directly or by requiring the Government to give advance notice before a transfer occurs. The Supreme Court squarely addressed the issue in *Munaf*, 553 U.S. 674 (2008). The D.C. Circuit then elaborated on that decision in *Kiyemba II,* 561 F.3d 509 (D.C. Cir. 2009). Those decisions make clear that this Court does not have the authority "to bar the Government from releasing a detainee to the custody of another sovereign." *id.* at 516, even if it is doing so "to protect the court's jurisdiction over [the petitioner's] underlying claims of unlawful detention," *id.* at 513 n.3. There is thus no legal basis for Petitioner's request for an injunction against transfer, and Petitioner's motion should be denied.

8

1.      *Munaf v. Geren*, 553 U.S. 674 (2008)

In *Munaf*, the Court considered habeas petitions filed on behalf of two United States citizens detained by U.S. military forces in Iraq, who challenged the legality of their detention and sought to enjoin their transfer to the custody of the Government of Iraq. *Munaf*, 553 U.S. at 689. The Court recognized that such a question required it to "proceed 'with the circumspection appropriate when th[e] Court is adjudicating issues inevitably entangled in the conduct of our international relations.'" *Id.* (quoting *Romero v. Intl. Terminal Operating Co.*, 358 U.S. 354, 383 (1959)). Even greater caution was demanded there because—as here—those issues arose "in the context of ongoing military operations conducted by American forces overseas." *Id.*

The Court began its analysis by confirming that the basic preliminary injunction standard applied, and that any such injunction would be an "extraordinary and drastic remedy." *Id.* (internal quotation omitted). In order to be entitled to a preliminary injunction, the moving party "must demonstrate, among other things, 'a likelihood of success on the merits.'" *Id.* at 690 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006)). The Court held that the lower courts had erred by enjoining transfer without considering the petitioners' likelihood of success on the merits—that is, whether habeas relief would be appropriate to prevent the detainees' transfer to the Government of Iraq, which had initiated criminal proceedings against them. *See id.* at 690, 692-93. Indeed, as a member of this Court recognized even before *Munaf*, "the presence of a sound basis to challenge *the legality of one's detention* does not at all imply that there exists a sound basis to challenge *the legality of one's transfer*." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 194 (D.D.C. 2005) (emphases added). Thus, the merits to be assessed, for purposes of a motion seeking to enjoin or require advance notice of transfer, are the merits of a challenge to the transfer itself, not to the underlying detention. *See*

*id.*; *see also Abdah v. Bush*, No. 04cv1254, 2005 WL 711814, at *4 (D.D.C. Mar. 29, 2005) ("if there are no circumstances under which Petitioners could obtain a court order preventing a contemplated transfer, a preliminary injunction [requiring advance notice of any transfer] should not be granted"). The Court in *Munaf* followed the same reasoning and ultimately concluded that it would be inappropriate for federal courts to use the power of habeas for that purpose. *Munaf*, 553 U.S. at 705.

In its analysis, the Court emphasized that "[h]abeas corpus is governed by equitable principles," and that "prudential concerns . . . may require a federal court to forgo the exercise of its habeas corpus power." *Id.* at 693. The Court observed that neither of the petitioners in that case (Munaf and Omar) sought "release"—the typical remedy in habeas cases—because, for them, release would simply allow their immediate apprehension by Iraqi authorities. *Id.* at 693-94. The Court recognized that "Iraq has a sovereign right to prosecute Omar and Munaf for crimes committed on its soil." *Id.* at 694. And the Court rejected the notion that the Due Process Clause provided any basis to shield a U.S. citizen from transfer to a foreign country for prosecution. *Id.* at 695-96 (citing, among other cases, *Neely v. Henkel*, 180 U.S. 109 (1901), where the Court held habeas relief was unavailable to a U.S. citizen who had been arrested in the United States and sought to avoid extradition to Cuba).

In addition to Iraq's sovereign interest in prosecution, the Court also emphasized its concern with "unwarranted judicial intrusion into the Executive's ability to conduct military operations abroad," recognizing that both Munaf and Omar "were captured by our Armed Forces for engaging in serious hostile acts against an ally in what the Government refers to as 'an active theater of combat.'" *Id.* at 699-700. The Court also recognized that "[t]he Judiciary is not suited to second-guess" the Executive's determination that Iraq's facilities met international standards

for basic prisoner needs and did not present a situation where the detainees would likely be tortured or mistreated. *Id.* at 702. Such issues are ones "to be addressed by the political branches, not the Judiciary." *Id.* at 700.

