**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE,<br><br>   *Petitioner*,<br><br>   v.<br><br>GEN. JAMES N. MATTIS,<br> in his official capacity as SECRETARY OF DEFENSE,<br><br>   *Respondent*. | No. 17-cv-2069 (TSC) |

**PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO PETITIONER'S RESPONSE TO COURT'S ORDER OF DECEMBER 23, 2017, AND REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION SEEKING CONTINUED INTERIM RELIEF**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

    I.  THE COURT SHOULD CONTINUE ITS EARLIER INJUNCTION ................... 1

        A.  The Court Has Authority To Provide the Requested Relief ........................ 1

        B.  The Government Misreads Supreme Court and D.C. Circuit Precedent .... 3

        C.  The *Winter* Factors Favor an Injunction ...................................................... 7

    II.  THE GOVERNMENT SHOULD NOT BE PERMITTED TO FURTHER DELAY ITS OBLIGATION TO JUSTIFY PETITIONER'S MONTHS-LONG DETENTION. ................................................................................................ 9

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Boumediene v. Bush*,
    553 U.S. 723 (2008) ................................................................................................ 5, 6, 13

*Davis v. Pension Benefit Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ............................................................................................ 11

*Dorsey v. Gill*,
    148 F.2d 857 (D.C. Cir. 1945) ............................................................................................ 14

*Factor v. Laubenheimer*,
    290 U.S. 276 (1933) ............................................................................................................. 9

*Hamdi v. Rumsfeld*,
    542 U.S. 507 (2004) ..................................................................................................... 7, 10

*Hendricks v. Vasquez*,
    908 F.2d 490 (9th Cir. 1990) ............................................................................................ 14

*In re Guantanamo Bay Detainee Litig.*,
    Misc. No. 08-0442 (TFH), 2008 WL 2932780 (D.D.C. July 29, 2008) .................................. 15

*In re Kaine*,
    55 U.S. (14 How.) 103 (1853) ............................................................................................. 6

*Kiyemba v. Obama* (*Kiyemba II*),
    561 F.3d 509 (D.C. Cir. 2009) ................................................................................. 6, 10, 11

*Kiyemba v. Obama*,
    605 F.3d 1046 (D.C. Cir. 2010) ......................................................................................... 10

*Munaf v. Geren*,
    553 U.S. 674 (2008) .................................................................................................. 7, 8, 9

*Omar v. McHugh*,
    646 F.3d 13 (D.C. Cir. 2011) ............................................................................................... 9

*Rasul v. Bush*,
    542 U.S. 466 (2004) ........................................................................................................... 12

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953) ........................................................................................................... 12

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ............................................................................................ 11

*Valentine v. United States ex rel. Neidecker*,
  299 U.S. 5 (1936) .................................................................................................................. 9

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................................ 11

*Zadvydas v Davis*,
  533 U.S. 678 (2001) ............................................................................................................ 12


**Other Authorities**

Gerald L. Neuman, *The Habeas Corpus Suspension Clause after Boumediene
  v. Bush*, 110 Colum. L. Rev. 537 (2010) ............................................................................. 5


**Rules**

Fed. R. App. P. 23 ........................................................................................................................ 6

Sup. Ct. R. 36 .............................................................................................................................. 6

**INTRODUCTION**

The government argues in its opposition to Petitioner's motion for continued interim relief that the Court has no power to enjoin Petitioner's transfer while it considers his claim of unlawful detention. But the opposition is based on two fundamental errors. First, the government claims that Petitioner seeks an injunction that requires his continued custody and that the Court has no power to supply such an order. This is inaccurate: Petitioner seeks an order releasing him from unlawful U.S. custody, at which point the government would be required to free him. The injunction he seeks bars only forced transfer, not release. Second, the government maintains that U.S. citizens have no judicial recourse if the government decides to unilaterally detain and transfer them to foreign sovereigns. As explained below, however, this sweeping premise is based on a misreading of Supreme Court and D.C. Circuit authority.

The government also attempts to further put off its obligation to justify Petitioner's months-long detention. But the government's claims in support of further delay are unsupported, would unfairly prolong Petitioner's unlawful and unreviewed detention, and should be rejected.

