**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN DOE,

                    *Petitioner*,

          v.                                              No. 17-cv-2069 (TSC)

GEN. JAMES N. MATTIS,
  in his official capacity as SECRETARY OF
  DEFENSE,

                    *Respondent*.

**PETITIONER'S MOTION FOR LEAVE TO CONTINUE UNDER PSEUDONYM**

          Petitioner hereby moves for leave to continue this habeas action under the pseudonym

"John Doe," as previously allowed by the Court.  *See* Mem. Op. 1 n.1, ECF No. 29.  The

government is currently detaining Petitioner based on its unilateral and untested assertion that

he is an "enemy combatant."  Decl. of Steven W. Dalbey ¶ 3, ECF No. 11-1.  Petitioner has not

been charged with any crime, and has been barred for months from communicating with the

Court and counsel.  This habeas action provides the exclusive means by which Petitioner can

challenge his detention and designation as an "enemy combatant."  He should not be forced to

choose between vindicating his constitutional rights and disclosing to the world the

government's unproven branding of him as an "enemy combatant."[1]

          This Court has broad discretion to "allow plaintiffs to proceed under a pseudonym in

certain cases involving matters of a sensitive and highly personal nature." *Doe v. Cabrera*, 307

---

[1] Counsel for the government has stated that the government will likely oppose this motion but
that it will review Petitioner's filing before making a final determination.

F.R.D. 1, 4 (D.D.C. 2014) (citing *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)); *see also Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 152–53 (D.D.C. 2011); *Doe v. Von Eschenbach*, No. 06-2131, 2007 WL 1848013, at *2 (D.D.C. June 27, 2007). While anonymity is appropriate only in "unusual" cases, *see Qualls v. Rumsfeld*, 228 F.R.D. 8, 10–11 (D.D.C. 2005), this case is by any definition unusual, and involves sensitive and highly personal information.

In determining whether to grant litigants anonymity, "members of this Court have adopted a five-factor test," which balances the interests of the public and the parties:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Cabrera*, 307 F.R.D. at 5 (citing *Chao*, 587 F. Supp. 2d at 99). "When assessing the relevant factors, a court should consider 'the impact of the plaintiff's anonymity on the public interest in open proceedings and on fairness to the defendant' and weigh that impact against the moving party's privacy interest." *J.W. v. District of Columbia*, 318 F.R.D. 196, 198–99 (D.D.C. 2016) (quoting *Chao*, 587 F. Supp. 2d at 99). In assessing the public interest, it is important to note that "'[t]he assurance of fairness preserved by the public presence at a trial is not lost when one party's cause is pursued under a fictitious name' because the 'crucial interests served by open trials are not inevitably compromised'—nor is the case necessarily shielded in its entirety from public view—when a court allows a party to proceed anonymously." *Id.* (quoting *Doe v. Stegall*,

653 F.2d 180, 185 (5th Cir. Unit A 1981)).  The relevant factors in this case weigh heavily in favor of allowing Petitioner to continue this petition under a pseudonym.

First, Petitioner does not face merely the "annoyance and criticism that may attend any litigation." *Cabrera*, 307 F.R.D. at 5.  Instead, this extraordinary litigation concerns Petitioner's extrajudicial detention without charge and with no ability to speak publicly or seek release except through this habeas action.  Moreover, the government has alleged—without putting forth any evidence—that Petitioner is an "enemy combatant"—an allegation that is both "sensitive and highly personal." *Id.*  Unlike ordinary "annoyance and criticism," individuals previously held as "enemy combatants" at Guantánamo have faced extraordinary abuse even after being cleared and released, including "death threats over the phone," "signs denouncing them in their neighborhood," along with "people shouting profanities in their direction on the street." Laurel E. Fletcher & Eric Stover, *Guantánamo and Its Aftermath* 63 (November 2008), https://www.law.berkeley.edu/files/IHRLC/Guantanamo_and_Its_Aftermath.pdf.  *See also id.* at 64 ("[A]s one former detainee noted, the stigma of Guantánamo remained: 'It doesn't matter I was found innocent. It doesn't matter that they cleared my name by releasing me. We still have this big hat on our heads that we were terrorists.'").

As many courts have recognized, government allegations of terrorism association are so inflammatory that they must be suppressed so as to preserve the fairness of criminal trials.  *See, e.g.*, *United States v. Amawi*, 541 F. Supp. 2d 945, 951 (N.D. Ohio 2008) ("Few terms have a greater inherent risk of prejudgment than terrorism, terrorist, jihad, and Al-Quaeda."), *aff'd*, 695 F.3d 457 (6th Cir. 2012); *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008) ("There can be little doubt that in the wake of the events of September 11, 2001, evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue

3

prejudice."). Here, the government has not charged Petitioner with *any* crime, much less terrorism. He should not be forced to affirmatively take on the stigma of the government's claims as the price of asserting his habeas rights.[2]

Second, public identification of Petitioner as an asserted "enemy combatant" creates a real risk of harm both to him and his family. As Petitioner's expert declaration noted, Iraqi and Kurdish forces have "detained individuals with little real evidence or grounds, in some cases relying only on their identification as ISIS members by community members." Belkis Declaration ¶ 8, ECF No. 13-2. The result has been "misidentification and detention of individuals who have no ties to ISIS and who are fleeing the conflict in ISIS-held territory" and "detention of individuals who unwillingly joined ISIS under threats of violence and death." *Id.* For "wrongfully accused individuals" swept up by dint of any perceived association with ISIS— no matter how spurious—there is real danger of "prolonged periods in mass arbitrary detention in overcrowded, inhuman, and dangerous conditions of confinement that violate basic international standards and that have led to deaths in custody." *Id.* Families of suspected ISIS members have also faced dangerous retaliation. In Iraq, for example, "Local vigilantes . . . throw rocks, grenades, and improvised explosive devices at the homes of wives or siblings of known and suspected ISIS members." Anna Lekas Miller, *Revenge Attacks on Families of ISIS Members Could Start a New Cycle of Violence in Iraq*, Intercept, July 19, 2017, https://interc.pt/2vBmJ9Q.

