# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

*Petitioner*,

v.

GEN. JAMES N. MATTIS,
in his official capacity as SECRETARY OF
DEFENSE,

*Respondent*.

No. 17-cv-2069 (TSC)

## <u>MEMORANDUM OPINION</u>

Petitioner—a United States citizen—remains in Iraq in the custody of U.S. armed forces.
While Petitioner now has access to counsel in order to pursue this habeas petition, the
Department of Defense ("Defense Department") may seek to transfer him prior to this court's
decision on his petition.  The Defense Department is unable to provide a timeline for when this
transfer might take place.  Petitioner has requested that this court enjoin the Defense Department
from transferring him to another country during the pendency of this litigation.  Upon
consideration of the parties' filings, the oral arguments of counsel, and for the reasons stated
herein, Petitioner's Motion Regarding Continued Interim Relief will be GRANTED in part and
DENIED in part.  The court will not enjoin the Defense Department from transferring the
Petitioner, but will require the Defense Department to provide the court and Petitioner's counsel
seventy-two hours' notice prior to any such transfer.

1

## I.    BACKGROUND

On December 23, 2017, this court entered an order (1) denying the Defense Department's

Motion to Dismiss (ECF No. 11), (2) requiring the Defense Department to permit the American

Civil Liberties Union Foundation ("ACLUF") immediate and unmonitored access to Petitioner to

determine whether he wanted the ACLUF to pursue this action on his behalf, and (3) requiring

the Defense Department to "refrain from transferring the detainee until the ACLUF informs the

court of the detainee's wishes."  (ECF No. 30).  On January 5, 2018, the ACLUF informed the

court that Petitioner wanted the ACLUF to represent him in this action.  (ECF No. 32 ("Mot.") at

1).  The ACLUF also requested that the court extend the interim relief provided in its December

23 Order, and order the Defense Department not to transfer Petitioner until the court renders its

decision on Petitioner's habeas petition.  (*Id.* at 2).

On January 18, 2018, the court held a hearing on Petitioner's motion for continued relief.

In response to the court's inquiry as to whether the Defense Department intended to transfer the

Petitioner within the next forty-eight hours, Department counsel indicated that it had no basis to

believe that a transfer would take place within that timeframe.  Counsel added, however, that it is

the Defense Department's position that it has the authority to transfer Petitioner as soon as

another country is ready to receive him.  Given the Defense Department's position, and the

court's impending ruling on Petitioner's motion, the court ordered the Defense Department to

refrain from transferring Petitioner until Tuesday, January 23, 2018.  (ECF No. 43).

At the January 18 hearing, the Defense Department also offered to provide the court with

a classified declaration which would provide more detail regarding the Department's position as

to Petitioner.  On January 19, 2018, the Defense Department filed a classified *ex parte*

declaration through a Classified Information Security Officer.  (*See* ECF No. 44).  That evening,

the Defense Department filed a redacted, sealed version of the same declaration.  (ECF No. 45-1 ("Classified Declaration")).

On January 22, 2018, the court held a status hearing, during which the court asked the parties whether they opposed an order requiring the Defense Department to provide the court and Petitioner's counsel notice prior to transferring Petitioner.  The Defense Department indicated that it would object to such an order.  Petitioner's counsel informed the court that Petitioner would not object to such an order, as long as he had the opportunity to contest his transfer.

## II.    LEGAL STANDARD

In order to prevail on a motion for a preliminary injunction, the movant must show that: "[1] he is likely to succeed on the merits, [2] . . . he is likely to suffer irreparable harm in the absence of preliminary relief, [3] . . . the balance of equities tips in his favor, and [4] . . . an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right."  *Id.* at 24 (citing *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008)).  The D.C. Circuit has applied a sliding scale approach to evaluating preliminary injunctions, such that an unusually strong showing on one factor could make up for a weaker showing on another.  *See, e.g.*, *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).  It has been suggested that a movant's showing of a likelihood of success, however, is a "'free-standing requirement for a preliminary injunction.'"  *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

## III.    DISCUSSION

### A.  Likelihood of Success on the Merits

Petitioner has shown a likelihood of success on the merits of his claim that there should

be some restriction on the Defense Department's ability to transfer him during the pendency of

this litigation.  Prior to transferring Petitioner, the Defense Department must present "positive

legal authority" for his transfer.  *See Omar v. McHugh*, 646 F.3d 13, 24 (D.C. Cir. 2011) ("None

of this means that the Executive Branch may detain or transfer Americans or individuals in U.S.

territory at will, without any judicial review of the positive legal authority for the detention or

transfer."); *see also Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8 (1936) (power to

provide for extradition "is not confided to the Executive in the absence of treaty or legislative

provision").

The court has reviewed the classified information provided by the Defense Department

and finds that it does not present "positive legal authority" for Petitioner's transfer.  Neither does

the Defense Department's assertion that "international relations" with the receiving country

would be harmed should the court prohibit his transfer at this time.

Despite its failure to present legal authority for Petitioner's transfer, such as an

extradition request or an allegation of criminal conduct committed in the receiving country, the

Defense Department maintains that the court nonetheless cannot restrict Petitioner's transfer

while it considers his claim of unlawful detention.  Relying on *Munaf v. Geren*, 553 U.S. 674

(2008), and *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509 (D.C. Cir. 2009), the Defense

Department argues that the court is barred from restricting Petitioner's transfer because of the

"significant national security and foreign relations concerns" surrounding his transfer.  (ECF No.

