UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



JOHN DOE,

       *Petitioner*,

    v.

GEN. JAMES N. MATTIS,
in his official capacity as SECRETARY OF DEFENSE,

       *Respondent*.

No. 17-cv-2069 (TSC)

## MEMORANDUM OPINION

As set forth in more detail in this court's prior opinions, Petitioner—a United States citizen—is in the custody of U.S. armed forces in Iraq and has filed this habeas corpus petition challenging his detention. *See* ECF Nos. 4, 29, 51; *Doe v. Mattis*, 2018 WL 534324 (D.D.C. 2018). On January 5, 2018, Petitioner filed a Motion Regarding Continued Interim Relief, requesting an order prohibiting Respondent Department of Defense ("Defense Department") from transferring him to another country during the pendency of this litigation. ECF No. 32. On January 23, 2018, the court granted in part and denied in part Petitioner's motion, and ordered the Defense Department to provide the court and Petitioner's counsel seventy-two hours' notice prior to transferring Petitioner. ECF Nos. 51 (Mem. Op.), 52.[1] On April 16, 2018, at 7:56 p.m., the Defense Department provided such notice, informing the court and Petitioner that it planned

---

[1] The Defense Department appealed the court's January 23 Order. ECF No. 56. That appeal remains pending.

to relinquish custody of Petitioner to another country (the "receiving country") "no sooner than 72 hours hence." ECF No. 77.

Petitioner now seeks a temporary restraining order and/or preliminary injunction prohibiting the transfer. ECF No. 81 (Mot.). The Defense Department objects, but asks that in the event the court decides to grant Petitioner's motion, it issue a preliminary injunction, rather than a temporary restraining order. ECF No. 84 (Opp). Having considered the parties' written and oral arguments, and for the reasons stated herein, the court will grant Petitioner's Motion for a Preliminary Injunction and enjoin the Defense Department from transferring Petitioner.

### I.   LEGAL STANDARD

In order to prevail on a motion for a preliminary injunction, the movant must show that: "[1] he is likely to succeed on the merits, [2] . . . he is likely to suffer irreparable harm in the absence of preliminary relief, [3] . . . the balance of equities tips in his favor, and [4] . . . an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right." *Id.* at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). The D.C. Circuit has applied a sliding scale approach to evaluating preliminary injunctions, such that an unusually strong showing on one factor could make up for a weaker showing on another. *See, e.g., Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). It has been suggested that a movant's showing of a likelihood of success, however, is a "'free-standing requirement for a preliminary injunction.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

## II.  DISCUSSION

### A. Likelihood of Success on the Merits

Petitioner has shown a likelihood of success on the merits of his claim that the Defense Department should be prohibited from transferring Petitioner during the pendency of his habeas petition. In its January 23, 2018 opinion, the court noted that before it could forcibly transfer Petitioner, the Defense Department must present "positive legal authority" for his transfer. *See Omar v. McHugh*, 646 F.3d 13, 24 (D.C. Cir. 2011) ("None of this means that the Executive Branch may detain or transfer Americans or individuals in U.S. territory at will, without any judicial review of the positive legal authority for the detention or transfer."); *see also Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 8 (1936) (the power to provide for extradition "is not confided to the Executive in the absence of treaty or legislative provision").[2]

The Defense Department has failed to provide such legal authority. It does not assert that Petitioner's potential transfer is grounded in a treaty or statute. Nor does the Defense Department argue that Petitioner is facing criminal prosecution in the receiving country or that he is the subject of an extradition request. Instead, in a declaration from a State Department representative, the government describes its "diplomatic discussions" with the receiving country regarding Petitioner's transfer, and asserts that the receiving country, which "had agreed to accept the transfer" of Petitioner, has a "strong" and "sovereign" interest in Petitioner, and "it is

---

[2] At oral argument, the government argued that *Wilson v. Girard*, 354 U.S. 524 (1957) and *In re Territo*, 156 F.2d 142 (9th Cir. 1946) provide examples of cases where the government was allowed to transfer a U.S. citizen believed to be an enemy combatant. However, in both *Girard* and *In re Territo*, the government had positive legal authority to transfer the detainees. In *Girard*, the Japanese indicted a U.S. citizen for causing the death of a woman in Japan and the United States Supreme Court held there was no constitutional or statutory barrier to transferring the petitioner pursuant to a treaty. 354 U.S. at 525-26, 530. *In re Territo* involved the repatriation to Italy pursuant to the Geneva Convention of an American citizen who held dual citizenship with Italy. 156 F.2d at 144.

3

imperative that the transfer occur quickly and smoothly." ECF No. 77-1 (Decl.) ¶¶ 3, 8. The Declaration gives no further reason for the need for an immediate transfer, other than alleging that "[f]ailure on our part to follow through promptly on [Petitioner's] transfer could cause harm to our ongoing bilateral cooperation, including on future detainee transfers." Decl. ¶ 10.

While the United States' relations with foreign allies is undoubtedly important, the government's bilateral relations and continued engagement in "diplomatic discussions" with the receiving country does not rise to the level of "positive legal authority" required to justify Petitioner's transfer. Indeed, the government acknowledges that the receiving country "has agreed" to accept Petitioner, Decl. ¶ 2, indicating that the transfer was not initiated by the receiving country, but by the United States.

The Defense Department again relies on *Munaf v. Geren*, 553 U.S. 674 (2008), and *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509 (D.C. Cir. 2009), in arguing that the court cannot enjoin or delay Petitioner's transfer. Opp. at 11. In its January 23 opinion, the court found that "[n]othing in *Munaf* or *Kiyemba II* restrains this court from restricting the Defense Department's ability to transfer Petitioner in this case." Mem. Op. at 5. Having reviewed the government's Declaration, the court finds that the Defense Department has not presented a sufficient reason—including any positive legal authority for the transfer—for the court to revisit this finding.

Accordingly, the court finds that Petitioner has shown a likelihood of success on his claim that this court may restrict the Defense Department's ability to transfer him to another country.

### B. Irreparable Harm

The Defense Department argues that Petitioner will not suffer irreparable harm as a result of the transfer because the "whole point of a habeas petition is to obtain the release from U.S. custody," and in its view, transfer to the receiving country will mean that Petitioner is no longer in U.S. custody. Opp. at 17. The court finds this argument disingenuous. Release from custody and involuntary transfer to the authorities of another country are not interchangeable concepts, and the Defense Department's citation to *Gul v. Obama*, 652 F.3d 12, 13, 19 (D.C. Cir. 2011) does not convince the court otherwise. In that case, the petitioners had already been transferred to the custody of a foreign sovereign prior to a hearing on the merits of their habeas petition, and were therefore no longer within the court's jurisdiction. *Id.* at 13.

Absent an order from this court, Petitioner will be turned over to a foreign government where he will be detained, and will lose his constitutional right to contest his detention in a U.S. court. *See Fay v. Noia*, 372 U.S. 391, 400–02 (1963), *overruled in part in other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977) ("Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. . . . Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."). The court finds that Petitioner has clearly established that he will suffer irreparable harm if his transfer is not enjoined.

### C. Balance of Equities

The balance of equities continues to weigh in Petitioner's favor. The government has argued that a ruling in Petitioner's favor would damage the government's international relations

5

because such a ruling would "undermine" the credibility of the United States with an "important foreign partner," and could therefore negatively impact future negotiations regarding the transfer of detainees. Opp. at 18. The court finds this argument unavailing.

The Defense Department was aware of the possibility that Petitioner's transfer could be delayed or prohibited when it entered into negotiations for the transfer with the receiving country, and it informed the receiving country of that possibility before the receiving country agreed to accept Petitioner. Decl. ¶ 9. Despite the potential for delay in or prohibition against Petitioner's transfer, the receiving country agreed to accept the transfer, and therefore is well aware that ongoing litigation may delay the transfer.

Accordingly, the potential harm to bilateral relations between the United States and its strategic ally does not outweigh Petitioner's constitutional right to seek habeas relief.

**D. Public Interest**

Judicial authority to review habeas corpus petitions derives from U.S. citizens' rights to "freedom from arbitrary and unlawful restraint." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008). While this court is mindful of the government's rights to "conduct military functions," "engage in foreign relations," and maintain its "credibility in conducting diplomatic discussions," Opp. at 19, these rights must be balanced against United States citizens' rights to contest the lawfulness of their detentions and transfers at the hands of the Executive. The court finds that given the lack of any legal authority for transferring Petitioner, on the record before it, the balance of interests favors Petitioner.

**III. CONCLUSION**

For the foregoing reasons, Petitioner's Motion for Preliminary Injunction is GRANTED. The Defense Department is enjoined from transferring Petitioner until a higher court issues an

order reversing this decision, the Defense Department comes forward with sufficient positive legal authority to justify Petitioner's transfer, or this court rules in favor of the Defense Department on Petitioner's habeas petition. A corresponding order will issue separately.

Date: April 19, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge