IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>    Petitioner,<br><br>v.<br><br>GENERAL JAMES N. MATTIS,<br>In his official capacity as SECRETARY OF DEFENSE,<br><br>    Respondent. | Civil Action No.<br>Case 1: 17-cv-01928 (TSC)<br><br>DECLARATION OF<br>MARK E. MITCHELL<br><br>~~UNDER SEAL~~ |

Pursuant to 28 U.S.C. § 1746, I, Mark E. Mitchell, hereby declare:

1. I currently serve as the Principal Deputy Assistant Secretary of Defense for Special Operations/Low-Intensity Conflict (SO/LIC) within the Department of Defense (DoD). I have served in that position since December 2017. Between May and December 2017, I served as the Acting Assistant Secretary of Defense (ASD) for SO/LIC. That individual is the principal civilian advisor to the Secretary of Defense on special operations and low-intensity conflict operations, with his primary duty being the overall supervision of these operations. As the Principal Deputy since December 2017, I am personally involved in all aspects of the office's core responsibilities, including counterterrorism, unconventional warfare, direct action, special reconnaissance, foreign internal defense, civil affairs, information and psychological operations, counter proliferation of weapons of mass destruction, detention policy, and humanitarian/disaster relief.

2. My background includes 28 years of active duty with the U.S. Army in the Special Operations community, retiring as a Colonel in 2015. While on active duty, I served in combat in multiple conflicts, including deployments to Afghanistan in 2001-2002, and multiple tours in Iraq each year from 2003-2011. In 2010-2011, I commanded the 5th Special Forces Group (Airborne) as well as a nationwide Joint Special Operations Task Force in Iraq. I have also served in principal staff positions up to and including the Theater Special Operations Command, and have planned and conducted counterterrorism and counterinsurgency operations, foreign internal defense, unconventional warfare, and other sensitive special operations. From 2011-2013, I served as the Senior Military Assistant to ASD (SO/LIC). In 2014, I served as a Director for Counterterrorism on the National Security Council, where I was personally involved in significant hostage cases and recovery efforts in Syria, Yemen, Afghanistan, Pakistan, and Somalia, as well as other counterterrorism matters. I have a Master of Science

Degree in Defense Analysis from the Naval Postgraduate School and have served as a National Security Fellow at the Harvard Kennedy School of Government.

3. This declaration is provided for use in the above-captioned habeas corpus litigation brought by a U.S. citizen (Petitioner) currently detained by the DoD in Iraq.[1] The statements made below are based on my personal knowledge and information made available to me in the performance of my official duties.

4. The Secretary of Defense has decided that the DoD will release Petitioner in the general vicinity of where he was captured by Syrian Democratic Forces (SDF) in early September 2017. Petitioner will be released under safe conditions ▮▮▮▮▮▮ of where he was captured. The release of detainees in this manner is a traditional military practice that is employed in the U.S. Central Command area of responsibility, and as described below, Petitioner's release would be consistent with such practice and with DoD's obligations under the law of war. In executing the process described below, DoD has taken all necessary and feasible precautions to ensure the safe release of Petitioner.

5. 

---

[1] The details of the intended release of Petitioner as described in this declaration must occur without advance public notification in order to safeguard the security of DoD's military operations.

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6. DoD plans to notify SDF, at the appropriate level, in advance of Petitioner's release so that they will be aware that Petitioner will likely be traveling through SDF checkpoints in the area and that the United States is not seeking or requesting that Petitioner be detained. Section 1209(e)(l) of the 2015 National Defense Authorization Act requires that partner forces vetted by the United States, including SDF, commit to promoting respect for human rights and the rule of law. It is the expectation of DoD that SDF comply with the law of armed conflict in all operations. SDF leadership has repeatedly affirmed their commitment to respect human rights and the rule of law, including compliance with the law of armed conflict, and they have acted consistently with those commitments, including in overseeing their forces, which has allowed the United States to maintain its support of SDF. With respect to SDF's prior treatment of Petitioner, my understanding is that SDF provides humane treatment to detainees captured during its operations. There was no evidence when Petitioner was taken into DoD custody that he had been physically harmed by SDF, and when asked at that time, Petitioner denied that he had been abused or injured.[3]

7. The U.S. Government has not requested, and does not intend to request, that any sovereign or foreign force detain or otherwise interfere with Petitioner's transit following his release from DoD custody in Syria.

8. Upon his release, Petitioner will be given $4,210 in cash, the same amount that he had in his possession when he was captured. He will also be provided a new cellular phone (in its original sealed packaging), which he can activate and use if he desires to do so. He will be provided sufficient food and water to last for several days. The clothing in his possession when he was captured, which is temperature and weather appropriate, will be returned to him, and he will be permitted to retain any attorney-client materials.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 6, 2018.

*[signature]*

Mark E. Mitchell

---

[3] In accordance with DoD policy, every detainee is screened by medical personnel upon arrival at DoD detention facilities. The purpose of this screening is to respond to any immediate medical needs of the detainee and to document the detainee's physical condition before detention by DoD personnel.

3