# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

        *Petitioner*,

v.

PATRICK M. SHANAHAN,
  in his official capacity as ACTING
  SECRETARY OF DEFENSE,

        *Respondent*.

No. 17-cv-2069 (TSC)

**PETITIONER'S NOTICE OF FILING PUBLIC REDACTED VERSION OF ECF 131**

NOTICE is hereby given that attached are redacted versions, suitable for public filing, of Petitioner's Motion to Unseal Filings Concerning the Government's Mooted Plan to Forcibly Transfer Petitioner Into Syria, filed on April 8, 2019, as ECF No. 131, and all attachments thereto.

Dated: April 8, 2019

Respectfully submitted,

/s/ Brett Max Kaufman

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
 of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005
Tel: 202-457-0800
Fax: 202-457-0805
aspitzer@acludc.org

Brett Max Kaufman (D.D.C. Bar No. NY0224)
Jonathan Hafetz (D.D.C. Bar No. NY0251)
Anna Diakun
Dror Ladin (D.D.C. Bar No. NY0277)
Hina Shamsi (D.D.C. Bar No. MI0071)
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004
Tel: 212-549-2500
Fax: 212-549-2654
bkaufman@aclu.org
jhafetz@aclu.org
adiakun@aclu.org
dladin@aclu.org
hshamsi@aclu.org

*Counsel for Petitioner*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>    *Petitioner*,<br><br>    v.<br><br>PATRICK M. SHANAHAN,<br>  in his official capacity as ACTING<br>  SECRETARY OF DEFENSE,<br><br>    *Respondent*. | No. 17-cv-2069 (TSC) |

# ECF 131

# REDACTED VERSION FOR PUBLIC FILING

~~UNDER SEAL~~

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN DOE,

        *Petitioner*,

        v.

PATRICK M. SHANAHAN,
  in his official capacity as ACTING
  SECRETARY OF DEFENSE,

        *Respondent*.

No. 17-cv-2069 (TSC)

~~UNDER SEAL~~

**PETITIONER'S MOTION TO UNSEAL
FILINGS CONCERNING THE GOVERNMENT'S MOOTED PLAN TO FORCIBLY
TRANSFER PETITIONER INTO SYRIA**

Pursuant to paragraph 9 of the Protective Order entered in this case, ECF No. 103,[1] Petitioner respectfully moves for the prompt unsealing of eight documents filed under seal in this matter between June 6, 2018, and July 6, 2018, relating to the government's proposed (and now mooted) forcible transfer of Petitioner into Syria, namely ECF Nos. 95, 97, 99, 101, 106, 107, 108, and 111 (together, the "Sealed Filings").[2] Given that this proceeding concerned the prolonged detention without charge of a U.S. citizen, there is significant public interest in the Sealed Filings, and there is no continued justification for their continued sealing because the government abandoned its plan when the parties agreed to Petitioner's transfer to Bahrain with his freedom restored.

Counsel for the government has informed Petitioner that it will oppose this motion.

---

[1] Paragraph 9 provides that once information has been designated as protected, "Petitioner's counsel shall treat [it] as protected unless and until the Court rules" to the contrary.

[2] The parties filed redacted versions of these sealed filings as ECF Nos. 96, 98, 105, 112, 113, and 114. By this motion, Petitioner also seeks to unseal this motion and any related future filings in this Court at the conclusion of this litigation.

~~UNDER SEAL~~

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

    I.   The First Amendment and the common law require specific and substantial justifications for continued sealing of court records ............................................................ 4

    II.  Any prior government interest in sealing information concerning the proposed forcible transfer of Petitioner to Syria has dissipated and cannot justify continued sealing ................................................................................................................................ 7

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

### Cases

*Ashworth v. Bagley*,
    351 F. Supp. 2d 786 (S.D. Ohio 2005) ......................................................................... 5

*Dhiab v. Trump*,
    852 F.3d 1087 (D.C. Cir. 2017) .................................................................................... 5

*Doe v. Mattis*,
    288 F. Supp. 3d 195 (D.D.C. 2018), *affirmed*, 889 F.3d 745 (D.C. Cir. 2018) .......... 1

*Gabrion v. United States*,
    No. 15-CV-447, 2015 WL 2354745 (W.D. Mich. May 15, 2015) ............................. 5

\*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982) ..................................................................................................... 6

*In re Guantánamo Bay Detainee Litig.*,
    630 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................. 5

*In re Nat'l Broad. Co.*,
    653 F.2d 609 (D.C. Cir. 1981) ..................................................................................... 6

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ................................................................................. 5, 6

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ......................................................................................... 5

*Newman v. Graddick*,
    696 F.2d 796 (11th Cir. 1983) ..................................................................................... 5

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ..................................................................................................... 5

*Osband v. Ayers*,
    No. CIV S-97-0152, 2007 WL 3096113 (E.D. Cal. Oct. 22, 2007) ............................ 5

\**Press-Enter. Co. v. Superior Court* (*Press-Enter. II*),
    478 U.S. 1 (1986) ......................................................................................................... 6

*Ramirez v. Attorney Gen. of N.Y.*,
    No. 99 Civ. 1909, 1999 WL 1059966 (S.D.N.Y. Nov. 22, 1999) ............................... 5

\**Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .................................................................................................. 5, 6

*United States v. Erie Cty.*,
  763 F.3d 235 (2d Cir. 2014).................................................................................................. 7

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980)............................................................................................ 5, 7

*Wash. Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991)............................................................................................ 5, 6

### Other Authorities

Anne Barnard, *Death Toll from War in Syria Now 470,000, Group Finds*, N.Y. Times,
  Feb. 11, 2016................................................................................................................... 2

Lizzie Dearden, *Syrian Civil War: More Than Five Million Refugees Flee Conflict as Global
  Support for Resettlement Wanes*, Independent, Mar. 30, 2017, https://ind.pn/2kV5qxi ......... 2

Notice of Extension of the Designation of Syria for Temporary Protected Status, 83 Fed. Reg.
  9329 (Mar. 5, 2018) ........................................................................................................ 3

████████████████████████████████████████████████ ............... 8

████████████████████████████████████████████████████ ............... 8

████████████████████████████████████████ ............... 8

████████████████████████████████ ............... 8

U.S. Dep't of State—Bureau of Consular Aff., Syria Travel Advisory (Jan. 10, 2018) ................ 2

U.S. Dep't of State—Bureau of Consular Aff., Syria: Safety and Security (Feb. 20, 2018).......... 2

## INTRODUCTION

During the litigation at issue in the Sealed Filings, both parties agreed to redact certain information about the precise location and conditions of the government's proposed transfer of Petitioner to Syria. The government had insisted that these details of the proposed transfer be kept under seal to "protect specific details regarding the noticed release of Petitioner," ECF No. 96 (June 7, 2018), "in order to safeguard the security of DoD's military operations," ECF No. 96-1 (June 7, 2018). Because of the speed of the litigation, the government's reasonable concern for ensuring the safety of a developing plan involving military personnel, and concern for Petitioner's own personal safety, Petitioner's counsel agreed to redact a wealth of material—much of it drawn from public (and mostly government) sources—that would have tended to reveal the precise location or certain conditions of the proposed transfer, but did not concede that all redacted material was properly sealed.

Now—with Petitioner released from custody, this habeas action terminated, and the government's proposed Syria transfer moot—the government's asserted bases for sealing have entirely dissipated. Petitioner therefore respectfully requests that the Court order the unsealing of both the government's and Petitioner's Sealed Filings concerning the proposed transfer to Syria. Both the First Amendment and the common law demand this result.

## FACTUAL BACKGROUND

In May 2018, the D.C. Circuit affirmed this Court's ruling that the government could not forcibly transfer Petitioner into the custody of a foreign country. *See Doe v. Mattis*, 288 F. Supp. 3d 195 (D.D.C. 2018), *affirmed*, 889 F.3d 745 (D.C. Cir. 2018). Shortly thereafter, this Court ordered the government to finally defend its legal justification for detaining Petitioner. *See*

1

Minute Order (May 15, 2018). Rather than do so, the government attempted to forcibly transfer Petitioner yet again—this time, into Syria. *See* ECF No. 96 (June 7, 2018).

If allowed, the government's proposed transfer of Petitioner from Iraq to Syria would have ended Petitioner's detention by stranding him—without a passport or access to American consular services—in an area ███████████████████████████████████████████████████████████████████████████████████████. At that time, Syria was among the most dangerous places on Earth. The war in Syria had caused at least 470,000 deaths, *see* Anne Barnard, *Death Toll from War in Syria Now 470,000, Group Finds*, N.Y. Times, Feb. 11, 2016, https://nyti.ms/1mvfgnn, and had forced more than five million people to flee the country and seek refuge, *see* Lizzie Dearden, *Syrian Civil War: More Than Five Million Refugees Flee Conflict as Global Support for Resettlement Wanes*, Independent, Mar. 30, 2017, https://ind.pn/2kV5qxi.

According to the State Department, "No part of Syria [wa]s safe from violence." U.S. Dep't of State—Bureau of Consular Aff., Syria Travel Advisory (Jan. 10, 2018), https://perma.cc/E5BC-5MLX. The State Department advised U.S. citizens in Syria to "[d]raft a will" and inform loved ones of "funeral wishes, etc." *Id.* The government warned that even U.S. citizens who possessed identification documents faced "dangers traveling within the country and when trying to leave Syria via land borders, given the diminishing availability of commercial air travel out of Syria." U.S. Dep't of State—Bureau of Consular Aff., Syria: Safety and Security (Feb. 20, 2018), https://perma.cc/PWH9-CNDS. The government also told the public that border checkpoints controlled by the opposition force in Syria, the Syrian Democratic Forces, "should not be considered safe" and border areas "are frequent targets of shelling and other attacks and are crowded because of internally-displaced refugees." *Id.*

Similarly, the Department of Homeland Security had determined that Syria was so unsafe that Syrian nationals unlawfully present in the United States must not be forcibly returned to their home country. In January 2018, the Secretary of Homeland Security published in the Federal Register the determination that "requiring the return of Syrian nationals (or aliens having no nationality who last habitually resided in Syria) to Syria would pose a serious threat to their personal safety." Notice of Extension of the Designation of Syria for Temporary Protected Status, 83 Fed. Reg. 9329, 9332 (Mar. 5, 2018). The Department of Homeland Security recognized that "Syria is engulfed in an ongoing civil war marked by brutal violence against civilians, egregious human rights violations and abuses, and a humanitarian disaster on a devastating scale across the country." *Id*. at 9331. Accordingly, the Department of Homeland Security extended the "Temporary Protected Status" designation to Syria through September 30, 2019. *Id.*

To stop this attempt to transfer Petitioner into a war-torn country, rapid and vigorous litigation ensued. Between June 7 and July 13, the parties filed seven sealed briefs (with associated declarations) in connection with Petitioner's motions for a temporary restraining order and a preliminary injunction. Due to the involvement of U.S. military personnel and the clear danger the government's proposal posed to Petitioner, Petitioner's counsel agreed to treat the specific location and certain conditions of the government's planned transfer as covered by the parties' protective order, *see* ECF No. 103 (June 15, 2018). On July 13, the Court held a hearing on Petitioner's motion for a preliminary injunction. With a decision from this Court imminent, the parties then filed a joint status report requesting that the Court hold that motion in abeyance because they were "engaged in ongoing settlement discussions regarding resolution of this case." ECF No. 115 (July 19, 2018). The Court granted that request, *see* Minute Order (July 20, 2018),

and nearly four months later, after lengthy negotiations and with Petitioner's consent, the government released Petitioner as a free man in Bahrain. *See* ECF No. 125 (Nov. 7, 2018).

## ARGUMENT

Although the sealed filings concerning the government's proposed forcible transfer of Petitioner into Syria were promptly followed by public, redacted versions, the public has been denied access to the parties' full arguments, as well as many of the facts that complete the picture of the actual nature of the government's proposal. At the time, the government justified sealing this information because "advance public notification" of the details of the transfer risked compromising the security of the operation. *See* ECF No. 96-1 at 2 n.1. Now that Petitioner has been freed, the government's justification no longer holds. Under First Amendment and common law right-of-access standards, the government cannot indefinitely hide such information even after its reasons for sealing have evaporated. For this reason, Petitioner respectfully requests that the Court rule that this information should no longer be designated as protected.

Moreover, there remains significant public interest in knowing the danger to which the United States government was willing to subject a U.S. citizen. That this Court did not have to rule on the legality of the government's plan makes the unsealing of this material even more necessary—for it is only in the court of public opinion that the government's plan can now be judged. That is a core function of the public right of access to judicial proceedings, and it is one Petitioner respectfully requests that this Court exercise now.

I.  **The First Amendment and the common law require specific and substantial justifications for continued sealing of court records.**

Because judicial transparency is essential to our democratic system of government, both the First Amendment and the common law presumptively protect the public's right of access to court proceedings and records. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

564–73, 580 n.17 (1980); *Wash. Post v. Robinson*, 935 F.2d 282, 287–88 (D.C. Cir. 1991). Although these rights are not absolute, they firmly prohibit judicial secrecy imposed "without sufficient justification." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 296 (2d Cir. 2012). As the D.C. Circuit recently reiterated, "there is a 'strong presumption in favor of public access to judicial proceedings,'" as such access "'is fundamental to a democratic state.'" *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 317, 315 n.79 (D.C. Cir. 1980)); *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978).

It is well settled that both the First Amendment and common law rights of access generally apply to the proceedings and records of habeas cases. *See In re Guantánamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 8–13 (D.D.C. 2009) (holding that the First Amendment and common law rights of access applied to unclassified factual returns in habeas actions arising from military detention of noncitizens at Guantánamo Bay, Cuba); *see also, e.g., Osband v. Ayers*, No. CIV S-97-0152, 2007 WL 3096113, at *1–3 (E.D. Cal. Oct. 22, 2007) (constitutional right); *Ramirez v. Attorney Gen. of N.Y.*, No. 99 Civ. 1909, 1999 WL 1059966, at *1 (S.D.N.Y. Nov. 22, 1999) (same); *Gabrion v. United States*, No. 15-CV-447, 2015 WL 2354745, at *1 (W.D. Mich. May 15, 2015) (common law right); *Ashworth v. Bagley*, 351 F. Supp. 2d 786, 791–92 (S.D. Ohio 2005) (same); *see also Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (constitutional access right extends to proceedings "which pertain to the release or incarceration of prisoners and the conditions of their confinement").[3]

---

[3] The D.C. Circuit's decision in *Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017), is not to the contrary. There, the D.C. Circuit addressed only whether there existed "a right under the First Amendment to receive *properly classified national security information filed in court* during the pendency of [a petitioner's] petition for a writ of habeas corpus." *Id.* at 1096 (emphasis added).

5

Case 1:17-cv-02069-TSC   Document 132-1   Filed 04/08/19   Page 11 of 15
~~UNDER SEAL~~

Where the First Amendment right of access attaches to judicial documents, strict scrutiny applies to any restriction of that right. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 & n.17 (1982); *accord Richmond Newspapers*, 448 U.S. at 580–81. To overcome such scrutiny, the party seeking to restrict access must support its sealing motion with "compelling reasons," and the court "must articulate specific findings on the record demonstrating that the decision to seal . . . is narrowly tailored and essential to preserve a compelling government interest." *Robinson*, 935 F.2d at 289 & n.10; *see also Press-Enter. Co. v. Superior Court* (*Press-Enter. II*), 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion . . . ."). To justify continued sealing, the government must show a "substantial probability" of harm backed up by evidence allowing for "specific, on the record findings" supporting the likelihood of harm. *Press-Enter. II*, 478 U.S. at 13–14. Conclusory assertions are not sufficient to abridge the First Amendment public access right, *id.* at 15, and speculation does not carry the government's burden, *Globe Newspaper Co.*, 457 U.S. at 609–610.

Similarly, the common law affords the public a presumptive right to access judicial records and documents so long as the public's interest in accessing the documents is not outweighed by countervailing concerns. *See Metlife*, 865 F.3d at 665. "A seal may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires.'" *Id.* at 665–66 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)). In so balancing, the Court must begin with a

---

Here, the government has not classified the information at issue, but has merely insisted that it be deemed protected under the parties' protective order. *See* ECF No. 103. And the protective order itself provides that it "may be modified by further order of the Court upon its own motion or upon application by any party." ECF No. 103 ¶ 2.

"strong presumption in favor of public access." *Hubbard*, 650 F.2d at 317; *see id.* at 317–22 (explaining balancing test).[4]

**II.    Any prior government interest in sealing information concerning the proposed forcible transfer of Petitioner to Syria has dissipated and cannot justify continued sealing.**

In the face of the clear public interest in this proceeding generally, and in the Sealed Filings specifically, the government cannot satisfy either of the right-of-access standards. At the time, the government explained that "[t]he details of the intended release of Petitioner as described in [the Mitchell] declaration must occur *without advance public notification* in order to safeguard the security of DoD's military operations" in connection with Petitioner's proposed forcible transfer. ECF No. 96-1 at 2 n.1 (emphasis added); June 8, 2018 Hr'g Tr. 3:16–21, ECF No. 100 (government counsel explaining that it redacted "the location, things that would reveal the location and the time . . . for petitioner's safety as much as our own"). In light of concerns for the safety of U.S. military personnel and Petitioner during this anticipated operation, Petitioner did not object to the filing of this information under seal. But now, nine months later, the government has released Petitioner from custody, and any operational plans to transfer him to this area of Syria were scrapped long ago. The government can no longer justify the continued sealing of this information.

The details now shielded from the public in the Sealed Filings would tell the public a story that it has the right to know.

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

---

[4] Because the First Amendment right plainly applies here and is more protective than the common law, this Court need not separately consider the common law right. *United States v. Erie Cty.*, 763 F.3d 235, 241 (2d Cir. 2014).





Nine months later, the public still knows none of these details. And, given the passage of time and the resolution of this habeas action through Petitioner's release more than five months ago as a free man elsewhere, the government cannot demonstrate a substantial probability of harm to a compelling government interest that would flow from public access to the Sealed Filings, as required by the First Amendment. Nor do the government's previous limited assertions concerning such harm establish that any harm from public disclosure of the Sealed Filings would outweigh the strong presumption in favor of public access, as required by the common law, now.

## CONCLUSION

For the reasons given above, the motion should be granted. A proposed order is filed herewith.

Dated: April 8, 2019

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW, 2nd Floor
Washington, DC 20005
Tel: 202-457-0800
aspitzer@acludc.org

Respectfully submitted,

/s/ *Brett Max Kaufman*
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Jonathan Hafetz (D.D.C. Bar No. NY0251)
Anna Diakun
Dror Ladin (D.D.C. Bar No. NY0277)
Hina Shamsi (D.D.C. Bar No. MI0071)
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, New York 10004
Tel: 212-549-2500
Fax: 212-549-2654
bkaufman@aclu.org
jhafetz@aclu.org
adiakun@aclu.org
dladin@aclu.org
hshamsi@aclu.org

*Counsel for Petitioner*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>              *Petitioner*,<br><br>           v.<br><br>PATRICK M. SHANAHAN,<br>  in his official capacity as ACTING<br>  SECRETARY OF DEFENSE,<br><br>             *Respondent*. | No. 17-cv-2069 (TSC) |

# ECF 131-1

# REDACTED VERSION FOR PUBLIC FILING

~~UNDER SEAL~~

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>       *Petitioner*,<br><br>       v.<br><br>PATRICK M. SHANAHAN,<br>  in his official capacity as ACTING<br>  SECRETARY OF DEFENSE,<br><br>       *Respondent*. | No. 17-cv-2069 (TSC)<br><br>~~UNDER SEAL~~ |

## [PROPOSED] ORDER GRANTING PETITIONER'S MOTION TO UNSEAL FILINGS CONCERNING THE GOVERNMENT'S MOOTED PLAN TO FORCIBLY TRANSFER PETITIONER INTO SYRIA

Upon consideration of Petitioner's motion to unseal ECF Nos. 95, 97, 99, 101, 106, 107, 108, and 111, and to unseal the instant motion and related future filings, and of the Respondent's opposition hereto, it appearing to the Court that there is no continuing need for secrecy with respect to the contents of those filings, it is hereby

ORDERED that the Clerk shall file ECF Nos. 95, 97, 99, 101, 106, 107, 108, and 111 (including all exhibits and attachments thereto) on the public record. And it is further

ORDERED that the parties shall each file on the public record their submissions related to the instant motion without redactions within one week of the date of this order.

Dated: _____, 2019

                                                          _____
                                                          Tanya S. Chutkan
                                                          United States District Judge