IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-2069 (TSC) |
| | ) | |
| PATRICK M. SHANAHAN, | ) | |
| in his official capacity as ACTING | ) | ███████████ |
| SECRETARY OF DEFENSE, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM IN OPPOSITION
TO PETITIONER'S MOTION TO UNSEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    The Governing Protective Order ........................................................... 3

    B.    Relevant Procedural History ................................................................. 4

    C.    Description of Sealed Information ........................................................ 6

ARGUMENT ...................................................................................................................... 8

    I.    THE COURT SHOULD DEFER TO THE DEPARTMENT'S
        DETERMINATION THAT PUBLIC DISCLOSURE OF THE SEALED
        INFORMATION WOULD ENDANGER U.S. MILITARY ██████████ IN
        SYRIA ██████████████ ....................... 8

        A.    The Filings Containing the Sealed Information Do Not Qualify as
            Judicial Records Because They Never Resulted in a Decision by the
            Court ................................................................................................... 9

        B.    Petitioner Fails To Establish that the First Amendment Right of
            Access Applies in This Civil Habeas Proceeding Involving a Military
            Detainee ............................................................................................ 11

        C.    The D.C. Circuit's Analysis in *Ameziane* Properly Applies Here and
            Warrants Rejection of Petitioner's Motion .............................................. 14

    II.    THE DEPARTMENT HAS PROVIDED SUFFICIENT JUSTIFICATION
        FOR THE CONTINUED PROTECTION OF THE SEALED INFORMATION
        UNDER FIRST AMENDMENT SCRUTINY OR COMMON LAW
        ANALYSIS.......................................................................................... 19

CONCLUSION................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Ameziane v. Obama*, 699 F.3d 488 (D.C. Cir. 2012) ....................................... 2, 9, 16, 17, 18, 19

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918 (D.C. Cir. 2003) ..................... 16

*Dhiab v. Obama*, 70 F. Supp. 3d 486 (D.D.C. 2014) ................................................................... 15

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017) ........................................................... 12, 13, 15

*Flynt v. Rumsfeld*, 355 F.3d 697 (D.C. Cir. 2004) ...................................................................... 12

*Hamlily v. Obama*, 616 F. Supp. 2d 63 (D.D.C.),
    *adopted sub nom. Anam v. Obama*, 653 F. Supp. 2d 62 (D.D.C. 2009) .......................... 16

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................................... 16

*In re Caswell*, 18 R.I. 835, 29 A. 259 (1893) .............................................................................. 10

*In re Guantanamo Detainee Litig.*, 630 F. Supp. 2d 1 (D.D.C. 2009) ............................. 13, 17, 18

*In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325 (D.C. Cir. 1985) .................. 12

*Matter of Leopold*, 327 F. Supp. 3d 1 (D.D.C. 2018) ................................................................. 12

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ...... 10, 15, 21-22

*Munaf v. Geren,* 553 U.S. 674 (2008) ......................................................................................... 16

*Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983) ................................................................. 13

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ......................................................... 10, 21

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ...................... 15

*Osband v. Ayers*, No. 97-cv-0152, 2007 WL 3096113 (E.D. Cal. Oct. 22, 2007) ...................... 13

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) .................................................. 12, 14, 19

*Ramirez v. State Attorney Gen.*,
    No. 99-cv-1909, 1999 WL 1059966 (S.D.N.Y. Nov. 22, 1999) ...................................... 13

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ............................................. 12, 15

*SEC v. Am. Int'l Grp.*, 712 F.3d 1 (D.C. Cir. 2013) ................................................................... 10

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) ..................................................................... 15

*United States v. Cohen*, 366 F. Supp. 3d 612 (S.D.N.Y. 2019) ..................................... 14

\*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) ................................. 10, 11

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ......................................... 16, 19, 21-22

*Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) ....................... 10

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ............................................. 9, 11, 15, 19

## **INTRODUCTION**

Petitioner's Motion to Unseal certain filings in this now-dismissed habeas action asks the Court to make publicly available certain details regarding a proposal submitted by the Department of Defense (the "Department") to release Petitioner in Syria, after he was captured by the Syrian Democratic Forces at a screening point near territory held by the Islamic State of Iraq and the Levant ("ISIL") and turned over to the custody of U.S. forces. After Petitioner opposed this proposed release, the parties engaged in settlement discussions, and Petitioner was ultimately released in Bahrain. The Court, thus, never ruled on Petitioner's motions seeking to halt the proposed release. However, Petitioner contends that, even though the proposed release never took place, there is significant public interest in the details of the Department's proposal while, in Petitioner's view, any justification for maintaining the information under seal has dissipated. Petitioner argues that both a First Amendment and a common law right of access to judicial proceedings warrant public disclosure of the sealed information.

Petitioner's motion should be denied. The authority in this Circuit is clear that any right of access to judicial proceedings extends only to "judicial records," which cannot exist in the absence of a judicial decision. Here, because the Court did not issue a decision regarding the proposed release, the filings regarding the Department's proposal are not judicial records, and no right of public access has attached to them.

Other factors also distinguish the situation here from those where a right of access was found. This is not a criminal case—the only context where the Court of Appeals in this Circuit has squarely recognized a First Amendment right of access. Rather, it is a habeas case involving an individual who was detained by U.S. forces in another country as a result of a military conflict abroad. In addition, the person seeking "public access" here is Petitioner, who already has access to the information at issue, not a third party organization seeking access to information that it does

not have. In light of these distinguishing features, neither the First Amendment analysis applicable to criminal judicial records that Petitioner urges, nor the common law multi-factor test that he suggests as an alternative, is appropriate. Instead, Petitioner's motion is better analyzed under the framework that the D.C. Circuit set forth in *Ameziane v. Obama*, 699 F.3d 488 (D.C. Cir. 2012)— where the Court reviewed a Guantanamo detainee's request to make public information that the Government had disclosed to the detainee but had designated as "protected" under a protective order similar to the one that governs here.

Regardless of the applicable test, the information at issue here—which is limited to specific details regarding the location within Syria of the proposed release, the familiarity of U.S. forces with that location, and certain measures that the Government had proposed to reassure Petitioner regarding his safety—should remain sealed. As discussed in the Department's declaration accompanying this filing, release of the information at issue would allow ISIL and other hostile forces to focus attention on ████████ within Syria as a location where U.S. forces, and those of other members of the Combined Joint Task Force—Operation Inherent Resolve ("Coalition"), are likely ████████, jeopardizing U.S. military ████████████████████████ ██████████████████████████████████. In addition, public disclosure of the steps that the Government proposed to take, including ████████████████████ ███████████████████████████████, and ████████████████████ ███████████████████████, could damage the United States' ████████████ ████████████████ in the ongoing battle against ISIL.

Under any standard, Petitioner's asserted interest in making these details public cannot overcome the Department's continuing compelling interest in protecting this information. Now

2

that Petitioner has been released elsewhere, and has agreed to the dismissal of this action, he seeks to tout publicly his arguments opposing the proposed release in Syria, with the apparent aim of trying to shame or embarrass the Department, ignoring that the Court never overruled the Department's assessment that the proposed release in Syria would be safe. While Petitioner is free to make similar arguments that could refer generally to a proposed release in Syria without referencing the specific details that remain under seal, the Court should defer to the Department's assessment that those details must remain protected in order to safeguard U.S. forces and ████████ abroad.

## **BACKGROUND**

### A.       **The Governing Protective Order**

Petitioner's access to and use of information that the Government has identified in the course of this proceeding as "protected" is governed by a Protective Order, which, pursuant the parties' consent motion, was issued by the Court on June 15, 2018. *See* Protective Order ("P.O.") [ECF 103]. The P.O. applies to "all aspects of this case." *Id.* ¶ 2. Pursuant to the P.O., when government counsel designates information as "protected," Petitioner's counsel must treat it as such "unless and until the Court rules that the information should not be designated as protected." *Id.* ¶ 9. The P.O. also required Petitioner to destroy all protected documents and information, aside from one complete set of any Court filing or opinion containing protected information, within sixty days of the resolution of this case. *See* P.O. ¶ 20.[1]

---

[1] In anticipation of Petitioner's filing the instant Motion to Unseal, Petitioner sought, and was granted, an extension of time to comply with Paragraph 20 of the P.O. *See* Order of Feb. 28, 2019 [ECF 130]. The Court's Order granting this extension provides that Petitioner's obligation to identify and destroy protected information is held in abeyance until thirty days following final disposition of the Motion to Unseal, and that all protected information will remain under seal

**B.**     **Relevant Procedural History**

After Petitioner was captured by SDF forces in September 2017 at a checkpoint on an active battlefield, identified as an American citizen and a likely member of ISIL, and turned over to the custody of U.S. forces, the Department engaged in a lengthy process of determining what to do with him. As relevant here, on June 6, 2018, the Department filed a Notice of Release, indicating its determination that it would release Petitioner in Syria. *See* Notice of Release [ECF 94]. Concurrent with the Notice, the Department also filed, under seal, the Declaration of Mark E. Mitchell ("First Mitchell Decl.") [ECF 95 (under seal), redacted version at ECF 96], providing further details regarding the specific location within Syria where the Department planned to release Petitioner. Mr. Mitchell explained that Petitioner would be released "under safe conditions ████████████ of where he was captured," in the ████████████ ████ First Mitchell Decl. ¶ 4. Mr. Mitchell further explained that ████ and the surrounding area, including a ████████████████, were ████ ████████, and that "████████████." *Id.* ¶ 5.

In response to the Department's Notice, Petitioner filed an Application for Temporary Restraining Order ("TRO"), followed by a Motion for Preliminary Injunction ("PI"), seeking to halt the proposed release and disputing the Department's assessment that ████ was a safe release location. In the course of opposing those motions, the Department submitted the Declaration of Major General Chad P. Franks ("Franks Decl.") [attached to ECF 101 (under seal), redacted version at ECF 105-2, at 76-78]. General Franks further explained the basis for the Department's determination that Petitioner's release in ████ would be safe, including the fact

---

"unless and until there is a final unappealable decision holding otherwise." *Id.* at 1-2.

that the Department had ███████████████████████████████████. Franks

Decl. ¶¶ 4-7. General Franks also described ███████████████████████████

███████████████████████████████████ his release would be safe.

*Id.* ¶ 8. In particular, General Franks indicated that ████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████." *Id.* The

Department would also ███████████████████████████████████████

███████████████. *See id.*

In a subsequent filing, the Department submitted a Second Declaration of Mark E. Mitchell

("Second Mitchell Decl.") [attached to ECF 108 (under seal), redacted version at ECF 113-1, at

35-36]. In this declaration, Mr. Mitchell responded to Petitioner's arguments that Department ████

████, which ████████████████████████ ████████████████████████,

were evidence that █████ was not safe. *See id.* Mr. Mitchell explained that the ████████

████████████ occurred ██████████████████████████████████████

██████████████ and that ████████████████████████████████████

██████████████████████. Second Mitchell Decl. ¶ 3.

Ultimately, the Court never ruled on Petitioner's TRO Application or PI Motion and thus

never addressed Petitioner's attempt to refute the Department's judgment that ███████ was a safe

location for release. Instead, in a Joint Status Report submitted on July 19, 2018, the parties

informed the Court that they were engaged in ongoing settlement discussions regarding resolution

of the case. *See* JSR [ECF 115]. On November 7, 2018, the parties notified the Court that, with

Petitioner's consent, he had been released in Bahrain on October 28, 2018; accordingly, the parties stipulated to the dismissal of this action with prejudice. *See* Stip. of Dismissal [ECF 125].

## C.      Description of Sealed Information

In his original sealed declaration, Mr. Mitchell explained that "[t]he details of the intended release of Petitioner as described in this declaration must occur without advance public notification in order to safeguard the security of DoD's military operations." First Mitchell Decl. ¶ 3 n.1. Although the Department later filed a public version of the declaration that identified Syria as the country where the Department intended to release Petitioner, certain details identifying the specific ████ within Syria where the planned release would occur were redacted in accord with the Government's determination that the information should be designated as protected. *See* Resp. Notice of Filing Public Version of Sealed Filing [ECF 96] (filed June 7, 2018). Petitioner did not then object to the designation of this information as protected, and subsequent filings regarding the proposed release of Petitioner in Syria were also filed under seal, with public versions redacting information that Respondent deemed protected. *See* ECF 97 (Pet'r App. for TRO) (under seal), 98 (redacted version); ECF 99 (Resp. Opp. to TRO) (under seal), 105 (redacted version); ECF 101 (Resp. Supp. Opp. to TRO) (under seal), 105 (redacted version); ECF 106 & 107 (Pet'r PI Mot. & Response to Resp. Supp. Opp.) (under seal), 112 (redacted version); ECF 108 (Resp. Opp. to PI) (under seal), 113 (redacted version); ECF 111 (Pet'r PI Reply) (under seal), 114 (redacted version).

The information that Petitioner seeks to unseal (the "Sealed Information") with his motion can be categorized as follows:

1. Information identifying the location of the proposed release, including: the name of ████ ████ ; references to ████████ ; its geographic location within Syria; its

6

location ███████████████; its location ██████████████████████

████████████████████████████; details regarding ██████████████

█████████████████████████ the fact that ██████████████████████

█████████; descriptions of ██████████████████████; references to the

███████████, including █████ and location relative to ████████████; and

references to Department ███████████ that would allow specific ███████ containing

references to the ███████████ to be identified.

2.  Information indicating a ██████████████████████ in the ████████████,

including: information suggesting ██████████████████████████████

██████████; the fact that █████████████████████████████████; the fact that

██████████████████████████████████; information indicating

a █████████████████████████████; and assessments of the ████████

████████████████████████

3.  Information identifying certain additional steps that the Department proposed to take in

order to reassure Petitioner that his release would be safe, including: ██████████████

████████████████████████████████████████████████████, and ████████

█████████████████████████; ███████████████████████████████████

█████████████████████████; descriptions of ██████████████████████

███████████████.[2]

---

[2] The information currently under seal in the filings at issue also includes names and/or identifying information of certain Government declarants, including an FBI Special Agent, two Department medical officers, and a State Department official. Counsel for Petitioner has indicated, in communication with counsel for Respondent, that Petitioner does not object to the continued redaction of that information regardless of the outcome of Petitioner's motion. Accordingly,

In light of Petitioner's motion, the Department submits herewith a declaration further explaining the basis for keeping these categories of information under seal. *See* Third Declaration of Mark E. Mitchell ("Third Mitchell Decl."), attached hereto. Mr. Mitchell explains that disclosure of information in the first two categories would pose a significant operational security risk to U.S. and Coalition forces that ███████████████████ ███████. Third Mitchell Decl. ¶¶ 3-8. Disclosure of information identifying the location of Petitioner's proposed release in Syria would allow hostile forces, including ISIL, to focus attention on that location as a target of attack, jeopardizing ██████████████████████, as well as other ███████████████████████████████, which ███████ ████████████████████. *Id.* Disclosure of information in the third category would also endanger ███████████████████████ ██████ in the United States' ongoing fight against ISIL. *Id.* ¶ 10.

## ARGUMENT

**I.     THE COURT SHOULD DEFER TO THE DEPARTMENT'S DETERMINATION THAT PUBLIC DISCLOSURE OF THE SEALED INFORMATION WOULD ENDANGER U.S. MILITARY ███████████ IN SYRIA AND ████ ████████████████████**

Petitioner argues that the Sealed Information should be made public pursuant to a First Amendment right of access to judicial proceedings and urges the Court to apply the test set forth in *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), to any justification for continued

---

Respondent does not further address that information herein. These filings also contain redacted references to the location of an earlier proposed transfer that Petitioner had also opposed. This information is also under seal in the Court of Appeals, and the redaction of such information in the Court of Appeals' opinion is the subject of a currently pending motion to unseal in that Court.

sealing that the Department might provide. *See* Pet'r Mot. at 6.[3]  In the alternative, Petitioner asks the Court to order disclosure of the Sealed Information pursuant to a common law right of access. *See id.* However, the situation here is far afield from any case in this Circuit where a court has required the unsealing of information pursuant to either the First Amendment or the common law. For the reasons described below, rather than the cases cited by Petitioner addressing third parties' First Amendment right to access criminal proceedings, the Court should follow the more closely analogous case considered by the Court of Appeals in *Ameziane v. Obama*, 699 F.3d 488 (D.C. Cir. 2012), and should deny Petitioner's motion because the Department has "logically explained why failing to protect [the Sealed Information] [i]s likely to harm the government's foreign relations and national security interests." *Id.* at 496.

### A.     The Filings Containing the Sealed Information Do Not Qualify as Judicial Records Because They Never Resulted in a Decision by the Court

Petitioner's assertion of a First Amendment or common law right of access to the Sealed Information should be rejected at the outset because the filings containing this information are not judicial records. Petitioner suggests that the fact that the Court never ruled on "the legality of the government's [proposed transfer] makes the unsealing of this material even more necessary" because, he argues, "a core function of the public right of access to judicial proceedings" is to allow judgment "in the court of public opinion" even when the Court itself never issued a decision.

---

[3] While Petitioner refers to this test as "strict scrutiny," *see id.*, the Court of Appeals has not used that term in this context. Rather, in *Robinson*, the Court indicated that "[t]he first amendment creates a general presumption of access" to criminal judicial proceedings, including plea agreements, but recognized that the presumption can be overcome if (1) sealing the information "serves a compelling interest"; (2) "there is a substantial probability that, in the absence of [a court seal]," this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Robinson*, 935 F.2d at 290.

Pet'r Mot. at 4. However, the authority of the Supreme Court and this Circuit is directly contrary
to this notion. Indeed, the very purpose of First Amendment access is to improve the process of
judicial decisionmaking, not to bypass it by with a public opinion proxy, and the Supreme Court
has warned that courts must ensure grants of access are not merely for the purpose of "promot[ing]
public scandal." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (quoting *In re
Caswell*, 18 R.I. 835, 29 A. 259, 259 (1893)).

      In accord with this principle, it is well established that any right of access under either the
First Amendment or the common law to court filings only applies to "judicial records," but "not
all documents filed with courts are judicial records." *Metlife, Inc. v. Fin. Stability Oversight
Council*, 865 F.3d 661, 666 (D.C. Cir. 2017).[4] "Whether something is a judicial record depends
on the role it plays in the adjudicatory process." *Id.* In *Metlife*, the Court held that filed documents
that a court did not quote or cite in its decision could still qualify as judicial records because the
court's decision might still have relied on the documents. *See id.* at 668. In contrast, in *SEC v. Am.
Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013), the Court of Appeals held that an independent

---

[4] In an earlier case, the Court of Appeals suggested in passing that "all of the documents filed with
the court . . . are maintained as the official 'record of what transpired.'" *Wash. Legal Found. v.
U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). However, the Court made this
statement after defining a "public record," for purposes of the common law right of access, as "a
government document created and kept for the purpose of memorializing or recording an official
action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905.
The Court concluded that the documents at issue in that case—which had not been filed on the
docket but were the internal documents of a Sentencing Commission Advisory Working Group—
did not qualify as public records because they did not record or memorialize an official action or
decision. *Id.* at 899, 906. The assumption that there was a judicial decision was thus implicit in the
Court's characterization of court filings, as a later Court of Appeals decision recognized. *See
United States v. El-Sayegh*, 131 F.3d 158, 162 (D.C. Cir. 1997) ("Th[e] principle [suggested in
*Washington Legal Found.*], of course, assumes a judicial decision. If none occurs, documents are
just documents; with nothing judicial to record, there are no judicial records.").

consultant's reports did *not* qualify as judicial records because they were not created—much less filed on the docket—before the court reached its decision, so the court could not have relied upon them in its decisionmaking process. *See id.* at 3-4. Critically, as these decisions make clear, "the concept of a judicial record 'assumes a judicial decision,' and with no such decision, there is 'nothing judicial to record.'" *Id.* at 3. Thus, in *El-Sayegh*, the Court of Appeals held that, where a plea agreement was withdrawn before the District Court ruled upon it, the agreement—even though filed on the docket as an attachment to a motion to seal—was not a judicial record. *See El-Sayegh*, 131 F.3d at 162-63.

The situation here is a clear parallel to that in *El-Sayegh*. As in that case, there is no Court decision that could have relied upon the filings at issue. The Department's original Notice of Release, and the concurrently-filed First Mitchell Declaration, were not filed in connection with any motion or request to the Court; rather they provided notice regarding the Department's intended action. Subsequent briefing in connection with Petitioner's emergency motions seeking to halt the proposed release in Syria were intended to affect the Court's decisionmaking process at the time they were filed. However, the Court ultimately never ruled on Petitioner's motions because, in the end, the parties resolved the case without Court involvement. The parties' filings in connection with Petitioner's motions therefore do not qualify as judicial records. Petitioner's Motion to Unseal should be denied on that basis alone.

**B.     Petitioner Fails To Establish that the First Amendment Right of Access Applies in This Civil Habeas Proceeding Involving a Military Detainee**

Aside from the fact that the filings at issue are not judicial records, the First Amendment analysis of *Robinson* is also inappropriate because of the different context of this proceeding. Despite Petitioner's suggestion to the contrary, it is far from settled that the qualified First

Amendment right of access applies in a civil habeas proceeding, particularly one involving a detainee in the custody of U.S. forces engaged in military operations in a foreign country. *See Flynt v. Rumsfeld*, 355 F.3d 697, 704 (D.C. Cir. 2004) ("[N]either this Court nor the Supreme Court has ever applied [the Supreme Court's plurality decision in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563 (1980), recognizing a First Amendment right of public access to criminal trials,] outside the context of criminal proceedings, and we will not do so today."); *Dhiab v. Trump*, 852 F.3d 1087, 1104 (D.C. Cir. 2017) (Williams, J., concurring) (recognizing that the D.C. Circuit has "never found a qualified First Amendment right outside the criminal context" although it has "never categorically ruled it out"). Nor is there any basis to allow Petitioner to invoke such a First Amendment right when he already has access to the Sealed Information.

A party seeking to invoke a First Amendment right of access must show, first, that "the place and process" to which access is sought "have historically been open to the press and general public," and second, that "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986); *see Matter of Leopold*, 327 F. Supp. 3d 1, 18 (D.D.C. 2018) (quoting *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985), as establishing that "both these ['history' and 'logic'] questions must be answered affirmatively before a constitutional requirement of access can be imposed."). In *Dhiab*, Judge Randolph concluded that "there is no tradition of public access [in habeas cases] comparable to that recounted in *Press-Enterprise* with respect to criminal trials." *Dhiab*, 852 F.3d at 1093 (opinion of Randolph, J.). However, the panel did not reach a majority decision on that point; rather, the Court concluded that, even "[a]ssuming the existence of such a qualified right in this case, . . . the compelling national security

12

considerations [at issue] render that right unavailable here." *Id.* The availability of a First Amendment right of access in a civil habeas proceeding thus remains open.

Petitioner offers nothing that could establish a tradition of public access to habeas corpus proceedings in general. Much less does Petitioner establish any tradition of public access to the "particular process in question" here—one that, at the stage relevant to Petitioner's Motion to Unseal, involved review of whether the Government could release in a foreign country a detainee challenging his enemy combatant status, where certain information relevant to the proposed release implicated national security ███████████.[5] Nor has Petitioner established the "logic" prong of the analysis by showing that public access to the details of a proposed release of a detainee in a foreign country would play a significant positive role. To the contrary, public disclosure of such information could frustrate the very purpose of a petitioner's habeas claim—to secure his release—by putting hostile forces on notice of where a release might occur, posing risks to U.S. ███████████ and ███████████████ in the area of release, and potentially derailing proposed or ongoing release operations altogether. *See* Third Mitchell Decl. ¶¶ 3-10. Public disclosure here also would create a precedent that could lead to derailing or avoiding such

---

[5] Petitioner cites only three cases, two of them unpublished, from other jurisdictions, where courts suggested that a First Amendment right of access might apply to merits-related proceedings in the habeas context, none of which involved sensitive information ██████████████ ██ *See Osband v. Ayers*, No. 97-cv-0152, 2007 WL 3096113, at *1 (E.D. Cal. Oct. 22, 2007) (considering which portions of final hearing transcripts should remain sealed when an evidentiary hearing had been conducted in closed session largely for convenience); *Ramirez v. State Attorney Gen.*, No. 99-cv-1909, 1999 WL 1059966, at *1 (S.D.N.Y. Nov. 22, 1999) (addressing an essentially frivolous request by inmate to seal his habeas proceeding); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (holding that a news organization could invoke a First Amendment right of access to a proceeding "relat[ing] to the release of convicted prisoners" because of its similarity to a criminal trial, but declining to extend such a right to other civil proceedings). Petitioner also cites *In re Guantanamo Detainee Litig.*, 630 F. Supp. 2d 1 (D.D.C. 2009), but, as discussed below, that case did not apply the First Amendment scrutiny that Petitioner urges here.

13

release operations in future cases. "[I]t takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enter. Co.*, 478 U.S. at 8-9.

Indeed, Petitioner has conceded as much by recognizing that the Sealed Information properly remained sealed while the Department's proposed release was under consideration. *See* Pet'r Mem. at 1. That concession dooms any attempt to establish a First Amendment right of access because, as another court has recently held, the relevant time period for determining whether experience and logic supports a First Amendment right of access is the time period when the information was sealed, not when access is sought. *See United States v. Cohen*, 366 F. Supp. 3d 612, 630–31 (S.D.N.Y. 2019) ("[T]he purpose underlying the First Amendment presumption, guidance from the Supreme Court and the federal courts of appeals, and practical considerations are all congruent with analyzing any tradition of openness by reference to the point when judicial authority is invoked to seal a document—here, at the warrant application stage—and not when access to those documents is requested."). As the court in *Cohen* explained, the First Amendment presumption applies in order to allow public participation in an ongoing proceeding. *See id.* Access that occurs only after the fact would not serve this purpose.

## C.    The D.C. Circuit's Analysis in *Ameziane* Properly Applies Here and Warrants Rejection of Petitioner's Motion

In addition to the fact that this is a civil habeas proceeding and the filings at issue relate to no judicial decision regarding Petitioner's release, Petitioner's motion is different from other requests for access to court proceedings in ways that warrant a different analysis even if some form of review of the Department's determination regarding the Sealed Information is appropriate. For one thing, most cases cited in Petitioner's motion involve situations where a news organization or

other third party sought access to information from which it was excluded. In *Richmond Newspapers, Inc.*, 448 U.S. at 563 (plurality), and *Washington Post*, 935 F.2d at 284, news media organizations had intervened in criminal proceedings in order to gain access to a trial, in the former case, and to a sealed plea agreement, in the latter. In *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012), the court held that an organization had standing to challenge a policy that limited access to Transit Adjudication Bureau hearings because the policy would result in the organization's exclusion from some hearings. *See id.* at 295. And in *Metlife, Inc.*, a finance-oriented public interest organization intervened in order to seek the unsealing of summary judgment briefing between a corporate entity and a federal oversight council focused on financial stability. *See* 865 F.3d at 664. Indeed, even *Dhiab* was a case addressing a news media organization's intervention in a habeas proceeding involving a Guantanamo detainee, and its attempt to gain access to videos of enteral feedings and forced cell extractions. *See Dhiab v. Obama*, 70 F. Supp. 3d 486, 491-92 (D.D.C. 2014).

Unlike any of those cases, the motion to unseal at issue here has been filed by Petitioner—who was a party to the underlying proceeding where the sealed information was filed, as well as to the P.O. governing such information—and Petitioner has had access to the information at issue throughout the course of proceedings. Moreover, also unlike all those cases except for *Dhiab*, the information at issue here implicates the Government's interest in protecting national security and ██████████████ areas where courts accord broad deference to the Executive Branch. *See, e.g., Trump v. Hawaii*, 138 S. Ct. 2392, 2422 (2018) (recognizing that even where the First Amendment may be implicated, "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving 'sensitive and weighty

15

interests of national security and foreign affairs.'" (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010))); *Hamlily v. Obama*, 616 F. Supp. 2d 63, 68–69 (D.D.C.), *adopted sub nom. Anam v. Obama*, 653 F. Supp. 2d 62 (D.D.C. 2009) (recognizing that "courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs" (internal quotation omitted) (quoting *Munaf v. Geren,* 553 U.S. 674, 689 (2008)); *see also Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 935-36 (D.C. Cir. 2003) ("We will not convert the First Amendment right of access to criminal judicial proceedings into a requirement that the government disclose information compiled during the exercise of a quintessential executive power—the investigation and prevention of terrorism.").

Rather than the cases cited by Petitioner, the situation here is thus directly analogous to that in *Ameziane*. There, a Guantanamo detainee sought to make public information that was known to him—concerning his clearance by a Government task force for transfer from Guantanamo to another country—and the question was whether the information properly qualified as "protected" under the governing protective order. *See Ameziane*, 699 F.3d. at 491.[6]  Although the Court mentioned the First Amendment as a factor warranting "greater caution in deciding to defer" to the Government's determination that disclosure of information would harm foreign affairs and national security, it did not apply a First Amendment test such as Petitioner urges. *See id*. at 494. Nor did it apply the multi-factor test that is typically used when analyzing the common law right of access. *See United States v. Hubbard*, 650 F.2d 293, 316-23 (D.C. Cir. 1980).

---

[6] The Court of Appeals observed that the petitioner in *Ameziane* had conceded that other related, more specific information, including "any information regarding the government's attempts to repatriate [the petitioner] to Algeria," was properly protected and summarily reversed the district court's ruling that such information should be made public. *See id.* at 492-93.

Instead, the Court in *Ameziane* indicated that the Government "first must demonstrate *what kind* of information requires protection and *why*, and then must show exactly *what* information in the case at hand it seeks to protect." *Ameziane*, 699 F.3d at 495. The Court then held that the Government had made the required showing in that case. *See id.* at 496. The Government satisfied the first step because it identified a "single, limited category of information: Task Force transfer decisions and all related or derivative documents," and "logically explained why failing to protect [that information] was likely to harm the government's foreign relations and national security interests." *Id.* The Government also satisfied the second step because the transfer decision regarding the petitioner fell squarely into the category of information that the Government had identified as requiring protection. *Id.*

As the Court in *Ameziane* emphasized, the review framework that it described "did not free courts to substitute their own policy judgments for those of the executive," nor did it "license the court to 'perform[] its own calculus as to whether or not harm to the national security . . . would result from [the] disclosure.'" *Id.* at 497. After *Ameziane*, the Court in *In re Guantanamo Bay Detainee Litig.* followed the same two-step framework when not only the petitioners but also press intervenors sought to challenge the Government's designation of certain categories of information as protected due to national security and law enforcement concerns. *See In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d at 13-14. The Court also adhered to *Ameziane* in rejecting the notion, advanced by the press intervenors, that the Court "may disregard the government's assessment of the harm to foreign relations and national security simply because the matter involved is one of great public interest." *See id.* at 24. Rather, the Court recognized that, under the Court of Appeals' decision, "'the failure to give deference when it is due is error.'" *Id.* (quoting

17

*Ameziane*, 699 F.3d at 497). The Court thus upheld all six categories that the Government had identified as protected under step one of the analysis and deferred consideration of step two pending the Government's identification of specific information falling into those categories. *See id.* at 15-26.

Here, the Court should follow the same analysis that the Court of Appeals adopted in *Ameziane*, and it should conclude that the Department satisfies both steps of the *Ameziane* framework. As described above, the Sealed Information at issue here falls into three categories: (1) information identifying the specific location of the proposed release in Syria; (2) information suggesting that the proposed release location is an area where ████████████████████ ████████████████████; and (3) information identifying steps that the Department proposed to take, including its ████████████████████████, in order to reassure Petitioner that his release would be safe. The Department's declarant, Mr. Mitchell, has explained that ████████████ is a ██████ ██████ location for U.S. and Coalition forces ████████████ in Syria, both in connection with ████████████████████ and in connection with ██ ████████████ that are ████████████████████. Third Mitchell Decl. ¶¶ 3-8. Disclosing information in the first two categories would increase the likelihood that ISIL would focus on the vicinity of ████████ when seeking to attack U.S. and Coalition forces, putting these forces, as well as any ████████████████ in this location, at greater risk of harm. *See id.*

Mr. Mitchell has also explained that publicly disclosing information in the third category could jeopardize the Department's ████████████████████████████ ████████████████████. *Id.* ¶ 10. Disclosing information in the third category would

also create a risk that ISIL or other hostile forces would seek to ███████████████

██████ like those described in the Franks declaration and ████████████ when mounting

attacks against U.S. and Coalition forces. *Id.*

The Department thus satisfies step one of the *Ameziane* analysis because it has "logically

explained why failing to protect [the Sealed Information] [i]s likely to harm the government's

foreign relations and national security interests." *Ameziane*, 699 F.3d at 496. The Department has

also satisfied step two because, as listed above, the Sealed Information squarely falls within the

three categories identified. The Court, therefore, should deny Petitioner's Motion and continue to

protect the Sealed Information from public disclosure.

## II. THE DEPARTMENT HAS PROVIDED SUFFICIENT JUSTIFICATION FOR THE CONTINUED PROTECTION OF THE SEALED INFORMATION UNDER FIRST AMENDMENT SCRUTINY OR COMMON LAW ANALYSIS

The Court should reach the same conclusion even if it applies the First Amendment

analysis for access to criminal judicial records set forth in *Robinson*, as Petitioner urges, or the

common law analysis set forth in *Hubbard*. Even where a First Amendment right of access is at

stake, information may still be protected if "essential to preserve higher values and … narrowly

tailored to serve that interest." *Robinson*, 935 F.2d at 288 (quoting *Press-Enter. Co.*, 464 U.S. at

510). As noted above, the Court of Appeals in *Robinson* further articulated the standard as

requiring a showing that (1) sealing the information "serves a compelling interest"; (2) "there is a

substantial probability that, in the absence of [a court seal]," this compelling interest would be

harmed; and (3) there are no alternatives to [the seal] that would adequately protect the compelling

interest." *Id.* at 290.

For the same reasons explained above, the limited withholdings at issue serve the

19

"compelling government interest" in protecting national security ▮▮▮▮▮▮▮▮▮▮, in particular the safety and security of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as well as the United States' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the ongoing military conflict with ISIL. The Department's declarant has explained that this interest would be harmed if the Court's seal were lifted. Third Mitchell Decl. ¶¶ 3-10. Moreover, there are no adequate alternatives to keeping this information sealed, as once it were publicly disclosed, the harms that the Department has articulated would result from third parties' actions beyond the Government's control.

Petitioner argues that the Department's prior explanation was insufficient to justify continued sealing of the information at issue because Petitioner has now been released elsewhere. However, the Department had no reason to elaborate on its explanation when it originally submitted information under seal because Petitioner agreed to the sealing at that time. Now, in response to Petitioner's motion, the Department's declarant has explained in detail and in light of current circumstances why the continued redaction of the Sealed Information is necessary. Third Mitchell Decl. ¶¶ 3-10.

Moreover, Petitioner's arguments fail to establish the importance of making the Sealed Information public. Given that Petitioner already has this information, it appears that he wants to make the information public in an attempt to expose the Department to public shame, relying on a theory that Petitioner's arguments opposing the proposed release in Syria were correct, while the Department's arguments were wrong. But the Court never ruled on those arguments one way or the other. Petitioner's motion essentially asks the Court to adopt his view of the underlying factual dispute at issue in Petitioner's earlier TRO and PI motions, ignoring the deference due the

20

Department on matters of military expertise and national security, and to assist Petitioner in "promot[ing] public scandal," *Nixon*, 435 U.S. at 598. *See* Pet'r Mot. at 8-9 (repeating the same arguments Petitioner offered to support his emergency motions). Such efforts in this context do not comport with any legitimate purpose of the First Amendment right of access to judicial proceedings.

Moreover, the Department's redactions are narrowly tailored and allow significant room for Petitioner to mount whatever public attack he may be contemplating on the Department's now-moot proposal. After all, the public information identifies Syria as the country of the proposed release, and the parties' briefing on Petitioner's emergency motion is in substantial part publicly available. The Sealed Information is limited, in many cases not even requiring redaction of entire sentences in the briefing. Only specific details regarding the identity of ███████ , the ███████ ███████████████████████ and certain steps that the Department proposed to take in order to reassure Petitioner that his release in Syria would be safe were redacted from the public versions of these filings. Should it reach the issue, the Court therefore should reject Petitioner's attempt to invoke a First Amendment right of access to the Sealed Information.

The Court should reach the same result applying a common law right of access. The D.C. Circuit has identified six factors as relevant to the analysis of a common law right of access to judicial proceedings: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Metlife, Inc.*, 865 F.3d at 665 (citing *Hubbard*,

21

650 F.2d at 317-22). The Court should keep information under seal if, "after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, [it] concludes that justice so requires." *Id.* at 656-66.

All six factors weigh in favor of keeping the Sealed Information under seal. First, as discussed above, Petitioner fails to establish a genuine need for public access to details about a proposed release in Syria that never happened, and about which the Court never ruled. Second, the Sealed Information has remained under seal and has not been made public. Third, fourth, and fifth, the Department has objected to disclosure of the Sealed Information based on the risks that disclosure would pose to ████████████████ and ████████████████████, and the Government's interests would be significantly prejudiced by disclosure. And sixth, the Notice of Release—which was the trigger for Petitioner's subsequent motions and the parties' filings regarding those motions—was submitted to the Court in order to apprise the Court of the Department's intention and to provide an opportunity to resolve any dispute between the parties regarding the Department's proposal. However, as discussed, the proposed release never took place, so the filings at issue never resulted in a decision by the Court and played no role in the ultimate resolution of the case. Under the facts and circumstances here, justice requires the Sealed Information to remain under seal.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Unseal should be denied.

May 21, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

22

JAMES M. BURNHAM
Deputy Assistant Attorney General
TERRY M. HENRY
Assistant Director, Federal Programs

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER
Senior Trial Counsel, Federal Programs
OLIVIA HUSSEY SCOTT
Trial Attorney, Federal Programs
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC   20005
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Respondent*

23