**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN DOE,

                *Petitioner*,

      v.

LLOYD AUSTIN,
  in his official capacity as
  SECRETARY OF DEFENSE,

                *Respondent*.

No. 17-cv-2069 (TSC)


# ECF 99

# REDACTED VERSION FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 1:17-cv-2069 (TSC) |
| | ) | |
| v. | ) | |
| | ) | |
| GEN. JAMES N. MATTIS, | ) | |
| in his official capacity as SECRETARY | ) | |
| OF DEFENSE, | ) | |
| | ) | |
| Respondent. | ) | |

# ECF 99

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-2069 (TSC) |
| | ) | |
| GEN. JAMES N. MATTIS, | ) | |
| in his official capacity as SECRETARY | ) | ███████ |
| OF DEFENSE, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

STANDARD OF REVIEW .......................................................................................................... 4

ARGUMENT ................................................................................................................................. 4

    I.      PETITIONER IS UNLIKELY TO SUCCEED ON THE MERITS ....................... 4

           A.      The Department's Proposed Release Is Safe and Comports with All
                    Applicable Obligations ........................................................................... 5

           B.      Petitioner Fails to Undermine the Department's Determination .............. 6

    II.     THE OTHER FACTORS DO NOT FAVOR A TEMPORARY
           RESTRAINING ORDER ..................................................................................... 9

    III.    IN ANY EVENT, THE COURT SHOULD NOT TAKE THE
           EXTRAORDINARY STEP OF ENJOINING PETITIONER'S RELEASE
           BASED SOLELY ON PETITIONER'S UNSUPPORTED CONTENTIONS ... 10

CONCLUSION ............................................................................................................................ 12

## INTRODUCTION

On June 6, 2018, Respondent provided notice to Petitioner's counsel and this Court that the Government intends to release Petitioner ████████████████ in northeastern Syria ███████████████████████████████████ where, in September 2017, Petitioner was taken into custody by Syrian Democratic Forces ("SDF"), a United States partner in the fight against the Islamic State, or ISIL, a terrorist organization, during SDF's campaign to clear the region of ISIL occupation. Nearly nine months later, SDF ████████████████████ and the surrounding area, which the Department of Defense ("Department") now views as stable and calm. The Department thus determined that Petitioner's release ████████ would be consistent with its obligation, under the law of war, to ensure Petitioner's safe release. The Department's belief that Petitioner joined or substantially supported one of the most violent terror organizations in the world—which is well supported by extensive evidence that has been filed in this Court—has not changed.   What *has* changed is that the Department has determined it is not a good use of scarce Department and military resources to continue holding Petitioner in military detention.   Hence it seeks to release him immediately, as the notice explained.

Petitioner's emergency request to halt that release and continue his detention should be rejected. There is no question that the Department has the authority to release Petitioner as long as it does so in a safe location.   Nor is there any question that—as the parties and this Court have recognized at previous hearings—Petitioner does not have the right to military transportation back to the United States from the area to which he voluntarily traveled.   Moreover, the Department is mindful of its obligations and would not seek to release Petitioner in a location that it did not regard as safe. Petitioner attempts to raise a purely factual challenge on the question of Petitioner's safety. But the Department, with its ongoing on-the-ground familiarity with the specific area at issue, is

far better able to judge the conditions ████████, and to determine that Petitioner will face no likely prospect of harm upon his release there.

Petitioner's factual assertions to the contrary rely on mischaracterizations that should be rejected by the Court in light of the Department's well-founded determination regarding the safety of the specific area today. First, Petitioner cites statements by Respondent explaining that Petitioner was taken into custody on an "active battlefield" as evidence that ██████ is dangerous. But Respondent never called ██████ an active battlefield. Rather, in September 2017, the SDF was engaged in a military offensive heading ████████████, towards Dayr az Zur, a town controlled by ISIL, and it was there, at an SDF checkpoint set up to prevent ISIL fighters from fleeing northward, that Petitioner was captured. Moreover, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Second, Petitioner claims the SDF mistreated him in the past. But those claims are contradicted by the observations of Department medical personnel who examined and questioned him about his prior treatment at the time he was taken into Department custody. Indeed, the Department's medical intake form for Petitioner disproves his assertion that he had an observable head injury at that time. Moreover, there is no reason to think Petitioner will be taken into custody by SDF when he is released ████████. After all, his previous capture occurred when he was fleeing SDF air strikes in ISIL territory during an SDF military campaign, not when he was merely present in a stable city with no active hostilities in the vicinity.

Third, Petitioner cites general travel advisories and determinations by other agencies, but the general determination by the State Department or the Department of Homeland Security that

Syria remains a volatile country, as a whole, in no way undermines the Department's specific determination, informed by its first-hand knowledge of the region, that it can safely release Petitioner ▮▮▮▮▮▮. Moreover, Petitioner himself apparently did not credit such advisories or determinations by other agencies when he chose to cross the Turkish border into Syria in the first place.

Petitioner otherwise cites his lack of identification documents as another ground for enjoining his release. However, Petitioner had no identification documents in his possession at the time he came into the Department's custody. The lack of such identification is not unusual in an area where many have arrived after fleeing ISIL and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮, and there is no reason to expect Petitioner will face a risk of harm simply because he has no identification document in his possession.

In sum, Petitioner's unfounded allegations and mischaracterizations do not undermine Respondent's factual determination that it can safely release Petitioner ▮▮▮▮▮▮ Petitioner's application for a temporary restraining order therefore should be denied. In the alternative, Respondent should be granted leave to provide additional information before the Court issues a decision on Petitioner's application.

Finally, the Court should vacate the hearing presently scheduled for June 20, 2018, on the Department of Defense's legal authority to detain Petitioner until the end of hostilities. Given that the Department is trying to immediately end its detention of Petitioner, there is no reason to litigate the question of whether it could continue that detention. Petitioner does not, of course, have a right to force the Department to continue detaining him so he can continue challenging that detention.

## STANDARD OF REVIEW

An emergency injunction is an "extraordinary remedy . . . [that] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Such relief requires a plaintiff to establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The Court of Appeals has emphasized that the "first and most important factor" is whether the moving party has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). "[W]hen a plaintiff has not shown a likelihood of success on the merits, [the Court] need not consider the other factors." *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

## ARGUMENT

### I.    PETITIONER IS UNLIKELY TO SUCCEED ON THE MERITS

Petitioner seeks to challenge his release as unsafe, in violation not only of the Department's obligations under the law of war, but also of his substantive due process rights under the Fifth Amendment. He thus seeks a remedy in habeas to enjoin his release and require the Department to continue to detain him for an indefinite period of time until it can identify another disposition option that the Court will approve. Petitioner previously objected to—and obtained an injunction forbidding—his transfer to a different safe location.   At the present time, the Department has determined that Petitioner can be safely released ▮▮▮▮▮▮▮ and has determined that his continued detention by U.S. forces is not a good use of Defense Department resources. Petitioner fails to undermine the Department's determination, nor does he demonstrate that the Department's

4

planned and prompt release would violate any applicable obligation.

**A.      The Department's Proposed Release Is Safe and Comports with All Applicable Obligations**

The Department does not dispute that it must ensure that any release of Petitioner is safe and consistent with its obligations under the law of war. *See* Mitchell Decl. ¶ 4. To the contrary, the Department has assured the Court that it "has taken all necessary and feasible precautions to ensure the safe release of Petitioner." *Id.* The Department's declarant has detailed those precautions. First, the Department has identified a ▮▮▮▮▮▮▮ in northeastern Syria where Petitioner can be safely released. *Id.* ¶ 5. As described by the Department, ▮▮▮▮▮▮▮ is

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *See id.* ¶ 5 & n.2.

Second, the Department has also determined that Petitioner faces no prospect of harm from SDF—a partner in the United States' effort to defeat ISIL. *See id.* ¶ 6. Under the 2015 National Defense Authorization Act, Pub. L. No. 113-291, § 1209(e)(1), 128 Stat. 3292 (2014), the Department's assistance to SDF is contingent on SDF's commitment to respect for human rights and law of war standards. Unless the Department has "appropriately vetted" SDF's commitment to those principles, it would not be allowed to maintain its support for SDF operations. Mitchell

Decl. ¶ 6. The Department has also determined that "[t]here was no evidence" found, during the standard medical screening that Petitioner underwent when he was taken into DoD custody, "that he had been physically harmed by SDF, and when asked at that time, Petitioner denied that he had been abused or injured." *Id.* At any rate, the Department will make clear to SDF, before Petitioner is released ██████████, that in the event Petitioner is identified when traveling through SDF checkpoints, "the United States is not seeking or requesting that Petitioner be detained." *Id.*

Third, the Department intends to provide Petitioner with $4,210, the same amount of money that he had in his possession when he was captured, as well as a cellular phone, food and water, and clothing. *Id.* ¶ 8. Release with that amount of money, a phone, and ███████████ ███████████████████████████—an area where no hostilities are underway—will put Petitioner in at least as good a position as the one he found himself in after traveling to Syria of his own accord. The Department's planned release is safe, appropriate, and consistent with its obligations.

### B.      Petitioner Fails to Undermine the Department's Determination

Petitioner's attempt to dispute the Department's determination should be rejected. Petitioner emphasizes his substantive due process rights, but he fails to show any violation of those rights. "To state a substantive due process claim, a plaintiff must assert that a government official was so 'deliberately indifferent' to his constitutional rights that the official's conduct 'shocks the conscience.'" *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 113 (D.D.C. 2014) (quoting *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403–04 (D.C. Cir. 2006)). Only behavior that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" can conceivably meet this high bar. *See Phillips*, 455 F.3d at 403 (quoting *County of Sacramento v.*

6

*Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Petitioner relies on *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), as support for his substantive due process claim here, arguing that the government owes an "elevated duty" to him because he is now in the Department's custody. Pl. Mem. at 9-10. However, *Butera* cited a state's duty toward an individual while the individual is in state custody, in a situation where he is "unable to care for himself." *Butera*, 235 F.3d at 651. *Butera* similarly involved a police department's use of an undercover informant in an operation that the department had designed for its own purposes, while allegedly failing to ensure the informant's safety. *Butera*, 235 F.3d at 652. Here, the Department seeks not to continue Petitioner's custody or use him for its own purposes, but to *release* him from custody, in the country where he most recently traveled of his own volition, and in accordance with its obligations under the law of war to ensure a safe release.

In any event, however, the Department "has taken all necessary and feasible precautions to ensure the safe release of Petitioner," and has determined that Petitioner's release ████████ is consistent with its law of war obligations. Mitchell Decl. ¶ 4. This determination is not so egregious as to shock the conscience. Indeed, the Department's determination is entitled to the same level of deference that the Supreme Court mandated in *Munaf v. Geren*, 553 U.S. 674 (2008), when accepting the Government's determination that, although it "remain[ed] concerned about torture among some sectors of the Iraqi Government," the specific department that would take custody of the petitioners in that case had "generally met internationally accepted standards for basic prisoner needs." *Id.* at 702. The Court recognized that "[t]he Judiciary is not suited to second-guess such determinations" by the political branches, which "are well situated to consider sensitive foreign policy issues, such as whether there is a serious prospect of torture at the hands of an ally, and

what to do about it if there is." *Id.* The Court also emphasized that there was no basis to assume that "the political branches are oblivious to these concerns." *Id.* The D.C. Circuit in *Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509 (D.C. Cir. 2009), similarly concluded that "the Government does everything in its power to determine whether a particular country is likely to torture a particular detainee" and that, as a result, "detainees are not liable to be cast abroad willy-nilly without regard to their likely treatment in any country that will take them." *Id.* at 514.

Significantly, although this Court has distinguished *Munaf* and *Kiyemba II* in the past when considering Respondent's authority to transfer Petitioner to the custody of another country, those decisions are directly applicable to the issue now presented, which calls for the Court to recognize the deference owed to the Department's analysis of conditions in another country such that a detainee can be safely transferred there—or safely released. Indeed, this Court emphasized in its prior decisions that Petitioner had *not* "argue[d] fear of . . . torture in another country" when challenging his transfer. *E.g.*, Mem. Op. of Jan. 23, 2018, at 5. Yet Petitioner is asserting that very argument now when challenging his release. The Court therefore should apply the applicable principles of *Munaf* and *Kiyemba II* when assessing the Department's determination regarding Petitioner's safe release.

Furthermore, the Court should take into account the insubstantiality of Petitioner's assertions. Petitioner attempts to construct an admission out of Respondent's prior statement that Petitioner was captured in an area of active hostilities. But that is a bald mischaracterization that ignores the time that has passed since SDF engaged in the military offensive that resulted in Petitioner's capture, and the fact that ███████████████████████████████

██████████████████████████████████████████████████████████

8

█████. Petitioner also provides a narrative, through the declaration of his counsel, that he was

shot at, beaten, and abused by the SDF when he was in its custody. But those allegations—which

Petitioner raises now for the first time—are belied by Department records that show Petitioner

denied any such abuse, nor was there evidence that he had been injured, at the time the Department

took custody of him. Petitioner otherwise points to alleged contradictions in the positions of the

Departments of State and Homeland Security. But those positions focus on country-wide

assessments and do not purport to characterize the stability █████████ at all, much less contradict

the Department's view. While Petitioner claims that he can provide more evidence, he has provided

no valid basis to turn the Department's notice of an intended release, which in its well-informed

view is consistent with its obligations, into a forum for outside experts to dispute the safety of a

particular ███ in Syria, especially in light of the deference due the Department's assessment under

the governing principles in *Munaf* and *Kiyemba II*. The Court should hold that Petitioner is unlikely

to succeed on the merits of his claim and deny his requested temporary restraining order on that

basis alone.

## II.    THE OTHER FACTORS DO NOT FAVOR A TEMPORARY RESTRAINING ORDER

Petitioner's application—and particularly his claim of irreparable harm—relies on the

notion that, absent an injunction, he would face imminent danger upon his release █████████

That contention is misplaced. Certainly, Respondent has no intention of creating or contributing

to any such danger. To the contrary, Respondent has carefully considered the issue of Petitioner's

safety and determined that his release █████████ will be safe and comport with all its applicable

obligations. Respondent has made every effort to reach a resolution of this matter, negotiating with

other countries and with Petitioner's counsel in an attempt to end Petitioner's detention without

9

compromising the United States' interests or going beyond practical and diplomatic constraints. Respondent will be significantly harmed, and left without a clear alternative—other than to proceed to litigate Petitioner's habeas petition in order to continue Petitioner's detention despite Respondent's desire to end the detention Petitioner contests—if it is once again thwarted in this latest attempt to identify an appropriate solution. The balance of hardships and public interest therefore weigh in Respondent's favor. Indeed, the public benefits when the Government is not forced to expend resources to detain an individual that it no longer wishes to detain, and when courts allow the Executive Branch to carry out its duties within the Executive's constitutional sphere of responsibility, which includes the duty to determine, consistent with the law of war, an appropriate disposition for a detainee in its custody in a foreign country, implicating its authority both to conduct military functions (such as detaining enemy combatants during hostilities), and to engage in foreign relations. *See Munaf*, 553 U.S. at 699-700, 702-03; *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch."). Judicial inquiry or oversight into executive decisions regarding release or transfer of wartime detainees impairs the Executive Branch's ability to carry out these essential functions.

III.   **IN ANY EVENT, THE COURT SHOULD NOT TAKE THE EXTRAORDINARY STEP OF ENJOINING PETITIONER'S RELEASE BASED SOLELY ON PETITIONER'S UNSUPPORTED CONTENTIONS**

Even if the Court does not deny Petitioner's application, it should not grant the application without allowing Respondent to present more details regarding the basis for its determination, and holding Petitioner to a heavy burden in contesting that determination. Petitioner has insisted throughout the proceedings until now that his goal in this habeas case is to secure his release. *E.g.*,

10

Tr. Jan. 22, 2018 4:19-5:1 ("release is simply to allow him to go free . . . what he's asking this Court for is to allow him to – open the doors, allow him to go free."); 7:6-9 ("He's asking for release, and release . . . in common parlance and as a legal matter, is a release or a relinquishment of government custody."); 21:19-20 ("open the doors, and he would carry on with his life."); Tr. Apr. 19, 2018 9:17-18 (asserting Petitioner's "right to . . . pursue his habeas petition to obtain the remedy of release"); 12:1-2 ("He is seeking his release. He is fighting for his freedom."). The Department has now determined that it wishes to release him in a manner that restores him to a safe location in Syria near where he previously was, with resources available to him such that Petitioner will be able to "carry on with his life."

Petitioner has reacted to the Department's efforts with suspicion, now accusing the Department of "abandon[ing]" him in "one of the most dangerous countries in the world" in a bad faith disregard for his life and safety (ignoring that his original presence in Syria was a result of his own decision to travel there). Pl. Mem. at 11. However, even if the Court does not accord the Department significant deference at the outset, the dispute that Petitioner raises is essentially a factual one. As such, the Court should not overturn the Department's decision without a significant evidentiary basis for doing so. Respondent therefore requests, in the alternative, that the Court set an abbreviated schedule for further proceedings, with Respondent providing further support for its determination on or before Thursday, June 14, 2018; and Petitioner providing a response on or before Tuesday, June 19, 2018.

## **CONCLUSION**

For the foregoing reasons, Petitioner's application for a temporary restraining order should be denied. In the alternative, Respondent requests that the Court set a further schedule for

Respondent to submit additional evidence by June 14, 2018, and Petitioner to submit a reply by June 19, 2018. If Respondent's proposed schedule is adopted, it will agree not to release Petitioner until June 21, 2018.

June 8, 2018                                       Respectfully submitted,

                                                   CHAD A. READLER
                                                   Acting Assistant Attorney General
                                                   JESSIE K. LIU
                                                   United States Attorney
                                                   TERRY M. HENRY
                                                   Assistant Director, Federal Programs Branch

                                                   */s/ Kathryn L. Wyer*
                                                   JAMES M. BURNHAM
                                                   Senior Counsel
                                                   KATHRYN L. WYER
                                                   Senior Trial Counsel, Federal Programs
                                                   OLIVIA HUSSEY SCOTT
                                                   Trial Attorney, Federal Programs
                                                   U.S. Department of Justice, Civil Division
                                                   20 Massachusetts Avenue, N.W
                                                   Washington, DC   20530
                                                   Tel. (202) 616-8475 / Fax (202) 616-8470
                                                   kathryn.wyer@usdoj.gov
                                                   *Attorneys for Respondent*

## <u>CERTIFICATE OF SERVICE</u>

        Undersigned counsel hereby certifies that the foregoing document will be served upon Petitioner's counsel today by e-mail immediately following this filing.

                        /s/ Kathryn L. Wyer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>GEN. JAMES N. MATTIS,  )<br>  in his official capacity as SECRETARY )<br>  OF DEFENSE, )<br>)<br>Respondent. ) | Civil Action No. 1:17-cv-2069 (TSC) |

**[PROPOSED] ORDER**

Upon consideration of Petitioner's Application for a Temporary Restraining Order and

Respondent's Opposition thereto, it is hereby:

**ORDERED** that Petitioner's Application for a Temporary Restraining Order is DENIED.

**SO ORDERED.**

_____
Tanya S. Chutkan
United States District Judge

DATED: June __, 2018

1