Finally, the Court rejected a claim that any transfer of the detainees had to be authorized by treaty or statute. *Id.* at 704. The Court distinguished that case from *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5 (1936), which held that the Executive "may not extradite a person held within the United States" absent "'legal authority . . . given by act of Congress or by the terms of a treaty.'" *Munaf*, 553 U.S. at 704 (quoting *Valentine*, 299 U.S. at 9). As the Court explained, *Munaf* was "not an extradition case" because the detainees at issue had voluntarily left the United States and were captured in another sovereign's territory. *Id.* Based on these considerations, the Court held that the petitioners failed to state a habeas claim for which relief can be granted. *Id.* at 705. It thus vacated the injunction preventing the petitioners' transfer and ordered the dismissal of the petitioners' habeas claims. *Id.*

## 2. *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509 (D.C. Cir. 2009)

Following *Munaf*, the D.C. Circuit in *Kiyemba II* considered district court orders requiring 30 days' notice of any planned transfer of detainees from the U.S. detention facility in Guantanamo Bay, Cuba, in one case due to the detainees' alleged "fear of being tortured," and in another case "lest removal from Guantanamo divest the court of jurisdiction over the detainees' habeas petitions." *Id.* at 511. As in *Munaf*, the Court of Appeals applied a preliminary injunction analysis and focused on whether the habeas power ought to be exercised at all in connection with the detainees' possible transfer. *Id.* at 513-14. The Court concluded that the Supreme Court's decision in *Munaf* "precludes a court from issuing a writ of habeas corpus to prevent a transfer" on the grounds asserted by the petitioners in that case, and held further that the district court

lacked the power to require 30 days' advance notice of transfer. *Id.* at 514.

Specifically, the D.C. Circuit ruled that neither the prospect of torture nor the prospect of further detention or prosecution in another country provided a valid ground on which to claim habeas relief. *Id.* at 514-15. Indeed, the Court recognized that the Government's transfer of a detainee to another country is, in effect, a "*release from the custody of the United States*"—the very remedy habeas provides—and that "[j]udicial inquiry into a recipient country's basis or procedures for prosecuting or detaining a transferee . . . would implicate not only norms of international comity but also the same separation of powers principles that preclude the courts from second-guessing the Executive's assessment of the likelihood a detainee will be tortured by a foreign sovereign." *Id.* at 515. In addition, the Court held that "the requirement that the Government provide pre-transfer notice interferes with the Executive's ability to conduct the sensitive diplomatic negotiations required to arrange safe transfers." *Id.*; *see id.* at 519-20 (Kavanaugh, J., concurring) (recognizing the long history of negotiating war-related transfers with other countries, and observing that the "eventual transfer or release of combatants—as well as the transfer or release of those mistakenly detained during wartime—are all necessary and traditional incidents of war implicating compelling governmental interests"). Because a district court cannot "bar the Government from releasing a detainee to the custody of another sovereign," the D.C. Circuit concluded that the detainees' claims failed to state grounds for which habeas relief was available and, accordingly, vacated the preliminary injunctions requiring pre-transfer notice. *Id.* at 516.

The D.C. Circuit reaffirmed the holding of *Kiyemba II* when reinstating its opinion in *Kiyemba I. See Kiyemba v. Obama* ("*Kiyemba I*"), 605 F.3d 1046, 1048 (D.C. Cir. 2010) ("It is for the political branches, not the courts, to determine whether a foreign country is appropriate

for resettlement.") (citing *Kiyemba II*, 561 F.3d at 514-16). And the Court of Appeals and members of this Court have continued to rely on *Kiyemba II* when rejecting law-of-war detainees' requests for injunctions barring transfer to other countries. *E.g.*, *Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011) (holding that [i]n light of th[e] controlling circuit precedent" in *Kiyemba II*, the petitioner's argument that the Court could review conditions in a receiving country was unavailing); *In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120, 123 (D.D.C. 2010) (recognizing that once *Kiyemba II* was decided, a similar injunction in that case dissolved automatically). Thus, there can be no dispute that *Kiyemba II*'s remains controlling.

### B.   PETITIONER IDENTIFIES NO BASIS ON WHICH THIS COURT COULD DEVIATE FROM CONTROLLING D.C. CIRCUIT AUTHORTY

In light of *Munaf* and *Kiyemba II*, there is no lawful basis for this Court to enjoin Petitioner's transfer. As in those cases, Petitioner cannot establish a likelihood of success on the merits of a claim seeking to prohibit the detainee's release from U.S. military custody in the territory of a foreign sovereign into the custody of that sovereign or another foreign sovereign that has a legitimate interest in receiving the detainee—regardless of whether the foreign sovereign intends to prosecute, further detain, or release the detainee once it acquires custody.

Petitioner cites no authority to the contrary. Rather, Petitioner relies on cases—primarily *Ex parte Endo*, 323 U.S. 283 (1944)—that addressed whether a habeas case becomes moot when a detainee is transferred; these decisions did not address a court's authority to prohibit transfer in the first instance. For example, in *In Ex parte Endo*, a U.S. citizen of Japanese ancestry filed a habeas petition in the District Court for the Northern District of California while she was held at the Tule Lake War Relocation Center in Modoc County, California. *Id.* at 284-85. While her case was on appeal in the Ninth Circuit, she was transferred, for reasons unrelated to her petition, to the Central Utah Relocation Center in Topaz, Utah. *Id.* at 285, 304. The Supreme Court held that

the transfer did not render the petition moot because a writ issued to the Secretary of Interior or

to "any official of the War Relocation Authority (including an assistant director whose office is

at San Francisco, which is in the jurisdiction of the District Court)" would reach someone with

authority to release the petitioner. *Id.* at 304-05. The Court distinguished the situation there from

that in *United States ex rel. Innes v. Crystal*, 319 U.S. 755 (1943), where the detained individual

had sought habeas relief from the Commanding Officer of the United States Army, Governors

Island, New York but was then transferred from the custody of the Army to a federal

penitentiary. *Ex parte Endo*, 323 U.S. at 305. Because after the transfer only the warden of the

penitentiary, rather than the respondent commanding officer, had authority to release the

petitioner, the habeas petition was dismissed as moot. *Id.*

The Court's decisions in *Ex parte Endo* and *Innes* thus addressed the issue of when a

habeas case may or may not be moot after a detainee's transfer. Neither case considered a court's

authority to prohibit transfer in the first place, nor did the Court in either case suggest that the

transfers that occurred were inappropriate or beyond the Government's authority.

Nor do Petitioner's other authorities—from the Civil War era and earlier—suggest that

this Court could lawfully forbid releasing Petitioner from U.S. custody into the custody of

another sovereign. Petitioner cites *In re Kaine*, 55 U.S. (14 How.) 103 (1853), where Supreme

Court Justices discussed the proper procedures to follow under an extradition treaty between the

United States and England. *See id.* But the Supreme Court's decision in *Munaf* already rejected

application of these sorts of extradition cases to situations involving U.S. military detention in a

foreign country in an area of active hostilities. *Munaf*, 553 U.S. at 704. Another case cited by

Petitioner is even further afield. In *United States v. Davis*, 25 F. Cas. 775 (C.C.D.C. 1840) (Case

No. 14,926), the court held that the respondent be taken into custody because he refused to pay

14

$1000 security in order to guarantee that he would produce in person two individuals whom he held as slaves, but who had filed writs claiming a right to freedom. *Id.* at 775. When the two individuals were turned over to the marshal, the respondent was released from custody, but the individuals were held by the marshal pending a decision by the court in order to prevent the respondent from removing the individuals from the court's jurisdiction and continuing to hold them as slaves elsewhere. *Id.* at 776.

Finally, *In re Hamilton*, 11 F. Cas. 319 (S.D.N.Y. 1867), says nothing about the possibility of finding an officer in contempt due to the petitioner's transfer. Rather, the synopsis of the case indicates that the officer was held in contempt by a state court, not because the petitioner was transferred but because the court adjudged the officer's return to the writ insufficient. *Id.* at 319.

Aside from these scattered, inapplicable cases, Petitioner suggests in a footnote that the Court should rely on its power under the All Writs Act, 28 U.S.C. § 1651(a), to issue orders preserving the status quo and protecting its jurisdiction over Petitioner's habeas claim. See Pet'r Resp. at 2 n.3. But the Supreme Court's decision in *Munaf* and the D.C. Circuit's decision in *Kiyemba II* already rejected that argument. The *Munaf* petitioners invoked the All Writs Act, arguing that "because the District Court has jurisdiction, it also has the power to preserve it by freezing the status quo." Habeas Pet'rs Br., *Munaf*, Nos. 07-394 & 06-1666, 2008 WL 503592, at 45-46 (U.S. filed Fed. 21, 2008) (citing 28 U.S.C. § 1651(a)). The Court nonetheless held that the district courts erred in enjoining transfer. *Munaf*, 553 U.S. at 690.

And in *Kiyemba II*, the petitioners similarly relied on the All Writs Act when arguing that the district court "correctly issued the injunction . . . in order to protect the court's jurisdiction over their underlying claims of unlawful detention." *Kiyemba II*, 561 F.3d at 513 n.3. As in

15

*Munaf*, the D.C. Circuit rejected that argument and confirmed that the All Writs Act has no

bearing on the analysis. *See id.* As the Court of Appeals explained, the All Writs Act "provides

no basis for relieving the detainees of the need to satisfy the standard for a preliminary

injunction." *Id.* And as the D.C. Circuit ultimately held, someone who—like Petitioner—is

detained by the U.S. military overseas and seeks to enjoin his release from U.S. custody into the

custody of a foreign sovereign simply cannot satisfy that standard. *See id.* at 516. Accordingly,

Petitioner's motion requesting an injunction on transfer of Petitioner should be denied.

## II. PETITIONER HAS NOT YET FILED A PROPER VERIFIED PETITION ON HIS BEHALF UNDER 28 U.S.C. § 2242

While until now, the filings of the petitioner in this case have been in the name of would-

be next friend ACLUF, ACLUF now purports to act as John Doe's counsel rather than his next

friend, and includes a footnote in its latest filing explaining that it has unilaterally changed the

case caption and seeks an order requiring the Clerk to "change the docket accordingly." Pet'r

Resp. at 1 n.1. But merely changing the case caption does not supply a verified petition as

required by 28 U.S.C. § 2242.

Section 2242 is clear: A petition for a writ of habeas corpus must be "signed and verified

by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C.

§ 2242. ACLUF's original petition in this action—filed before it had ever communicated with

Petitioner—does not satisfy that requirement. Rather than being "signed and verified" by

Petitioner or his agent, that petition was signed and verified by Hina Shamsi as "counsel for next

friend" ACLUF. Pet'n [ECF 1] at 14. This Court has held that ACLUF had next friend standing

"*only for the limited purpose* of ascertaining whether the detainee wishes for it to file a petition

on his behalf." Mem. Op. of Dec. 23, 2017, at 2 (emphasis added). Now that ACLUF has made

that determination, it no longer has next friend standing and thus cannot proceed using a petition

it filed as next friend. Indeed, this Court appears already to have recognized as much—explaining that, if ACLUF is retained by the detainee as his counsel, ACLUF will at that point "file a petition on [the detainee's] behalf," which presumably would supersede the petition that ACLUF filed as next friend. *Id.*

If ACLUF now wishes to seek relief on behalf of its client, it should file a proper petition as required under § 2242. Indeed, absent such a filing, this case would proceed based *solely* on ACLUF's unsworn representation in its January 5, 2018 "response" that the detainee wishes to seek habeas relief with ACLUF as his counsel. The habeas statute, however, requires more than that; specifically, it requires a petition in the detainee's name, signed and verified by the detainee or someone acting on *the detainee's* behalf, rather than on behalf of ACLUF as next friend.

This requirement is no mere formality. To the contrary, ACLUF seeks to use its filing as a basis for the Court to issue an order that would initiate the statutory period for filing a return, that is, to impose statutorily-based timing obligations on Respondent. Absent a verified petition under 28 U.S.C. § 2242, however, no timing obligation under § 2243 can be imposed. Moreover, a properly-verified petition setting forth the bases for Petitioner's challenge to the cause and legality of Petitioner's detention is necessary here, given that, as set forth in the record, Petitioner surrendered to Syrian forces in a theater of active hostilities, *see* Declaration of Steven W. Dalbey ("Dalbey Decl.") [ECF 11-1] ¶ 3, strongly suggesting that Petitioner expected to be militarily detained. Petitioner's January 5 filing is a wholly inadequate substitute for the petition required under § 2242.

Furthermore, any petition filed by the detainee should bear the detainee's true name. This Court previously allowed ACLUF to identify the detainee using a pseudonym because ACLUF did not know the detainee's name. Consistent with its established policy of protecting detainees

17

from public curiosity, *see* Dalbey Decl. ¶ 5, the Government was unwilling to reveal the

detainee's name at that time, simply because a stranger who had never communicated with the

detainee sought habeas relief on his behalf. But now that rationale no longer applies. Rather, and

for all the reasons that Respondent previously identified when objecting to ACLUF's original

filing, any petition filed by the detainee should be filed in his own name, in accord with the rules

of this Court and the well-established presumption in favor of open judicial proceedings, *see*

*Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005). Indeed, most if not all habeas petitions filed

on behalf of detainees who are known to their counsel or next friend are filed using the

detainees' real names. *E.g.*, *Munaf*; *Boumediene v. Bush*, 553 U.S. 723 (2008); *Hamdi v.*

*Rumsfeld*, 294 F.3d 598, 602-03 (4th Cir. 2002). At the very least, the detainee should be

required to establish a reason for proceeding anonymously that is in accord with justifications

approved in other cases, involving exceptional circumstances such as matters of a highly

sensitive and personal nature or a risk of physical harm. *See United States v. Microsoft Corp.*, 56

F.3d 1448, 1464 (D.C. Cir. 1995).

      Such justification should also be required because proceeding by pseudonym would make

litigating this action more difficult. The parties and the Court would be unable to file or identify

evidence on the public docket or in further proceedings without redacting the detainee's name

and submitting unredacted copies under seal. Such procedures would likely cause additional

burdens and delays. Any written or oral testimony in open court would also be hindered.

Petitioner should be required to establish that exceptional circumstances justify such difficulties

and burdens, not to mention the burden on the people's "right to know who is using their courts."

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) (recognizing that

"[i]dentifying the parties to the proceeding is an important dimension of publicness"). Petitioner

therefore should file a verified petition in Petitioner's name or, in the alternative, file a motion requesting leave to proceed by pseudonym, explaining the justification for such relief.

## III.     RESPONDENT SHOULD BE ALLOWED ADDITIONAL TIME TO FILE A RETURN

Petitioner asks that Respondent be required to file a Return to the Petition by January 10, 2018. According to Petitioner, that deadline is mandated by 28 U.S.C. § 2243, which requires a return to be filed "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Pet'r Resp. at 1-2. But as explained above, Petitioner has not yet filed a petition that meets the requirements of 28 U.S.C. § 2242, so the timing obligations set forth in § 2243 do not apply.

In addition, good cause exists to extend the time within which to file a return. This case does not present the typical circumstance where evidence justifying a criminal defendant's detention—such as a judgment or order reflecting a criminal conviction or sentence—can be gathered in three days. Rather, this case involves an individual who surrendered to foreign forces on a foreign battlefield and who is detained halfway around the world in a foreign country. The relevant evidence may be held by a number of different intelligence and investigative units both in that country and elsewhere, across multiple different agencies of the Government, and may well involve both classified and unclassified material. There are thus likely to be difficulties in pulling this information together in one place, ensuring proper treatment of classified information, and addressing other logistical issues, as well as the potential need for the parties to confer regarding a protective order and file such a proposed order with the Court.[2]

---

[2] While Respondent has begun the process of identifying what will be required to file a return, it should be noted that although ACLUF met with the detainee on January 3, 2018, it did not notify Respondent that the detainee wished to pursue habeas relief until the morning of January 5, 2018, the date of ACLUF's filing and a date when undersigned counsel had a significant filing

Accordingly, Respondent respectfully requests that the Court require Petitioner to file a properly verified petition within 20 days of the date of the Court's order on this issue, and that Respondents be granted 23 days after that deadline to prepare and file a return or other appropriate response. In the alternative, Respondent requests that, at a minimum, he be granted the full 23 days allowed under 28 U.S.C. § 2243 from at least the date that Petitioner files a proper verified petition.

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion seeking to enjoin transfer should be denied; Petitioner should be required to file a new signed and verified petition within 20 days of the Court's Order; and Respondent should be granted 23 days after that deadline within which to file a return; and Petitioner's motion seeking to enjoin transfer should be denied.

January 8, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
JESSIE K. LIU
United States Attorney
TERRY M. HENRY
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC   20530
Tel.   (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov

---

due in another case. The Court then issued an order at approximately 2 p.m. on January 5, a Friday, requiring a response by 5 p.m. on Monday, January 8, 2018. As of the time of this filing, Respondent therefore has not been able to identify or confer with all necessary individuals in order to get a clear picture of everything that will be required in order to prepare a return.

*Attorneys for Respondent*