**ARGUMENT**

**I.    THE COURT SHOULD CONTINUE ITS EARLIER INJUNCTION.**

**A.    The Court Has Authority To Provide the Requested Relief.**

Petitioner has been imprisoned without charge or evidence for nearly four months, and seeks to exercise his right to "a meaningful opportunity to demonstrate" that his detention is unlawful and to be released from U.S. custody. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "[Habeas] cannot perform its intended function if the custodian can evade judgment by . . . placing the prisoner beyond the power of the court." Gerald L. Neuman, *The Habeas Corpus Suspension Clause after Boumediene v. Bush*, 110 Colum. L. Rev. 537, 567 (2010). Court rules

reflect this prohibition on transferring federal prisoners pending resolution of their habeas petitions. *See* Sup. Ct. R. 36 (forbidding the transfer of a prisoner without judicial authorization pending review of a decision in a federal habeas proceeding); Fed. R. App. P. 23(a) (same). As Petitioner previously explained, this Court accordingly has authority to control his custody during the pendency of his habeas case to prevent the government from subverting his right to challenge his detention, including by entering necessary and appropriate orders to protect its jurisdiction. Petitioner's Resp. to Court's Order 2–3, ECF No. 31; *In re Kaine*, 55 U.S. (14 How.) 103, 133–34 (1853) (Nelson, J., concurring in part and dissenting in part).

The remedy in habeas for unlawful government detention is release. *Boumediene*, 553 U.S. at 779 (a court's power to order release is among the most "easily identified attributes of any constitutionally adequate habeas corpus proceeding"). Petitioner seeks that exact remedy, and nothing in the relief requested in his motion would prevent the government from releasing him from U.S. custody. The government thus incorrectly suggests that Petitioner seeks to "requir[e] continued custody." Opp. 2, ECF No. 33. The government also conveniently conflates transfer to another sovereign with release. Opp. 2. But a forcible hand-over to another sovereign is not release from unlawful U.S. custody. Nor—contrary to the government's claims and for the reasons further explained below—has the D.C. Circuit "recognized" that transfer to foreign custody is "in effect" a release. Opp. 12 (mischaracterizing the holding of *Kiyemba v. Obama* (*Kiyemba II*), 561 F.3d 509 (D.C. Cir. 2009)). This motion seeks only to prevent the government from foreclosing Petitioner's habeas right to release before this Court can determine the legality of his detention.

The government argues that it can pretermit this habeas action by transferring Petitioner because he is "a wartime detainee." Opp. 7; *see* Decl. of Steven W. Dalbey ¶ 3, ECF No. 11-1

2

(petitioner detained as an "enemy combatant"); Mot. to Dismiss 1, 18, ECF No. 11 (same). But that argument assumes the answer to the very question presented by the habeas petition: whether the government has the necessary legal authority and evidence to subject Petitioner to wartime detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 516–17, 525–26, 536–37 (2004) (absent suspension by Congress, habeas requires that the government provide legal authority to detain an individual as an enemy combatant and evidence that he is, in fact, an enemy combatant). Thus far, the government has not provided any legal or factual basis to imprison this citizen. The purpose of this habeas petition is show that no such basis exists and to obtain Petitioner's release.

### B.     The Government Misreads Supreme Court and D.C. Circuit Precedent.

The government relies heavily on *Munaf v. Geren*, 553 U.S. 674 (2008). *See* Opp. 9–11. But *Munaf* provides the government no support for two main reasons. First, *Munaf* considered a very different question: whether, in the face of a proper request by a country on whose soil U.S. prisoners had committed crimes and on whose soil the prisoners were held, courts can enjoin a transfer to face charges in that country based on conditions there. Second, *Munaf* in no way suggests that courts lack power to issue injunctions against the rendition of U.S. citizens to other sovereigns when the government has presented no positive legal authority for the transfer.

First, in *Munaf*, two U.S. citizens detained on Iraqi soil by the Multinational Force-I (MNF-I), an international coalition force of 26 different nations,[1] sought to enjoin their transfer to Iraqi government custody to face prosecution for crimes committed in that country. 553 U.S. at 689 (addressing transfer by MNF-I of "individuals detained within another sovereign's territory to that sovereign's government for criminal prosecution"). The Court in *Munaf*

---

[1] Because the United States, one of those 26 nations, had control over the custody of the two U.S. citizens, the Court held that federal courts had jurisdiction over their habeas petitions. *Munaf*, 553 U.S. at 685–86.

3

emphasized that the two U.S. citizens were being held by the MNF-I "at the behest of the Iraqi Government pending their prosecution in Iraqi courts." *Id.* at 698.  As the Court explained, the specific purpose of the detention of the U.S. citizens by the MNF-I was to "augment the Iraqi government's peacekeeping efforts by functioning, in essence, as its jailor." *Id*.

Thus, as the government recognizes, "neither of the petitioners in that case (Munaf and Omar) sought 'release'—the typical remedy in habeas cases—because, for them, release would simply allow their immediate apprehension by Iraqi authorities." Opp. 10 (citing *Munaf*, 553 U.S. at 693–94).  The Court held that, under these circumstances, it could not "second-guess" the Executive's determination regarding the conditions in Iraq's detention facilities and enjoin the petitioners' transfer to Iraqi custody based on those conditions.  *Munaf*, 553 U.S. at 702.

Unlike the injunction sought in *Munaf*, Petitioner's motion does not challenge transfer of a person detained in another country to that country for prosecution by that country for crimes committed there.  Nor does the motion ask the Court to "second-guess" the conditions in a foreign country.  And unlike in *Munaf*, this American citizen is not being held at the behest of a foreign government and the relief he seeks will not "interfere with the sovereign authority" of another country "to punish offenses against its laws committed within its borders." *Id*. at 698 (internal citation omitted).  Release for this American citizen will not result in his "immediate apprehension by Iraqi authorities," Opp. 10, because he is not charged with any crimes under Iraqi law.  This motion seeks merely to prevent transfer until the Court can decide the habeas petition and determine if the Petitioner should be released from U.S. custody, thus securing the freedom from unlawful government restraint that habeas protects above all else.

Second, even when the government seeks to transfer a citizen to another country for prosecution, it must have positive legal authority for the transfer.  As the Supreme Court made

clear long ago, "[T]he Constitution creates no executive prerogative to dispose of the liberty of the individual." *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 9 (1936) (legal authority to transfer citizen to another country must be affirmatively provided by statute or treaty); *see also Factor v. Laubenheimer*, 290 U.S. 276, 287 (1933) ("[T]he legal right to demand [a person's] extradition and the correlative duty to surrender him to the demanding country exist only when created by treaty.").

Courts have never been powerless to enjoin lawless executive transfers, and *Munaf* does nothing to disturb that bedrock constitutional principle.  In *Munaf*, the U.S. citizens were necessarily "subject to the territorial jurisdiction" of Iraq because they had traveled to that country and committed crimes on that country's territory.  553 U.S. at 704.[2]  Unlike *Valentine*, therefore, *Munaf* did not involve an extradition or its functional equivalent, but rather "the transfer to a sovereign's authority of an individual captured and already detained in that sovereign's territory"—and thus, of an individual necessarily subject to that country's jurisdiction.  *Id.*  Further, even in such circumstances the Executive cannot "detain or transfer Americans or individuals at will . . . without any judicial review of the positive legal authority for the detention or transfer."  *Omar v. McHugh*, 646 F.3d 13, 24 (D.C. Cir. 2011) (noting affirmative authority to transfer the *Munaf* petitioners to Iraqi custody).

The government has not provided any authority for transferring Petitioner to any other sovereign.  The government has not asserted that there are criminal proceedings pending against Petitioner in any another country, and no other sovereign has formally requested that the United

---

[2] Petitioner was taken into custody in Syria.  Although the government has provided no indication of the countries that it is considering as part of its as-yet-undetermined transfer "disposition" of Petitioner, there is no indication that the government could lawfully transfer a citizen to the custody of the Assad regime in Syria for alleged crimes committed against that regime.

States transfer Petitioner to face criminal charges in that country. Petitioner likewise cannot be transferred under wartime detention authority because the government has not established that he is, in fact, lawfully subject to such authority. Were the Court to accept the government's remarkable assertion of executive power to transfer, it would give the government the same blank check the Supreme Court rejected in *Hamdi* and gut the protections of habeas corpus by preventing any American citizen wrongly seized abroad from securing his release from unlawful government custody. *Hamdi*, 542 U.S. at 534 (habeas ensures that the "errant tourist, embedded journalist, or local aid worker has a chance to prove military error" and obtain his or her release from unlawful government custody).

The government also relies heavily on the D.C. Circuit's decision in *Kiyemba II*. *See* Opp. 11–13. But that decision, which concerned noncitizen prisoners with no right to enter the United States and no ability to leave Guantánamo except by transfer to a third country, is entirely inapposite.

In *Kiyemba II*, the D.C. Circuit refused to enjoin the transfer of noncitizens detained at Guantánamo based on allegations about their future treatment in any receiving country. 561 F.3d at 514–15. *Kiyemba II*, however, concerned the "transfer of wartime alien detainees" from the naval base at Guantánamo Bay. *Id.* at 519 (Kavanaugh, J., concurring). As noncitizen detainees, the petitioners had no right to enter or be released into the United States. *See Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010) (holding that the political branches, not the courts, determine the release location for noncitizen detainees who have no right to enter the United States). Thus, *Kiyemba II*'s holding is based on the proposition that, consistent with the past treatment of "hundreds of thousands of wartime alien detainees," the United States could transfer these noncitizen detainees "back to their home countries or, in some cases, to other nations."

6

561 F.3d at 519–20 (Kavanuagh, J., concurring); *see also id.* at 519 ("[W]hen the United States determines during an ongoing war that an alien no longer needs to be detained or has been mistakenly detained . . . the United States attempts to promptly transfer or release that detainee to his home country or a safe third country.").

By contrast, this case involves an American citizen who has a constitutional right to return to the United States. Unlike the *Kiyemba II* prisoners, Petitioner is not held by a foreign military power. When U.S. citizens are released from unlawful executive detention, the result is not repatriation or third-country resettlement. Instead, should the Court order release, Petitioner must be freed. Petitioner seeks only a prohibition on government interference with his right to challenge the lawfulness of his detention.

### C. The *Winter* Factors Favor an Injunction.

A grant of preliminary injunctive relief requires the movant to show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The D.C. Circuit has applied a sliding scale approach to the preliminary injunctive relief analysis that balances the relative strengths of each prong, *see, e.g.*, *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009), although a likelihood of success may be necessary, *see Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011).

Petitioner satisfies all four factors. For the reasons set forth above, Petitioner has demonstrated a likelihood of success on his claim that any current transfer should be prohibited because it would preclude him from obtaining release from U.S. custody and because the government has no legal authority to transfer him to another sovereign.

The remaining three factors all also weigh strongly in favor of Petitioner. Indeed, the government does not even argue that any of these remaining factors weighs in its favor. Petitioner faces irreparable harm if the Court does not order the proposed relief. At stake is Petitioner's "[f]reedom from imprisonment," which "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Without a restriction on Petitioner's transfer, the government can engage in an extrajudicial transfer of Petitioner without legal authority, circumvent his right to challenge his unlawful imprisonment, and deny him the remedy of release guaranteed by habeas corpus.

The third factor, balance of equities, also weighs powerfully in Petitioner's favor. Compared to the grave harm confronting Petitioner, the government will suffer no harm from the Court's grant of the requested relief. The government will merely be required to justify the Petitioner's detention, as the law requires it to do, and will be restricted only from engaging in an extralegal transfer that the law prohibits.

Finally, as to the fourth factor, the requested relief is in the public interest. "Executive imprisonment has been considered oppressive and lawless since John, at Runnymede, pledged that no free man should be imprisoned . . . save by the judgment of his peers or by the law of the land." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 218–19 (1953) (Jackson, J., dissenting)). Judges developed the writ of habeas corpus "largely to preserve these immunities from executive restraint." *Id.* The public interest will be served by preserving, and not eviscerating, this singular centuries-old check by ensuring a citizen detained by the executive can obtain judicial review of his detention and maintaining release as the historic remedy in habeas for unlawful restraints on personal liberty. Maintaining the integrity of habeas not only secures constitutional freedoms, but public safety as

well.  As Justice Kennedy stated, "Security subsists, too, in fidelity to freedom's first principles.  Chief among these are freedom from arbitrary and unlawful restraint and the personal liberty that is secured by adherence to the separation of powers.  It is from these principles that the judicial authority to consider petitions for habeas corpus relief derives."  *Boumediene*, 553 U.S. at 797.

In sum, the Court should continue its order protecting Petitioner from unlawful government interference with the Court's habeas jurisdiction.  Should the government present the Court with a lawfully valid extradition request, the Court can revisit this question and determine whether to maintain the restriction on the Petitioner's transfer to another country.  For now, any such transfer would be lawless and a direct assault on this Court's habeas authority.

## II.    THE GOVERNMENT SHOULD NOT BE PERMITTED TO FURTHER DELAY ITS OBLIGATION TO JUSTIFY PETITIONER'S MONTHS-LONG DETENTION.

Although Petitioner requested counsel and the ACLUF initiated this habeas action on his behalf on October 5, 2017, the government sought for months to block Petitioner from accessing counsel and the Court.  Now that he has finally secured that access and confirmed that he wishes to proceed with this action, the government seeks to impose new roadblocks.  The government should not be permitted to further delay this matter by demanding, without authority, the filing of a new petition before the government finally comes forward with evidence justifying Petitioner's detention.

The government argues that Petitioner's "January 5 filing is a wholly inadequate substitute" for a verified petition and that the action cannot continue in the absence of such a petition.  Opp. 17.  But the January 5 filing is precisely what the Court required: an answer as to "whether [Petitioner] wishes to have the ACLUF or court-appointed counsel continue *this action* on his behalf."  Mem. Op. 2, ECF No. 29 (emphasis added).  *See* Petitioner's Resp. to Court's

9

Order 1, ECF No. 31 (stating that Petitioner "wishes to continue this habeas corpus action" and "wishes for the ACLUF to represent him in this action"). The operative habeas petition states the reasons why Petitioner's ongoing detention is unlawful. There is no requirement that Petitioner must now file a subsequent, verified habeas petition before the action can proceed.[3]

The government claims that a verified petition "is no mere formality" and proposes to further prolong its need to justify Petitioner's detention by an additional twenty days. Opp. 17, 20. But district courts have discretion to consider unverified petitions and ordering Petitioner to submit a verified petition at this stage of these proceedings is a wholly unnecessary formality that would serve only to further delay resolution of this action. It would also break with the practice of courts in this district, which is to allow habeas cases to continue without the submission of a new petition after counsel has been granted access to the detainee.

Courts do not require the rigid, formalistic adherence to the verification requirement that the government advocates. Indeed, when the Ninth Circuit was confronted with a habeas petition that was unsigned and unverified by the petitioner, it made clear that the verification requirement "is one that the district court may, if it sees fit, disregard." *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990). The district court was thus empowered "to address the merits of an unverified petition." *Id.*; *see also Dorsey v. Gill*, 148 F.2d 857, 869, 888 (D.C. Cir. 1945) (noting that if a habeas petition fails to comply with a "formal requirement," including verification, "the defect may be cured by information appearing in the record"). Particularly here, where Petitioner has had no means by which to sign documents in the presence of his attorney, where he was only permitted to access counsel months after making his request, and

---

[3] The government also argues that Petitioner must file a new request to maintain his status as a pseudonymous petitioner. For the reasons set forth in the accompanying motion, Petitioner respectfully requests that he be permitted to continue this action under a pseudonym.

where he responded in the affirmative to the Court's question as to whether he wished to "have the ACLUF continue this action on his behalf," Petitioner should not be made to suffer additional delay until a new and verified petition is filed.

In closely analogous cases, courts in this district have not required the filing of new habeas petitions. In *In re Guantanamo Bay Detainee Litigation*, Judge Hogan, in carrying out his mandate to coordinate and manage proceedings in cases involving petitioners detained at Guantánamo Bay, issued a case-management order addressing this very issue. Judge Hogan did not require each detainee to submit a new verified petition for those cases "in which the detainee is represented in the petition by a next friend." *See In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-0442 (TFH), 2008 WL 2932780, at *1 (D.D.C. July 29, 2008). Instead, Judge Hogan ordered that "counsel shall file a signed authorization from the petitioner to pursue the action or a declaration by counsel that states that the petitioner directly authorized counsel to pursue the action and explains why counsel was unable to secure a signed authorization." *Id.* Petitioner's January 5 filing, ECF No. 31, served a similar function as the submissions ordered by Judge Hogan and followed the express instructions of this Court: it informed the Court both that Petitioner wishes to continue this action and that he wishes the ACLUF to represent him. No more is required.[4]

Finally, the government requests the statutory maximum of 23 days in which to present its justification of Petitioner's detention. Opp. 20. But the government has already been detaining this U.S. citizen for months. If it has not already gathered evidence and law that it believes justify Petitioner's detention, it should not be rewarded for its delay. Nor can the

---

[4] Because Petitioner has not been permitted an in-person counsel visit, there has been no opportunity to secure a signed authorization. Should the Court order it, counsel stand ready to secure such an authorization if the government makes available the means to do so. But there is no cause to delay the government's return until a signed authorization is acquired.

government claim surprise: it has known for months both that a habeas petition was filed on behalf of Petitioner and of Petitioner's desire to access counsel. Petitioner should not be forced to continue to bear the cost of the government's delay.

## CONCLUSION

For the reasons stated above, the Court should grant Petitioner's Motion Regarding Continued Interim Relief and order the government to file a prompt Return.

Dated: January 10, 2018

Respectfully submitted,

/s/ *Jonathan Hafetz*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW—2nd Floor
Washington, DC 20005
Tel: 202-457-0800
Fax: 202-457-0805
aspitzer@acludc.org

Jonathan Hafetz (D.C. Bar No. NY0251)
Dror Ladin
Hina Shamsi (D.C. Bar No. MI0071)
Anna Diakun
Brett Max Kaufman (D.C. Bar No. NY0224)
American Civil Liberties Union
  Foundation
125 Broad Street—18th Floor
New York, New York 10004
Tel: 212-549-2500
Fax: 212-549-2654
jhafetz@aclu.org
dladin@aclu.org
hshamsi@aclu.org
adiakun@aclu.org
bkaufman@aclu.org

*Counsel for Petitioner*