---

[2] Even *corporations* facing government investigation have been permitted to file pseudonymously to protect the confidentiality of governmental suspicion when no action has been brought against the corporation. *See John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 23 (D.D.C. 2016) ("Plaintiffs have a legitimate interest in the confidentiality of an ongoing governmental investigation . . . . [I]f the process does result in an enforcement action, they will then have an opportunity to respond publicly and to defend themselves. Until then, however, they have a substantial claim that disclosure of the ongoing investigation may unfairly suggest that they have in fact engaged in wrongdoing.").

Third, this suit is against the government and not a private party.  Anonymous lawsuits "challenging the constitutional, statutory or regulatory validity of government activity," unlike anonymous lawsuits against private parties, have been recognized to "involve no injury to the Government's 'reputation.'"  *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).  Accordingly, "[c]ourts have concluded that anonymous litigation is more acceptable when the defendant is a governmental body because government defendants "do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing." *J.W.*, 318 F.R.D. at 201 (quoting *Cabrera*, 307 F.R.D. at 8); *see also Qualls*, 228 F.R.D. at 11 (observing that courts are "more inclined to permit pseudonymous suits by plaintiffs when the government is the defendant").

Finally, there is no prejudice to the government in allowing Petitioner to proceed anonymously.  "A typical reason courts cite when finding that proceeding anonymously would pose unfairness for a defendant is that the defendant may not know the identity of the person bringing the charges." *J.W.*, 318 F.R.D. at 201 (citing *United States v. Microsoft Corp.*, 56 F.3d 1488, 1464 (D.C. Cir. 1995)).  But the government "faces no such unfairness" because it knows Petitioner's identity.  *Id.*; s*ee also John Doe Co. v. Consumer Fin. Prot. Bureau*, 321 F.R.D. 31, 35 (D.D.C. 2017) (granting pseudonym status and observing that because "the plaintiff's identity is already known to the CFPB . . . . there is no prejudice to the CFPB's own institutional interest in knowing the plaintiff's identity").

As described above, the relevant factors strongly weigh in favor of permitting this case to continue pseudonymously at this time.  However, should the Court find that more information is needed to balance the interests at stake in granting anonymity, Petitioner respectfully requests permission to supplement this motion with a declaration setting forth additional facts underlying

his concerns.  At the time of this filing, Petitioner's counsel have been able to confer with

Petitioner only a single time, for a visit focused on "the sole purpose of determining whether the

detainee wishes for the ACLUF to continue this action on his behalf."  Order, ECF No. 30.

Under these circumstances, Petitioner's request for Doe status should not be denied before

Petitioner is afforded additional opportunity to meet with counsel regarding his continuing need

for anonymity and to set forth by way of declaration further facts in support of his request.

## CONCLUSION

For the reasons given above, the motion should be granted. A proposed order is filed

herewith.

Dated: January 10, 2018                              Respectfully submitted,


                                                     /s/ Jonathan Hafetz
Arthur B. Spitzer (D.C. Bar No. 235960)              Jonathan Hafetz (D.C. Bar No.
American Civil Liberties Union                           NY0251)
   of the District of Columbia                       Dror Ladin
915 15th Street, NW—2nd Floor                        Hina Shamsi (D.C. Bar No. MI0071)
Washington, DC 20005                                 Anna Diakun
Tel: 202-457-0800                                    Brett Max Kaufman (D.C. Bar No.
Fax: 202-457-0805                                        NY0224)
aspitzer@acludc.org                                  American Civil Liberties Union
                                                         Foundation
                                                     125 Broad Street—18th Floor
                                                     New York, New York 10004
                                                     Tel: 212-549-2500
                                                     Fax: 212-549-2654
                                                     jhafetz@aclu.org
                                                     dladin@aclu.org
                                                     hshamsi@aclu.org
                                                     adiakun@aclu.org
                                                     bkaufman@aclu.org


*Counsel for Petitioner*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

*Petitioner*,

v.

GEN. JAMES N. MATTIS,
  in his official capacity as SECRETARY OF
  DEFENSE,

*Respondent*.

No. 17-cv-2069 (TSC)

## [PROPOSED] ORDER GRANTING PLAINTIFFS'
## MOTION FOR LEAVE TO CONTINUE UNDER PSEUDONYM

Upon consideration of Petitioner's motion for leave to continue this action under the

pseudonym John Doe, it is hereby:

ORDERED that the motion is GRANTED, and Petitioner may proceed herein by the

pseudonym John Doe; and it is further

ORDERED that any document revealing either John Doe's true identity or distinguishing

characteristics shall be filed under seal, with a redacted public filing made simultaneously or

promptly thereafter.

Dated: January ___, 2017

_____
Tanya S. Chutkan
United States District Judge