33 ("Opp.") at 7–8).  The court finds this argument unavailing.

Nothing in *Munaf* or *Kiyemba II* restrains this court from restricting the Defense Department's ability to transfer Petitioner in this case.  In *Munaf*, two U.S. citizens—charged by the Iraqi government for crimes committed on Iraqi soil—were detained in Iraq by U.S. military forces as part of a multi-national force acting on behalf of the Iraqi government.  553 U.S. at 681–685.  The detainees filed petitions for writs of habeas corpus, seeking to enjoin the multi-national forces from transferring them to Iraqi custody.  *Id.*  The Supreme Court held that the district court did not have the power to enjoin the transfers, explaining that "[h]abeas corpus does not require the United States to shelter . . . fugitives from the criminal justice system of the sovereign with authority to prosecute them."  *Id.* at 705.  Here, unlike in *Munaf*, there is no evidence in the record that Petitioner: (1) committed crimes in violation of the laws of another country; (2) is facing prosecution in another country; or (3) is being held on another country's behalf.  Therefore, this case does not implicate another country's "sovereign right" to punish offenses within its borders.  *Id.* at 693.

In *Kiyemba II*, the Court held that a district court did not have the power to enjoin the transfer of detained non-citizens or to require the government to provide 30 days' notice prior to their transfer "based upon the expectation that a recipient country" will detain, prosecute or torture them.  561 F.3d at 514–15.  But *Kiyemba II* involved non-citizens who, by virtue of their classification as wartime alien detainees, could not be released into the United States.  Here, Petitioner—a U.S. citizen—seeks to enjoin transfer solely to ensure that he is able to pursue his habeas petition.  He does not argue fear of detention, prosecution or torture in another country.

The court finds that Petitioner has shown a likelihood of success on his claim that this court may temporarily restrict the Defense Department's ability to transfer him to another country.  The court does not find, however, that the specific relief Petitioner seeks—prohibition

of his transfer for the duration of these proceedings—is warranted at this time.  Transferring the

Petitioner is just one of the options the Defense Department is currently considering.  (*See* Opp.

at 7 ("Releasing Petitioner from U.S. custody into the custody of another country with a

legitimate interest in him is one of the options under consideration.")).  Providing the relief

Petitioner seeks would require the court to prohibit an action that the Defense Department has

not yet decided to take.  The court finds it more prudent to require the Defense Department to

provide notice prior to transferring Petitioner, and to afford Petitioner the opportunity to contest

his transfer should he decide to do so.

### B.  Irreparable Harm

The Defense Department does not—because it cannot—argue that Petitioner will not be

irreparably harmed absent some relief from this court.  Without a restriction on Petitioner's

transfer, the Defense Department may transfer Petitioner to the custody of another country prior

to a decision on his habeas petition, and without providing any notice to this court or Petitioner's

counsel.  Were that to occur, Petitioner would no longer be in U.S. custody, and will likely be

unable to pursue his habeas petition.  *See In re Petitioners Seeking Habeas Corpus Relief in

Relation to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 126 (D.D.C. 2010), *aff'd

sub nom. Chaman v. Obama*, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012) ("For a petitioner in

United States custody, the controversy is clear since he is attempting to secure his release from

the United States Government. . . . For a petitioner released from United States custody, the case-

or-controversy requirement is problematic because the remedy sought is more elusive.") (citing

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *see also Qassim v. Bush*, 466 F.3d 1073, 1076–77

(D.C. Cir. 2006) (finding petitioners' claims for declaratory and injunctive relief moot because

they had been released from U.S. custody and did not show a collateral consequence of their prior detention).

### C.  Balance of Equities

The balance of equities also weighs in Petitioner's favor.  The government has argued that a ruling in Petitioner's favor would result in serious harm to the government's international relations with another country, and the court recognizes the government's significant interest in maintaining fruitful, diplomatic relations.  But the court is not convinced—based on the record here—that these diplomatic interests override the Petitioner's well-established right "to contest the factual basis for [his] detention" through a habeas petition.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 509 (2004).  Absent an articulated legal reason for the transfer, such as an extradition request or an allegation of criminal conduct committed in the receiving country, Petitioner's right to habeas relief does not yield to the government's desire to maintain good diplomatic relations.

Balancing the equities in Petitioner's favor here is particularly appropriate, given that this court's decision merely requires the Defense Department to provide notice prior to any transfer. The Defense Department is not prevented from continuing negotiations or discussions regarding the transfer, or from obtaining further information that might support a transfer.  Absent a showing that the government—for international relations reasons or otherwise—needs to transfer Petitioner *now*, the court does not find that the government's interests outweigh the Petitioner's right to challenge his detention without fear of his transfer to another country.  The Defense Department's Classified Declaration does not convince the court otherwise.

### D.  Public Interest

Judicial authority to review habeas corpus petitions derives from U.S. citizens' rights to "freedom from arbitrary and unlawful restraint."  *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

While this court is mindful of the government's right to conduct diplomacy and foreign relations as it sees fit, this right must be balanced against United States citizens' rights to contest the lawfulness of their detentions and transfers at the hands of the Executive.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's motion for continued relief will be GRANTED in part and DENIED in part.  The Defense Department will be ordered to provide the court and Petitioner's counsel seventy-two hours' notice prior to transferring Petitioner, at which time Petitioner may file an emergency motion contesting his transfer.  A corresponding order will issue separately.

Date:  January 23, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge